David J. Jordan
FOLEY & LARDNER LLP
95 S. State Street, Suite 2500
Salt Lake City, UT 84111
Tel. (801) 401-8919
Email: djordan@foley.com

Thomas J. Krysa (*pro hac vice pending*)
Stephanie Adamo (*pro hac vice pending*)
FOLEY & LARDNER LLP
1400 16th Street, Suite 200
Denver, CO 80202
Tel. (720) 437-2000
Email: tkrysa@foley.com
         sadamo@foley.com

Richard F. Ensor
MICHAEL BEST & FRIEDRICH LLP
2750 E. Cottonwood Pkwy, Suite 560
Cottonwood Heights, UT 84121
Tel. (801) 833-0500
Email: rfensor@michaelbest.com

*Attorneys for Kristoffer Krohn*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> GREEN UNITED, LLC, a Utah limited liability company; WRIGHT W. THURSTON, an individual; and KRISTOFFER A. KROHN, an individual; <br><br> Defendants, <br><br> TRUE NORTH UNITED INVESTMENTS, LLC, a Utah limited liability; and BLOCK BROTHERS, LLC, a Utah limited liability company; <br><br> Relief Defendants. | Case No.: 2:23-CV-00159-BSJ <br><br><br> **DEFENDANT KRISTOFFER KROHN'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT** |

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... i
TABLE OF AUTHORITIES .................................................................................................... ii
MOTION .................................................................................................................................... 1
MEMORANDUM IN SUPPORT OF MOTION ...................................................................... 2
   I.    INTRODUCTION ........................................................................................................ 2
   II.   RELEVANT FACTUAL ALLEGATIONS ................................................................. 3
   III.  LEGAL STANDARD ................................................................................................... 5
   IV.  ARGUMENT ................................................................................................................ 6
      A.    The SEC Has Not Plausibly Pled that Green Boxes Were a Security. ........................ 6
        i.    Miners' Individual Operation of Green Boxes Was Not a Common Enterprise. .......... 7
      B.    The SEC Has Failed to Plead Fraud with Particularity. .............................................. 9
        ii.   The SEC's Shotgun Pleading Is Impermissible. ....................................................... 10
        i.    The SEC's Section 17(a)(2) and (3) Claims against Krohn Are Not Pled With Particularity. ................................................................................................................ 11
      C.    The SEC's Case Is Unconstitutional Overreach. ...................................................... 13
   V.   CONCLUSION ............................................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................................... 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................ 5

*Bittner v. United States*, 143 S. Ct. 713 (2023) .......................................................................... 14

*Deschepper v. Midwest Wine & Spirits, Inc.*, 84 F.Supp.3d 767 (N.D. Ill. 2015) .................. 10, 11

*Fin. Fed. Sav. And Loan Ass'n v. Savings Inv. Serv. Corp.*, No. cv-86-176, 1986 WL 641 (W.D. Okla. Dec. 11, 1986) ................................................................................................................ 9

*First State Bank of Wheatland v. Am. Nat. Bank*, 690 F.Supp. 968 (D. Wyo. 1988) ..................... 7

*Goode v. Nuance Comms., Inc.*, No. 17-cv-00472, 2018 WL 3371091 (N.D. Okla. July 10, 2018) ......................................................................................................................................... 10

*Greenway Nutrients, Inc. v. Blackburn*, 33 F.Supp.3d 1224 (D. Colo. 2014) .............................. 10

*Koch v. Koch Indus., Inc.*, 203 F.3d 1202 (10th Cir. 2000) ..................................................... 5, 12

*Marine Bank v. Weaver*, 455 U.S. 551 (1982) .............................................................................. 7

*Maritan v. Birmingham Prop.*, 875 F.2d 1451 (10th Cir. 1989) ................................................ 6, 7

*McGill v. Am. Land & Exploration Co*, 776 F.2d 923 (10th Cir. 1985) .................................... 7, 8

*McVay v. W. Plains Serv. Corp.*, 823 F.2d 1395 (10th Cir. 1987) ............................................. 7, 8

*Ross v. Bolton*, 904 F.2d 819 (2d Cir. 1990) ............................................................................... 13

*S.E.C. v. Fraser*, No. 09-cv-00443, 2009 WL 2450508 (D. Ariz. Aug. 11, 2009) ................. 10, 11

*S.E.C. v. Kelly*, 663 F.Supp.2d 276 (S.D.N.Y. 2009) .................................................................... 5

*S.E.C. v. Mercury Interactive*, No. C07-2822JF, 2008 WL 4544443 (N.D. Cal. Sept. 30, 2008) 11

*S.E.C. v. Patel*, No. 07-cv-39-SM, 2009 WL 2015794 (D.N.H. July 7, 2009) ............................ 11

*S.E.C. v. PIMCO Advisors Fund Mgmt. LLC*, 341 F.Supp.2d 454 (S.D.N.Y. 2004) ..................... 5

*S.E.C. v. SeeThruEquity, LLC*, No. 18-cv-10374, 2019 WL 1998027 (S.D.N.Y. Apr. 26, 2019) . 6

*S.E.C. v. Shields*, 744 F.3d 633 (10th Cir. 2014) ................................................................... 6

*S.E.C. v. W.J. Howey Co.*, 328 U.S. 293 (1946) ................................................................. 6, 9

*Sears v. Likens*, 912 F.2d 889 (7th Cir. 1990) ..................................................................... 13

*Tcherepnin v. Knight*, 389 U.S. 332 (1967) .......................................................................... 8

*U.S. Telecom Assoc. v. FCC*, 855 F.3d 381 (D.C. Cir. 2017) ............................................. 13

*United Housing Foundation, Inc. v. Forman*, 421 U.S. 837 (1975) .................................. 8, 9

*United States ex rel. Sorenson v. Wadsworth Bros. Constr. Co., Inc.*, 48 F.4th 1146 (10th Cir. 2022) ................................................................................................................................. 5

*West Virginia v. EPA*, 142 S. Ct. 2587 (2022) .................................................................... 13

*Zabriskie v. Lewis*, 507 F.2d 546 (10th Cir. 1974) ................................................................ 7

**Statutes**

15 U.S.C. § 77b(a)(1) .............................................................................................................. 6

15 U.S.C. § 77q(a)(2) .............................................................................................................. 9

15 U.S.C. § 77q(a)(3) .............................................................................................................. 9

15 U.S.C. § 78c(a)(10) ............................................................................................................ 6

**Other Authorities**

Commissioner Hester M. Peirce, *Kraken Down: Statement on SEC v. Payward Ventures, Inc., et al.*, U.S. SECURITIES AND EXCHANGE COMMISSION (Feb. 9, 2023) ......................................... 14

Rohan Goswami, *SEC Commissioner Peirce Publicly Rebukes Her Agency, Gensler on Crypto Regulation*, CNBC (Feb. 9, 2023) ...................................................................................... 14

**Rules**

F.R.C.P. 12(b)(6) .................................................................................................................... 1

F.R.C.P. 9(b) .................................................................................................................. passim

# MOTION

Defendant Kristoffer Krohn ("Krohn"), pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), hereby moves this Court for dismissal of Counts I, III, IV, and VII of the Securities and Exchange Commission's ("SEC") Complaint because the SEC fails to state a claim against Krohn for which relief can be granted. Krohn incorporates by reference the Memorandum in Support of His Motion to Dismiss ("Memorandum). Based on the reasons set forth in the Memorandum, the Court should dismiss Counts I, III, IV, and VII of the SEC's Complaint with prejudice.

WHEREFORE, Krohn respectfully requests that this Court grant his Motion to Dismiss and grant such further relief the Court deems just and appropriate.

KRISTOFFER KROHN

*/s/ David J. Jordan*
One of His Attorneys

David J. Jordan
Thomas J. Krysa
Stephanie Adamo
FOLEY & LARDNER LLP

Richard F. Ensor
MICHAEL BEST & FRIEDRICH LLP

## MEMORANDUM IN SUPPORT OF MOTION

**I.  INTRODUCTION**

The SEC's four causes of action against Krohn all share a common denominator: the SEC seeks to hold Krohn liable for his conduct related to the promotion and sale of computer hardware related to crypto assets. The SEC's claims thus share a common failing: the computer hardware at issue is not a security within the ambit of the federal securities laws. Without a plausibly alleged security, each of the SEC's claims against Krohn—sale of an unregistered security; sale of a security as an unregistered broker; and negligence-based fraud in the offer or sale of a security— must be dismissed.

Moreover, the SEC's fraud claims against Krohn fail for the additional reason that they are not pled with particularity. The Complaint routinely lumps Defendants together, making little effort to distinguish which Defendants allegedly took which actions. The few Krohn-specific allegations fare no better, as they do not include the details of the alleged fraudulent statements as required by longstanding law. Accordingly, the SEC has failed to state a claim against Krohn, and the Court should dismiss Counts I, III, IV, and VII of the Complaint against him.

Finally, this case is a manifestation of the SEC's impermissible attempt to regulate the $1 trillion digital-asset industry without clear congressional authorization to do so. As such, it should be recognized for what it is and dismissed as an overreach of the SEC's enforcement authority.

## II.   RELEVANT FACTUAL ALLEGATIONS[1]

The SEC brings eight causes of action against five Defendants related to the Green Blockchain. The SEC alleges that "Defendants" told potential crypto miners that Defendant Green United, LLC ("Green United") intended to develop the Green Blockchain to create a "public global decentralized power grid." (Compl. ¶ 2.) "Defendants" first offered miners the opportunity to purchase computer hardware called a Green Box and later offered a computer mining software called Green Nodes. (*Id*. ¶¶ 19-20, 34.) Green Box machines were offered and sold from April 2018 to June 2020. (*Id*. at ¶¶ 20, 30.) "Defendants" allegedly told potential miners that the Green Boxes convert data into GREEN, which is then deposited in the wallet with the respective Green Box. (*Id*. at ¶¶ 21-22.) The SEC asserts that these statements were false because the Green Boxes mined Bitcoin rather than GREEN. (*Id*. at ¶¶ 2, 22, 44.) "Defendants" allegedly also told potential miners that Green United would control the mining operation. (*Id*. at ¶ 26.) And the SEC alleges that "Defendants" understood the profits of potential miners were tied to "Defendants' efforts" to increase the value of GREEN tokens. (*Id*. at ¶ 27.) Miners began receiving GREEN in January 2019. (*Id*. at ¶ 50.)

Separately, the Green Nodes software was offered from April 2019 to December 2022. (*Id*. at ¶¶ 19, 33.) "Defendants" allegedly described the Green Nodes software as being able to run on a personal computer or a remote server. (*Id*. at ¶ 36.) The SEC further alleges that "Defendants" sent potential miners a digital address for their transfer of funds, and subsequently transferred comingled funds to other crypto asset wallets. (*Id*. at ¶¶ 37-38.)

---

[1] The following facts are taken from the Complaint and are assumed true for purposes of this Motion only.

3

**Krohn-Specific Allegations.** The SEC alleges that Krohn is a self-employed business mentor and entrepreneur, and he was retained by Defendant Wright Thurston ("Thurston") as an independent contractor to sell the computer hardware Green Boxes. (*Id*. ¶ 12.) Krohn sold less than 1,000 Green Box machines between April 9, 2018 and October 2018. (*Id*. at ¶¶ 23, 55.) In an effort to sell Green Boxes, Krohn published YouTube videos, attended in-person events, and sent emails. (*Id*. at ¶ 24.)

While the Complaint contains numerous allegations regarding "Defendants" purported deceptive acts (*see, e.g.*, ¶¶ 2, 21-22, 26-27, 36-38, 41-43, 46), the only purported misrepresentations made by Krohn are:

(1) His statements at an April 2018 presentation that GREEN was valued at $0.02 per token, Green Boxes were producing $100 each month, and Green Boxes were generating 40% to 50% return by mining GREEN (Id. at ¶¶ 24, 48);

(2) His statement in an April 12, 2018 email that Green Boxes "generat[e] 100%+ ROIs." (*Id*. at ¶ 25); and

(3) His statement to potential miners (place and time not alleged) that GREEN would be made available on a crypto asset trading platform within months. (*Id*. at ¶ 27.)

The SEC does not allege that Krohn had any involvement with Green Box machines before April 2018 or after October 2018, and the SEC does not allege that Krohn had any involvement with the Green Nodes software. (*See* Compl.)

The SEC brings claims against Krohn for: sale of an unregistered security in violation of Section 5(a) and (c) of the Securities Act of 1933 ("Securities Act") (**Count I**); fraud or deceit in the offer or sale of a security in violation of Section 17(a)(2)-(3) of the Securities Act (**Counts III**

4

**and IV**); and sale of a security as an unregistered broker in violation of Section 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act") (**Count VII**).

## III.   LEGAL STANDARD

The SEC has the burden to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be legally sufficient, a defendant should not be left to guess at the plaintiff's theory of the case; a complaint must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp.*, 550 U.S. at 555. Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" are not sufficient. *Id*.

Securities fraud claims are also subject to the heightened pleading requirements of Federal Rule of Civil Procedure Rule 9(b). *S.EC. v. PIMCO Advisors Fund Mgmt. LLC*, 341 F.Supp.2d 454, 462 (S.D.N.Y. 2004); *S.E.C. v. Kelly*, 663 F.Supp.2d 276, 283-84 (S.D.N.Y. 2009); Fed. R. Civ. P. 9(b). Rule 9(b) requires the plaintiff to state "with particularity" the circumstances constituting fraud. *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000); Fed. R. Civ. P. 9(b). Specifically, a complaint alleging fraud must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Koch*, 203 F.3d at 1236. The SEC must set forth the who, what, when, where and how of the alleged fraud. *United States ex rel. Sorenson v. Wadsworth Bros. Constr. Co., Inc.*, 48 F.4th 1146, 1156 n.8 (10th Cir. 2022). A complaint may not use "'shotgun' pleadings which leave 'Defendants and the Court with the task of combing the Complaint and inferring rightly or wrongly, what specific conduct the SEC intended to assert as a violation.'" *S.E.C. v.*

5

*SeeThruEquity, LLC*, No. 18-cv-10374, 2019 WL 1998027, at *3 (S.D.N.Y. Apr. 26, 2019) (internal citation omitted).

## IV. ARGUMENT

### A. The SEC Has Not Plausibly Pled that Green Boxes Were a Security.[2]

In order to bring its federal securities claims, the SEC must plead facts establishing that Krohn was involved in the offer or sale of securities. The Securities Act defines a "security" to mean, in relevant part, "any note, stock, treasury stock, security future, security-based swap, bond, debenture … [or] investment contract[.]" 15 U.S.C. § 77b(a)(1). The Exchange Act has a nearly identical definition of "security," which also includes "investment contract." 15 U.S.C. § 78c(a)(10). "In *S.E.C. v. Howey Co.*, the Supreme Court held that the test for distinguishing an investment contract from other commercial dealings is whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others. The test has subsequently been broken down into three requirements: (1) An investment, (2) in a common enterprise, (3) with a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others." *Maritan v. Birmingham Prop.*, 875 F.2d 1451, 1456 (10th Cir. 1989) (internal quotations and citations omitted); *see also S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946). "Whether a particular investment constitutes a security depends on the facts and circumstances of the case." *Maritan*, 875 F.2d at 1456. When applying the *Howey* test, "form should be disregarded for substance" and "courts should focus on the 'economic realities underlying a transaction[.]" *S.E.C. v. Shields*, 744 F.3d 633, 643 (10th Cir. 2014) (internal

---

[2] Krohn's arguments focus on Green Boxes and do not address Green Nodes because, as noted *supra* § II, the SEC has not alleged that Krohn had any involvement with Green Nodes.

6

quotations omitted). "Each case must be analyzed on its own facts, keeping in mind that 'Congress intended the securities laws to cover those instruments ordinarily and commonly considered to be securities in the commercial world[.]" *Maritan*, 875 F.2d at 1457 (*citing Marine Bank v. Weaver*, 455 U.S. 551, 559 (1982) (finding the agreement at issue was "not the type of instrument that comes to mind when the term 'security' is used and does not fall within the ordinary concept of a security.").

In an attempt to subject Green Boxes to federal securities regulation, the SEC asserts that the computer hardware that was sold by Krohn constitute investment contracts. (Compl. ¶¶ 40-41.) The SEC's allegations, however, wholly fail to establish the second element of the *Howey* test— that Green Box miners were engaged in a common enterprise.

    i.   ***Miners' Individual Operation of Green Boxes Was Not a Common Enterprise.***

In the Tenth Circuit, the "test for distinguishing between commercial and investment transactions is 'whether the transaction is of the kind in which stock often actually is given." *First State Bank of Wheatland v. Am. Nat. Bank*, 690 F.Supp. 968, 969 (D. Wyo. 1988) (citing *Zabriskie v. Lewis*, 507 F.2d 546, 551 (10th Cir. 1974). See also *McVay v. W. Plains Serv. Corp.*, 823 F.2d 1395, 1399 (10th Cir. 1987) (alleged investment was not a security because it "lack[ed] any of the basic attributes of true stock"). If a "transaction is in reality an investment (that is, a transaction of a type in which stock is often given), then it creates a 'common enterprise' and gives rise to a "security" falling within the ambit of the [Exchange Act]." *McGill v. Am. Land & Exploration Co*, 776 F.2d 923, 925 (10th Cir. 1985). If the transaction is not the type in which stock is typically given, there is no security involved in the transaction. Here, the SEC has not alleged (because it cannot) that the computer hardware purchases were the kind of transaction in which stock might

7

be given. Thus, there was no common enterprise, and the SEC's claims against Krohn must be dismissed.

The most common feature of stock is "the right to receive 'dividends contingent upon an apportionment of profits.'" *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 851 (1975) (*citing Tcherepnin v. Knight*, 389 U.S. 332, 339 (1967). Other characteristics traditionally associated with stock are: they are negotiable, they can be pledged, they confer voting rights in proportion to the number of shares owned, and they can appreciate in value. *See id*. Green Boxes, however, were nothing like stocks. Green Boxes were "crypto asset mining machines" (*i.e.*, computer hardware) that purportedly mined Bitcoin. (Compl. ¶¶ 20, 22.) A miner could purchase a Green Box for $3,000. (Compl. ¶ 23.) Once in possession of a Green Box, a miner could use the equipment constantly, rarely, or any other way they pleased. The SEC does not allege that miners were entitled to receive dividends or that there was any apportionment of profits to them. (*See* Compl.) Nor does the Complaint contain any allegation that Green Boxes were negotiable, could be pledged, conferred voting rights, or could appreciate in value. (*See id*.) Thus, according to the SEC's own allegations, the Green Box machines "lack[ed] any of the basic attributes of true stock," *See McVay*, 823 F.2d at 1399. Because a Green Box purchase was not the type of transaction "in which stock is often given," it simply did not create a common enterprise. *See McGill*, 776 F.2d at 925. At bottom, Krohn's sales of computer hardware were far from, and cannot be considered, offers or sales of securities.

What's more, the bald-faced allegations that miners expected to profit from a Green Box purchase do not salvage the SEC's claims. (*See* Compl. ¶ 2, 41.) When evaluating whether a transaction is an investment for the purpose of identifying a security, "[p]rofit does not mean any return beyond principal. Rather, it is profit of the type typically associated with an investment.

8

This includes 'capital appreciation resulting from the development of the initial investment … or a participation in earnings resulting from the use of investor funds[.]'" *Fin. Fed. Sav. And Loan Ass'n v. Savings Inv. Serv. Corp.*, No. cv-86-176, 1986 WL 641, *3 (W.D. Okla. Dec. 11, 1986) (*citing United Housing*, 421 U.S. at 852). Here, the miners had *no prospect* of this type of investment profit. The value of a Green Box—$3,000 (Compl. ¶ 23)—did not rise or fall with the market, so there could be no capital appreciation. Nor did the miners participate in pooled earnings. As described above, any profit was fixed to a miner's individual actions and use of the equipment. Miners "therefore did not expect a 'profit' from the participation as that term is used in the *Howey* test." *See Fin. Fed. Sav. And Loan Ass'n*, 1986 WL 641 at *3.

Each of the SEC's claims against Krohn are premised on the theory that the computer hardware he sold to miners were securities. Because the Complaint fails to allege that the Green Box sales were part of a common enterprise, the SEC has not plausibly alleged that the Green Boxes constitute securities. Absent a security, the SEC's claims against Krohn cannot stand. Accordingly, Counts I, III, IV, and VII of the Complaint should be dismissed against him.

### B. The SEC Has Failed to Plead Fraud with Particularity.

The SEC's claims of fraud against Krohn—Counts III and IV—should be dismissed for the additional reason that the SEC has failed to meet the heightened pleading requirements of Rule 9(b). Under § 17(a)(2) of the Securities Act, it is unlawful for a person to obtain money or property by means of any untrue statement of material fact or any misleading omission in the offer or sale of securities in interstate commerce. 15 U.S.C. § 77q(a)(2). Under § 17(a)(3) of the Securities Act, it is unlawful for a person to engage in any fraudulent or deceitful transaction, practice, or course of business in the offer or sale of securities in interstate commerce. 15 U.S.C. § 77q(a)(3). The SEC has asserted these fraud claims against Krohn, and pursuant to Rule 9(b), it must plead these

claims with particularity. *SEC v. PIMCO Advisors Fund Mgmt. LLC*, 341 F.Supp.2d 454, 462 (S.D.N.Y. 2004) (finding the "requirements of Rule 9(b) apply to allegations of securities fraud" and applying Rule 9(b) to § 17(a) claim); *see also SEC v. Kelly*, 663 F.Supp.2d 276, 283-84 (S.D.N.Y. 2009) (applying Rule 9(b) to §§ 17(a)(2) and (3) claims). As an initial matter, the SEC's shotgun pleadings do not satisfy the requirements of Rule 9(b). Moreover, even where Krohn can identify certain allegations specific to him, they are not pled with particularity.

### ii. The SEC's Shotgun Pleading Is Impermissible.

"[C]ourts in this circuit have strongly criticized the use of 'shotgun pleading,' by which a party pleads several counts or causes of action, each of which incorporates by reference the entirety of its predecessors, as such method places an inordinate burden on the party responding to that pleading, and on the Court interpreting it, requiring them to parse the narrative repeatedly and attempt to independently extract the particular factual averments that are relevant to each individual claim." *Goode v. Nuance Comms., Inc.*, No. 17-cv-00472, 2018 WL 3371091, *6 (N.D. Okla. July 10, 2018) (citing *Greenway Nutrients, Inc. v. Blackburn*, 33 F.Supp.3d 1224, 1242-43 (D. Colo. 2014) (internal quotations omitted). "Such pleadings make it virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Deschepper v. Midwest Wine & Spirits, Inc.*, 84 F.Supp.3d 767, 783 (N.D. Ill. 2015) (citations omitted). In *S.E.C. v. Fraser*, the court explained why shotgun pleading must result in dismissal:

> The Complaint incorporates every factual paragraph into each claim section, and it makes no attempt to lay out which conduct constitutes the violations alleged. Rather, the claims sections simply paraphrase or quote the language of the statutes and rules, leaving Defendants (and the Court) with the task of combing the Complaint and inferring, rightly or wrongly, what specific conduct the SEC intended to assert as a violation. Given the multiple defendants at issue in each claim, the lack of clarity about which actions apply to each claim, and the general vagueness of the factual allegations, the Complaint does not satisfy Rule 9(b)[.]

No. 09-cv-00443, 2009 WL 2450508, at *14 (D. Ariz. Aug. 11, 2009).

Here, the SEC's Complaint is rife with shotgun pleading. It includes 56 paragraphs of allegations—many of which group Defendants together and allege they acted collectively[3]—and then incorporates all allegations into the securities fraud claims asserted against Krohn and other Defendants. (Compl. ¶¶ 61, 65, 69, 73, 77.) The claims sections do not specify which acts by which Defendants alleged in paragraphs 1-56 constitute the violations. Instead, the Complaint, like the complaint in *Fraser*, simply paraphrases statutory language and asserts a violation. (*Id*. at ¶¶ 65-72.) This pleading format does not detail the specific allegations against Krohn; thus, it does not put Krohn "on notice of the alleged factual basis for the purported violations," and it does not satisfy Rule 9(b)'s particularity requirement. *See Deschepper*, 84 F.Supp.3d at 783. "District courts have commented upon the unhelpfulness of this pleading strategy in this context and have dismissed SEC complaints because of it." *Fraser*, 2009 WL 2450508, at *13 (citing *S.E.C. v. Mercury Interactive*, No. C07-2822JF, 2008 WL 4544443, at *8 (N.D. Cal. Sept. 30, 2008) and *S.E.C. v. Patel*, No. 07-cv-39-SM, 2009 WL 2015794, at *1-2 (D.N.H. July 7, 2009)). This Court should do the same.

    **i.**    ***The SEC's Section 17(a)(2) and (3) Claims against Krohn Are Not Pled With Particularity.***

Even after parsing through the allegations specific to Krohn, the SEC's claims against him fail to allege securities fraud with particularity. Krohn's best guess is that Counts III and IV are premised on the following allegations, which are the only allegations of misrepresentation that the SEC made with any degree of detail:

---

[3] *See e.g.*, Compl. ¶¶ 2, 19, 21-22, 26-27, 36-38, 41-44, 46.

(1) "[D]uring an April 2018 in-person presentation that Krohn later posted to YouTube, Krohn told prospective investors that GREEN was currently valued at $0.02 per token. Later on in that presentation, Krohn claimed that Green Boxes were producing $100 each month, and, as a result, Green Boxes were generating 40% to 50% return by mining GREEN." (Compl. at ¶ 24);

(2) "[I]n an April 12, 2018 email to his followers, Krohn touted Green Boxes as a $3,000 investment 'generating 100%+ ROIs.'" (*Id*. at ¶ 25); and

(3) "Krohn assured investors that GREEN would be made available on a crypto asset trading platform within months." (*Id*. at ¶ 27.)

Thus, the SEC's fraud claims against Krohn amount to a few alleged statements during April 2018. There was no alleged securities offering. There was no alleged widespread dissemination of false statements. These sparse allegations are a far cry from what is required for the SEC to plead a viable claim of fraud under the securities laws. Tenth Circuit courts require "a complaint alleging fraud to set forth the time, place and contents of the false representation, the identity of the party making the false representation and the consequences thereof." *Koch*, 203 F.3d at 1236 (citations omitted). Not one of the SEC's fraud claims against Krohn pleads the required who, what, when, where, and consequences.

For the allegation of the "April 2018 in-person presentation," the Complaint does not identify *when* in April these representations were made, *where* the representations were made, *to whom* the representations were made, or any *consequences* of the representations. The "April 12, 2018 email" allegation is similarly flawed in that it does not identify *to whom* the representation was made or any *consequences* of the alleged representation. And the allegation of Krohn's assurance that GREEN would soon be available on a crypto asset trading platform does not identify

12

*when* the representation was made, *where* the representation was made, *how* the representation was made, *to whom* it was made, or any *consequences*. These allegations are fatally deficient under Rule 9(b). *See Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (securities fraud claim dismissed under Rule 9(b) for failure to state "in any detail what misrepresentations were made by the defendant, to whom these misrepresentations were made, when these misrepresentations were made, or how these misrepresentations furthered the alleged fraudulent scheme"); *see also Ross v. Bolton*, 904 F.2d 819, 824 (2d Cir. 1990) (dismissing securities fraud claim for failure to plead with particularity under Rule 9(b)).

The SEC's failure to adequately plead fraud against Krohn is striking. This failure is despite a more than four-year investigation, which involved the issuance of investigative subpoenas and the taking of investigative testimony. Given the sparse allegations against Krohn, the SEC's fraud claims against him (for selling computer hardware and making a few alleged misstatements while doing so) should be dismissed with prejudice.

### C. The SEC's Case Is Unconstitutional Overreach.

To avoid repetition and duplication, Krohn joins Section III of the Motion filed on May 19, 2023 by Defendants Green United and Thurston. (Dkt. 23.) Krohn further states that the Major Questions Doctrine and the Due Process Clause prohibit the SEC's efforts to establish ad hoc policies for the digital-asset industry without proper congressional authority. Under the Major Questions Doctrine, an agency may not bring about a major policy without clear, statutory authority. *West Virginia v. EPA*, 142 S. Ct. 2587, 2609, 2614-16 (2022). "The major rules doctrine helps preserve the separation of powers and operates as a vital check on expansive and aggressive assertion of executive authority." *U.S. Telecom Assoc. v. FCC*, 855 F.3d 381, 417 (D.C. Cir. 2017) (Kavanaugh, J., dissenting). Here and in similar cases, the SEC contorts the words "investment

13

contract" from the nearly-century-old Securities Act and Exchange Act in an attempt to regulate the burgeoning $1 trillion digital-asset industry. But the SEC cannot point to any clear congressional authorization to do so. Thus, the SEC's aggressive assertion of executive authority to regulate this space—including its claims against Krohn—is impermissible.

By retroactively asserting that all digital assets should be registered as securities, the SEC has also violated the Due Process Clause, which requires that notice of such rules be announced in advance and be clear and reasonable. During the seven months in 2018 when Krohn allegedly sold Green Boxes, he could not have known that, five years later, the SEC would claim computer hardware should be registered as a security. *See Bittner v. United States*, 143 S. Ct. 713, 725 (2023) ("If many experienced accountants were unable to anticipate the government's current theory, we do not see how 'the common world' had fair notice of it."). Indeed, in filing this lawsuit, the SEC makes this argument for the first time. In the SEC's world view, Kris Krohn should have had the vision and clairvoyance to recognize the computer hardware he was selling could one day be viewed by the federal government as a security. The SEC asserts this view despite the fact that securities experts in the U.S., including the SEC Commissioners themselves, currently disagree on the application of federal securities laws to the digital-asset industry.[4] The SEC cannot credibly say it expected Krohn, who is not a securities industry expert, to sort this issue out for them *five years ago*. The SEC's assertion here that computer hardware can constitute a security is a bridge too far, and quite frankly, an application of enforcement authority that is patently unfair. For these

---

[4] Commissioner Hester M. Peirce, *Kraken Down: Statement on SEC v. Payward Ventures, Inc., et al.*, U.S. SECURITIES AND EXCHANGE COMMISSION (Feb. 9, 2023), https://www.sec.gov/news/statement/peirce-statement-kraken-020923; *see also* Rohan Goswami, *SEC Commissioner Peirce Publicly Rebukes Her Agency, Gensler on Crypto Regulation*, CNBC (Feb. 9, 2023), https://www.cnbc.com/2023/02/09/sec-commissioner-breaks-with-sec-gensler-on-crypto-regulation.html.

reasons, the SEC's enforcement action against Krohn is unconstitutional overreach and should be dismissed with prejudice.

## V.   CONCLUSION

For the foregoing reasons, Defendant Krohn respectfully requests that the Court enter an Order dismissing Counts I, III, IV, and VII of the SEC's Complaint with prejudice, and granting Krohn such further relief the Court deems just and appropriate.

DATED this 19th day of May, 2023.

**FOLEY & LARDNER LLP**

*/s/ David J. Jordan*

David J. Jordan
FOLEY & LARDNER LLP
95 S. State Street, Suite 2500
Salt Lake City, UT 84111
Tel. (801) 401-8919
Email: djordan@foley.com

Thomas J. Krysa (*pro hac vice pending*)
Stephanie Adamo (*pro hac vice pending*)
FOLEY & LARDNER LLP
1400 16th Street, Suite 200
Denver, CO 80202
Tel. (720) 437-2000
Email: tkrysa@foley.com
         sadamo@foley.com

Richard F. Ensor
MICHAEL BEST & FRIEDRICH LLP
2750 E. Cottonwood Pkwy, Suite 560
Cottonwood Heights, UT 84121
Tel. (801) 833-0500
Email: rfensor@michaelbest.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of May, 2023, a true and correct copy of the above and foregoing **DEFENDANT KRISTOFFER KROHN'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT** was filed and served *via* CM/ECF upon the following:

Michael E. Welsh
Casey R. Fronk
Securities and Exchange Commission
351 South West Temple, Suite 6.100
Salt Lake City, UT 84101

*/s/ Heather Kunkel*
Heather Kunkel