# EXHIBIT 1

# [DISCUSSION DRAFT]

1 **SECTION 1. SHORT TITLE; TABLE OF CONTENTS.**

2     (a) SHORT TITLE.—This Act may be cited as the

3 "【To be added Act of 2023】".

4     (b) TABLE OF CONTENTS.—The table of contents for

5 this Act is as follows:

Sec. 1. Short title; table of contents.

TITLE I—DEFINITIONS; RULEMAKING; PROVISIONAL
REGISTRATION

Sec. 101. Definitions under the Securities Act of 1933.
Sec. 102. Definitions under the Commodity Exchange Act.
Sec. 103. Definitions under this Act.
Sec. 104. Joint rulemakings.
Sec. 105. Provisional registration of CFTC intermediaries.
Sec. 106. Provisional registration of SEC intermediaries.

TITLE II—DIGITAL ASSET EXEMPTIONS

Sec. 201. Exempted transactions in digital assets.
Sec. 202. Requirements to transact in certain digital assets.
Sec. 203. Enhanced disclosure requirements.
Sec. 204. Certification of certain digital assets.

TITLE III—REGISTRATION FOR DIGITAL ASSET INTERMEDIARIES
AT THE SECURITIES AND EXCHANGE COMMISSION

Sec. 301. Treatment of digital commodities and other digital assets.
Sec. 302. Antifraud authority over payment stablecoins.
Sec. 303. Eligibility of alternative trading systems.
Sec. 304. Customer protection rule modernization.
Sec. 305. Modernization of recordkeeping requirements.
Sec. 306. Modifications to existing rules for digital assets.
Sec. 307. Treatment of certain digital assets in connection with federally regulated intermediaries.
Sec. 308. Dual registration.
Sec. 309. Exclusion for ancillary activities.

TITLE IV—REGISTRATION FOR DIGITAL ASSET INTERMEDIARIES
AT THE COMMODITY FUTURES TRADING COMMISSION

Sec. 401. Commission jurisdiction over digital commodity transactions.
Sec. 402. Requiring futures commission merchants to use qualified digital commodity custodians.
Sec. 403. Trading certification and approval for digital commodities.

G:\P\18\MISC\DIGITAL_002.XML   **[Discussion Draft]**

2

Sec. 404. Registration of digital commodity exchanges.
Sec. 405. Qualified digital commodity custodians.
Sec. 406. Registration and regulation of digital commodity brokers and dealers.
Sec. 407. Exclusion for ancillary activities.

TITLE V—INNOVATION AND TECHNOLOGY IMPROVEMENTS

Sec. 501. Codification of the SEC Strategic Hub for Innovation and Financial
         Technology.
Sec. 502. Codification of LabCFTC.
Sec. 503. CFTC-SEC Joint Advisory Committee on Digital Assets.
Sec. 504. Modernization of the Securities and Exchange Commission mission.
Sec. 505. Study on decentralized finance.
Sec. 506. Study on non-fungible digital assets.

# TITLE I—DEFINITIONS; RULE-MAKING; PROVISIONAL REGISTRATION

## SEC. 101. DEFINITIONS UNDER THE SECURITIES ACT OF 1933.

Section 2(a) of the Securities Act of 1933 (15 U.S.C. 77b(a)) is amended by adding at the end the following:

"(20) AFFILIATED PERSONS.—The term 'affiliated person' means—

"(A) with respect to a digital asset issuer—

"(i) a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such digital asset issuer; and

"(ii) a person that was described under clause (i) at any point in the previous 3-month period; or

[Discussion Draft]

3

likely "digital asset issuer"/"affiliated person"

1     "(B) with respect to any digital asset—

2         "(i) a person that beneficially owns 5

3     percent or more the units of such digital

4     asset that are then outstanding; and

5         "(ii) a person that was described

6     under clause (i) at any point in the pre-

7     vious 3-month period.

8     "(21) BLOCKCHAIN.—The term 'blockchain'

9 means any technology—

Green blockchain = likely a "blockchain" under definition

10     "(A) where data is—

11         "(i) shared across a network to create

12     a public ledger of verified transactions or

13     information among network participants;

14         "(ii) linked using cryptography to

15     maintain the integrity of the public ledger

16     and to execute other functions; and

17         "(iii) distributed to network partici-

18     pants in an automated fashion to concur-

19     rently update network participants on the

20     state of the public ledger and any other

21     functions; and

22     "(B) composed of source code that is pub-

23 licly available.

if Green was not mined but distributed manually, then it likely was not distributed in an "automated fashion"

G:\P\18\MISC\DIGITAL_002.XML

**[Discussion Draft]**

4

1      "(22) BLOCKCHAIN NETWORK.—The term

2   'blockchain network' means any blockchain or

3   blockchain protocol.

4      "(23) BLOCKCHAIN PROTOCOL.—The term

5   'blockchain protocol' means any self-executing soft-

6   ware deployed to a blockchain composed of source

7   code that is publicly available and accessible, includ-

8   ing a smart contract or any network of smart con-

9   tracts.

10      "(24) DECENTRALIZED NETWORK.—With re-

11   spect to a blockchain network to which a digital

12   asset relates, the term 'decentralized network' means

13   the following conditions are met:

14      "(A) During the previous 12-month period,

15   no person, acting on the person's own, exclud-

16   ing any decentralized organization—

17      "(i) had the unilateral authority, di-

18   rectly or indirectly, through any contract,

19   arrangement, understanding, relationship,

20   or otherwise, to control or materially alter

21   the functionality or operation of the

22   blockchain network; or

23      "(ii) had the unilateral authority to

24   restrict or prohibit any person who is not

G:\P\18\MISC\DIGITAL_002.XML                    **[Discussion Draft]**

5

1       a related person or an affiliated person

2       from—

3               "(I) using, earning, or transmit-

4            ting the digital asset;

5               "(II) deploying software that

6            uses or integrates with the blockchain

7            network;

8               "(III) participating in on-chain

9            governance decisions with respect to

10           the blockchain network; or

11             "(IV) operating a node, validator,

12           or other form of computational infra-

13           structure with respect to the

14           blockchain network.

15       "(B) During the previous 12-month period,

16       neither any digital asset issuer nor any affili-

17       ated person, excluding any decentralized organi-

18       zation—

19             "(i) beneficially owned units of such

20           digital asset that represented at any time

21           20 percent or more units of such digital

22           asset that are then outstanding; and

23             "(ii) had the unilateral authority to

24           direct the voting of units of such digital

25           asset that represented at any time 20 per-

*[handwritten margin note:]* to be "decentralized" no issuer or affiliated person may have owned 20% or more of the digital asset within 12 months --> WT owns a substantial amount (over 20%?)

G:\P\18\MISC\DIGITAL_002.XML    [Discussion Draft]

6

1    cent or more of the outstanding voting

2    power of such digital assets.

3    "(C) During the previous 3-month period,

4    the digital asset issuer, any affiliated person, or

5    any related person has not implemented or con-

6    tributed any intellectual property to the soft-

7    ware code of the blockchain network that mate-

8    rially alters the functionality or operation of the

9    blockchain network.

*to be "decentralized" the issuer/affiliated person must not have MARKETED the digital asset OR the blockchain network nor ISSUED the digital asset within the LAST THREE MONTHS.*

10    "(D) During the previous 3-month period,

11    neither any digital asset issuer nor any affili-

12    ated person—

13        "(i) has marketed to the public the

14        digital assets or the blockchain network; or

15        "(ii) issued a unit of the digital asset.

16    "(E) During the previous 12-month period,

17    all issuances of units of the digital asset

18    through the programmatic functioning of the

19    blockchain network were end user distributions.

*a "decentralized" network requires that all issuances of units within the last 12 months be "end user" distributions (see 30) this would not be the case if SEC's allegations that WT distributed Green manually were true.*

20    "(25) DECENTRALIZED ORGANIZATION.—

21        "(A) IN GENERAL.—The term 'decentral-

22        ized organization' means, with respect to a

23        blockchain network, any organization of persons

24        using the digital assets related to such

25        blockchain network to form consensus in the de-

**[Discussion Draft]**

1    velopment, publication, management, or admin-

2    istration of such blockchain network, which is

3    controlled by the entirety of persons holding

4    such digital assets and not by any particular

5    person.

6         ''(B) EXCLUSION.—The term 'decentral-

7    ized organization' does not include any organi-

8    zation directly engaged in an activity that re-

9    quires registration with the Commission or the

10   Commodity Futures Trading Commission other

11   than—

12            ''(i) developing, publishing, managing,

13        or administering a blockchain network; or

14            ''(ii) an activity with respect to which

15        the organization is exempt from such reg-

16        istration.

17   ''(26) DIGITAL ASSET.—

18         ''(A) IN GENERAL.—The term 'digital

19   asset' means any fungible digital representation

20   of value that can be exclusively possessed and

21   transferred, person to person, without necessary

22   reliance on an intermediary, and is recorded on

23   a cryptographically secured public distributed

24   ledger.

*Green tokens are a digital asset (but such digital assets may require registration with the SEC)*

G:\P\18\MISC\DIGITAL_002.XML    **[Discussion Draft]**

8

1                   "(B) RELATIONSHIP TO A BLOCKCHAIN

2      NETWORK.—A digital asset is considered to re-

3      late to a blockchain network if the digital asset

4      is intrinsically linked to the blockchain network,

5      including—

6                 "(i) where the digital asset's value is

7      reasonably expected to be generated by the

8      programmatic      functioning      of      the

9      blockchain network;

10                 "(ii) where the asset has voting rights

11      with respect to the blockchain network; or

12                 "(iii) where the digital asset is issued

13      through the programmatic functioning of

14      the blockchain network.

15         "(27) DIGITAL ASSET ISSUER.—With respect to

16      a digital asset, the term 'digital asset issuer'—

17                 "(A) means—

18                 "(i) any person that deploys the

19      source code providing for the creation of

20      such digital asset;

21                 "(ii) any person that makes an initial

22      distribution of a unit of the digital asset;

23      or

24                 "(iii) any sponsor; and

25              "(B) does not include—

*[Handwritten annotations in margin:]* Green rewards would not be considered "related to" a blockchain network unless the (i) value relates to the programmatic functioning; or (ii) the asset confers voting rights to blockchain network; or (iii) the asset is ISSUED through the PROGRAMATIC FUNCTIONING of the blockchain network.

*[Handwritten annotation in margin:]* Under this definition, Green/WT is an "issuer"

G:\P\18\MISC\DIGITAL_002.XML **[Discussion Draft]**

9

The proposed bill sets up a framework where there is seemingly a grace period for digital assets, only upon the "maturity date" does it become either a "digital commodity" or a "digital asset" (must be registered with the SEC)

Maturity is reached when 20% or more of the total units meet

1    "(i) any person deploying source code

2  on the instruction of a principal; or

3    "(ii) any software creating such dig-

4  ital asset.

5    "(28) DIGITAL ASSET MATURITY DATE.—The

6  term 'digital asset maturity date' means, with re-

7  spect to any units of a digital asset, the first date

8  on which 20 percent or more of the total units of

9  such digital asset that are then outstanding as of

10  such date are—

11    "(A) digital commodities; or

12    "(B) digital assets that have been reg-

13  istered with the Commission and issued and

14  sold by a digital asset issuer.

15    "(29) DIGITAL COMMODITY.—The term 'digital

16  commodity' has the meaning given that term under

17  section 1a of the Commodity Exchange Act (7

18  U.S.C. 1a).

19    "(30) END USER DISTRIBUTION.—The term

20  'end user distribution' means an issuance of a unit

21  of a digital asset that—

22    "(A) does not involve an exchange of more

23  than a nominal value of cash, property, or other

24  assets;

Two types:
(A) digital commodities (defined by CE Act
(B) digital assets (defined by 33 Act- requiring registration)

**[Discussion Draft]**

10

> SEC alleges that distribution of Green rewards was DISCRETIONARY

1  "(B) is distributed in a broad, non-discre-

2  tionary manner based on conditions capable of

3  being satisfied by any participant in the

4  blockchain network, including, as incentive-

5  based rewards—

> however, incentive-based distribution is permitted for the following purposes:

6  "(i) to users of the digital asset or

7  any blockchain network to which the dig-

8  ital asset relates; or

9  "(ii) for activities directly related to

10  the operation of the blockchain network,

11  such as mining, validating, staking, or

12  other activity directly tied to the operation

13  of the blockchain network; and

14  "(C) relates to a blockchain network that

15  is a functional network and for which the infor-

> "end user distribution" requires that the blockchain network is "functional" see 31

16  mation described in section 203 of [SHORT

17  TITLE] has been certified and made publicly

18  available.

19  "(31) FUNCTIONAL NETWORK.—With respect

20  to a blockchain network to which a digital asset re-

21  lates, the term 'functional network' means—

22  "(A) the network allows network partici-

23  pants to use such digital asset for—

> a "functional network" requires participants to be able to trade, vote, or engage with layer two applications on the blockchain --- it is not clear that Green holders were able to do any such things.

24  "(i) the transmission and storage of

25  value on the blockchain network;

11

1          "(ii) the participation in an applica-

2     tion running on the blockchain network; or

3          "(iii) the participation in governance

4     of the blockchain network; and

5        "(B) the digital asset does not confer any

6     express contractual rights between the holder

7     and the digital asset issuer.

8        "(32) PAYMENT STABLECOIN.—The term 'pay-

9     ment stablecoin'—

10         "(A) means a digital asset—

11              "(i) that is or is designed to be used

12         as a means of payment or settlement; and

13              "(ii) the issuer of which—

14                   "(I) is obligated to convert, re-

15              deem, or repurchase for a fixed

16              amount of monetary value; and

17                   "(II) represents will maintain or

18              creates the reasonable expectation

19              that it will maintain a stable value rel-

20              ative to the value of a fixed amount of

21              monetary value; and

22         "(B) that is not—

23              "(i) a national currency; or

24              "(ii) a security issued by an invest-

25         ment company registered under section

G:\P\18\MISC\DIGITAL_002.XML                    **[Discussion Draft]**

12

8(a) of the Investment Company Act of
1940 (15 U.S.C. 80a–8(a)).

"(33) RELATED PERSON.—With respect to a
digital asset issuer, the term 'related person'
means—

"(A) a founder, promoter, employee, con-
sultant, advisor, or person serving in a similar
capacity;

"(B) any person that is or was in the pre-
vious 6-month period an executive officer, direc-
tor, trustee, general partner, advisory board
member, or person serving in a similar capacity;
and

"(C) any equity holder or other security
holder of a digital asset issuer.

"(34) RESTRICTED DIGITAL ASSET.—The term
'restricted digital asset' means a digital asset that
is—

"(A) purchased directly from the digital
asset issuer or an affiliated person in a private
offering;

"(B) distributed to a digital asset issuer, a
related person, or an affiliated person in an end
user distribution; or

G:\P\18\MISC\DIGITAL_002.XML          **[Discussion Draft]**

13

1          "(C) distributed to any other person

2      through a transaction that is not an end user

3      distribution.

4      "(35) SECURITIES LAWS.—The term 'securities

5  laws' has the meaning given that term under section

6  3(a) of the Securities Exchange Act of 1934 (15

7  U.S.C. 78c(a)).

8      "(36) SOURCE CODE.—The term 'source code'

9  means a text listing of commands to be compiled or

10  assembled into an executable computer program

11  used by network participants to access the network,

12  amend the code, and confirm transactions.

13      "(37) SPONSOR.—The term 'sponsor' means,

14  with respect to any issuance of digital assets, any

15  person that—

16          "(A) participates in an arrangement for

17      the primary purpose of effecting a sale, end

18      user distribution, or other issuance of such dig-

19      ital assets, including—

20              "(i) the granting of a license or as-

21          signment of intellectual property;

22              "(ii) the making available of free soft-

23          ware or open source licenses; or

24              "(iii) the granting of other rights or

25          transfer of assets material to execution of

14

1          such sale, distribution, or other issuance;

2          or

3              "(B) undertakes any other activity de-

4          signed to avoid a classification as a 'digital

5          asset issuer' for purposes of this Act.".

6      **SEC. 102. DEFINITIONS UNDER THE COMMODITY EX-**

7                    **CHANGE ACT.**

8          Section 1a of the Commodity Exchange Act (7 U.S.C.

9      1a) is amended—

10             (1) in paragraph (40), by striking subpara-

11         graph (F) and the following:

12             "(F) a digital commodity exchange reg-

13         istered under section 5i."; and

14             (2) by adding at the end the following:

15         "(52) DIGITAL COMMODITY.—

16             "(A) IN GENERAL.—The term 'digital com-

17         modity' means—

18                 "(i) a digital asset that was issued to

19             any person, other than a digital asset

20             issuer, a related person, or an affiliated

21             person, through an end user distribution;

22                 "(ii) a digital asset that is held by any

23             person, other than a digital asset issuer, a

24             related person, or an affiliated person,

*Amendments to CE ACT*

G:\P\18\MISC\DIGITAL_002.XML                    **[Discussion Draft]**

15

1    after each network to which the digital

2    asset relates is—

3              "(I) a functional network; and

4              "(II) certified to be a decentral-

5    ized network under section 204 of

6    **⟦SHORT TITLE⟧**; or

7    "(iii) a unit of the digital asset that is

8    held by a related person or an affiliated

9    person for so long as each blockchain net-

10    work to which the digital asset relates is—

11              "(I) a functional network; and

12              "(II) certified to be a decentral-

13    ized network under section 204 of the

14    **⟦SHORT TITLE⟧**.

15    "(B) EXCLUSION.—The term 'digital com-

16    modity' does not include a payment stablecoin.

17    "(53) DIGITAL COMMODITY BROKER.—

18    "(A) IN GENERAL.—The term 'digital com-

19    modity broker' means any person who, in a dig-

20    ital commodity cash or spot market, is—

21              "(i) engaged in soliciting or accepting

22    orders for the purchase or sale of a unit of

23    a digital commodity from a customer that

24    is not an eligible contract participant;

1              "(ii) engaged in soliciting or accepting

2              orders for the purchase or sale of a unit of

3              a digital commodity from a customer on or

4              subject to the rules of a registered entity;

5              or

6              "(iii) registered with the Commission

7              as a digital commodity broker.

8          "(B) EXCEPTION.—The term 'digital com-

9      modity broker' does not include a person solely

10     because the person mines or validates a digital

11     commodity transaction.

12     "(54) DIGITAL COMMODITY CUSTODIAN.—The

13  term 'digital commodity custodian' means an entity

14  in the business of holding, maintaining, or safe-

15  guarding digital commodities.

16     "(55) DIGITAL COMMODITY DEALER.—

17          "(A) IN GENERAL.—The term 'digital com-

18      modity dealer' means any person who—

19              "(i) in digital commodity cash or spot

20              markets—

21                  "(I) holds itself out as a dealer in

22                  a digital commodity;

23                  "(II) makes a market in a digital

24                  commodity;

G:\P\18\MISC\DIGITAL_002.XML                    **[Discussion Draft]**

17

1              "(III) regularly enters into dig-
2         ital commodity transactions as an or-
3         dinary course of business for its own
4         account; or

5              "(IV) engages in any activity
6         causing the person to be commonly
7         known in the trade as a dealer or
8         market maker in a digital commodity;
9         or

10        "(ii) is registered with the Commis-
11   sion as a digital commodity dealer.

12        "(B) EXCEPTION.—The term 'digital com-
13   modity dealer' does not include a person solely
14   because the person—

15             "(i) enters into digital a commodity
16        transaction with an eligible contract partic-
17        ipant;

18             "(ii) enters into a digital commodity
19        transaction on or through a registered dig-
20        ital commodity exchange;

21             "(iii) enters into a digital commodity
22        transaction for the person's own account,
23        either individually or in a fiduciary capac-
24        ity, but not as a part of a regular business;
25        or

18

1          "(iv) mines or validates a digital com-
2              modity transaction.

3      "(56) DIGITAL COMMODITY EXCHANGE.—The
4   term 'digital commodity exchange' means a trading
5   facility that offers or seeks to offer a cash or spot
6   market in at least 1 digital commodity.

7      "(57) DIGITAL ASSET-RELATED DEFINI-
8   TIONS.—The terms 'affiliated person', 'blockchain
9   network', 'decentralized network', 'digital asset',
10  'digital asset issuer', 'end user distribution', 'func-
11  tional network', 'payment stablecoin', 'related per-
12  son', and 'restricted digital asset' have the meaning
13  given the terms, respectively, under section 2(a) of
14  the Securities Act of 1933 (15 U.S.C. 77b(a)).".

**15  SEC. 103. DEFINITIONS UNDER THIS ACT.**

16  In this Act:

17      (1) ALTERNATIVE TRADING SYSTEM.—The
18  term "alternative trading system" has the meaning
19  given that term under section 242.300 of title 17,
20  Code of Federal Regulations.

21      (2) DEFINITIONS UNDER THE COMMODITY EX-
22  CHANGE ACT.—The terms "digital commodity",
23  "digital commodity broker", and "digital commodity
24  exchange" have the meaning given those terms, re-

G:\P\18\MISC\DIGITAL_002.XML    **[Discussion Draft]**

19

1    spectively, under section 1a of the Commodity Ex-

2    change Act (7 U.S.C. 1a).

3    (3) DEFINITIONS UNDER THE SECURITIES ACT

4    OF 1933.—The terms "affiliated person",

5    "blockchain", "blockchain network", "blockchain

6    protocol", "decentralized network", "digital asset",

7    "digital asset issuer", "digital asset maturity date",

8    "end user distribution", "functional network", "pay-

9    ment stablecoin", "restricted digital asset", "securi-

10    ties laws", and "source code" have the meaning

11    given those terms, respectively, under section 2(a) of

12    the Securities Act of 1933 (15 U.S.C. 77b(a)).

13    (4) DEFINITIONS UNDER THE SECURITIES EX-

14    CHANGE ACT OF 1934.—The terms "broker", "deal-

15    er", and "self-regulatory organization" have the

16    meaning given those terms, respectively, under sec-

17    tion 3(a) of the Securities Exchange Act of 1934

18    (15 U.S.C. 78c(a)).

19    **SEC. 104. JOINT RULEMAKINGS.**

20    (a) DEFINITIONS.—The Commodity Futures Trading

21    Commission and the Securities and Exchange Commission

22    shall, jointly, issue rules to further define the following

23    terms:

24    (1) The terms "affiliated person",

25    "blockchain", "blockchain network", "blockchain

Case 2:23-cv-00159-AMA-CMR    Document 37-1    Filed 06/15/23    PageID.265    Page
21 of 163
G:\P\18\MISC\DIGITAL_002.XML    **[Discussion Draft]**

20

1 protocol'', ''decentralized network'', ''decentralized
2 organization'', ''digital asset'', ''digital asset issuer'',
3 ''digital asset maturity date'', ''end user distribu-
4 tion'', ''functional network'', ''related person'', ''re-
5 stricted digital asset'', ''source code'', and ''spon-
6 sor'', as defined under section 2(a) of the Securities
7 Act of 1933.

8 (2) The term ''digital commodity'', as defined
9 under section 1a of the Commodity Exchange Act.

10 (b) JOINT RULEMAKING FOR EXCHANGES.—The
11 Commodity Futures Trading Commission and the Securi-
12 ties and Exchange Commission shall, jointly, issue rules
13 to exempt persons dually registered with the Commodity
14 Futures Trading Commission as a digital commodity ex-
15 change and with the Securities and Exchange Commission
16 as an alternative trading system from duplicative, con-
17 flicting, or unduly burdensome provisions of this Act, the
18 securities laws, and the Commodity Exchange Act and the
19 rules thereunder, to the extent such exemption would fos-
20 ter the development of fair and orderly markets in digital
21 assets, be necessary or appropriate in the public interest,
22 and be consistent with the protection of investors.

G:\P\18\MISC\DIGITAL_002.XML    **[Discussion Draft]**

21

1  **SEC. 105. PROVISIONAL REGISTRATION OF CFTC INTER-**
2      **MEDIARIES.**

3      (a) TRANSITION TO FULL REGISTRATION FOR DIG-
4  ITAL COMMODITY EXCHANGES, BROKERS, AND DEAL-
5  ERS.—

6      (1) IN GENERAL.—

7          (A) PROVISIONAL REGISTRATION STATE-
8          MENT.—Any person may file a provisional reg-
9          istration statement with the Commodity Fu-
10          tures Trading Commission (in this subsection
11          referred to as the "Commission") as a—

12              (i) provisional digital commodity ex-
13              change, for a person intending to register
14              as a digital commodity exchange under sec-
15              tion 5i of the Commodity Exchange Act;

16              (ii) provisional digital commodity
17              broker, for a person intending to register
18              as a digital commodity broker under sec-
19              tion 4u of the Commodity Exchange Act;
20              or

21              (iii) (iii) provisional digital commodity
22              dealer, for a person intending to register
23              as a digital commodity dealer under sec-
24              tion 4u of the Commodity Exchange Act.

25          (B) FILING.—A person desiring to file a
26          provisional registration statement under sub-

G:\P\18\MISC\DIGITAL_002.XML                **[Discussion Draft]**

22

1    paragraph (A) shall submit to the Commission

2    an application in such form and containing—

3             (i) the nature of the registrations the

4             filer intends to pursue;

5             (ii) the information required by para-

6             graph (2);

7             (iii) a certification of compliance with

8             the requirements of paragraph (3); and

9             (iv) such other information as the

10            Commission may require.

11   (2) DISCLOSURE OF GENERAL INFORMATION.—

12   A person filing a provisional registration statement

13   under paragraph (1) shall disclose to the Commis-

14   sion the following:

15            (A) Information concerning the manage-

16            ment of the person, including information de-

17            scribing—

18                (i) the ownership and management of

19                the person;

20                (ii) the financial condition of the per-

21                son;

22                (iii) affiliated entities engaging in dig-

23                ital asset-related activities;

24                (iv) potential conflicts of interest; and

G:\P\18\MISC\DIGITAL_002.XML

**[Discussion Draft]**

23

1            (v) other information relevant to the

2            management of the person, as determined

3            by the Commission.

4        (B) Information concerning the operations

5     of the person, including—

6            (i) any rulebook or other customer

7            order fulfilment rules;

8            (ii) risk management procedures; and

9            (iii) a description of the product list-

10            ing process.

11     (3) REQUIREMENTS.—A person filing a provi-

12 sional registration statement under paragraph (1)

13 shall certify to the Commission that the person com-

14 plies, in such manner as the Commission may by

15 rule or order determine, with the following require-

16 ments:

17        (A) BOOKS AND RECORDS.—A person fil-

18     ing a provisional registration statement under

19     paragraph (1) shall—

20            (i) make such reports as are required

21            by the Commission by rule regarding the

22            transactions, positions, and financial condi-

23            tion of the person;

G:\P\18\MISC\DIGITAL_002.XML   **[Discussion Draft]**

24

1          (ii) keep books and records in such
2      form and manner and for such period as
3      may be prescribed by the Commission; and
4          (iii) keep the books and records re-
5      ferred to in clause (ii) open to inspection
6      and examination by any representative of
7      the Commission.
8      (B) CUSTOMER DISCLOSURES.—A person
9   filing a provisional registration statement under
10  paragraph (1) shall—
11          (i) make disclosures to customers of
12      the person related to offering digital com-
13      modities, relevant to—
14              (I) the experience of the cus-
15          tomer; and
16              (II) the risk tolerance of the cus-
17          tomer;
18          (ii) provide information to customers
19      of the person related to each digital com-
20      modity, including—
21              (I) the history of the digital com-
22          modity;
23              (II) the functionality of the dig-
24          ital commodity;

**[Discussion Draft]**

25

1         (III) the operation of the digital

2      commodity; and

3         (IV) the economics of the digital

4      commodity.

5      (C) CUSTOMER ASSETS.—

6         (i) IN GENERAL.—A person filing a

7      provisional registration statement under

8      paragraph (1) shall—

9         (I) hold customer money, assets,

10     and property in a manner to minimize

11     the risk of loss to the customer or un-

12     reasonable delay in customer access to

13     money, assets, and property of the

14     customer;

15        (II) treat and deal with all

16     money, assets, and property of any

17     customer received as belonging to the

18     customer;

19        (III) segregate all money, assets,

20     and property received from any cus-

21     tomer of the person from the funds of

22     the person, except that—

23        (aa) the money, assets, and

24     property of any customer may be

25     commingled with that of any

G:\P\18\MISC\DIGITAL_002.XML    [Discussion Draft]

26

1    other customer, if separately ac-
2    counted for; and

3        (bb) the share of the money,
4        assets, and property, as in the
5        normal course of business are
6        necessary to margin, guarantee,
7        secure, transfer, adjust, or settle
8        a contract of sale of a digital
9        commodity, may be withdrawn
10       and applied to do so, including
11       the payment of commissions, bro-
12       kerage, interest, taxes, storage,
13       and other charges lawfully accru-
14       ing in connection with the con-
15       tract of sale of a digital com-
16       modity.

17   (ii) ADDITIONAL RESOURCES.—

18       (I) IN GENERAL.—This section
19   shall not prevent or be construed to
20   prevent a person filing a provisional
21   registration statement under para-
22   graph (1) from adding to the cus-
23   tomer money, assets, and property re-
24   quired to be segregated under clause
25   (i), additional amounts of money, as-

1    sets, or property from the account of

2    the person as the person determines

3    necessary to prevent the account of a

4    customer from becoming under-seg-

5    regated.

6    (II) TREATMENT AS CUSTOMER

7    FUNDS.—Any money, assets, or prop-

8    erty deposited pursuant to subclause

9    (I) shall be considered customer prop-

10    erty within the meaning of this para-

11    graph.

12    (D) LISTINGS.—

13    (i) PERMITTED DIGITAL COMMOD-

14    ITIES.—

15    (I) LISTING ON DIGITAL COM-

16    MODITY EXCHANGES.—

17    (aa) IN GENERAL.—Except

18    as provided in clause (ii), a per-

19    son filing a provisional registra-

20    tion statement under paragraph

21    (1) as a provisional digital com-

22    modity exchange may list for

23    trading any digital asset that is

24    listed for trading on the date

25    such person filed the provisional

G:\P\18\MISC\DIGITAL_002.XML                **[Discussion Draft]**

28

1    registration statement with the

2    Commission.

3        (bb) EXCHANGE CERTIFI-

4    CATION FOR EXISTING ASSETS.—

5    On filing a provisional registra-

6    tion statement described under

7    item (aa), the exchange shall

8    submit to the Commission and

9    the Securities and Exchange

10    Commission a certification that

11    any digital asset listed on the ex-

12    change that was issued before the

13    date of the enactment of this

14    Act—

15        (AA) is related to a

16    blockchain network that is a

17    functional network and a de-

18    centralized network; and

19        (BB) satisfies the list-

20    ing standards under section

21    5i(c)(3) of the Commodity

22    Exchange Act.

23        (cc) NEW LISTINGS.—A pro-

24    visional digital commodity ex-

25    change may submit to the Com-

G:\P\18\MISC\DIGITAL_002.XML    **[Discussion Draft]**

29

1          mission and the Securities and

2          Exchange Commission for review

3          under item (bb) a certification

4          attesting that any digital asset

5          the exchange seeks to list—

6                    (AA) is related to a

7               blockchain network that is a

8               functional network and a de-

9               centralized network; and

10                   (BB) satisfies the list-

11              ing standards under section

12              5i(c)(3) of the Commodity

13              Exchange Act.

14          (II) PERMITTED ACTIVITIES BY

15          BROKERS AND DEALERS.—Except as

16          provided in clause (ii), a provisional

17          digital commodity broker or digital

18          commodity dealer may offer for trad-

19          ing any digital commodity that is—

20                   (aa) offered for trading on

21              the date of the provisional digital

22              commodity broker or digital com-

23              modity dealer filed a provisional

24              registration statement with the

25              Commission; or

G:\P\18\MISC\DIGITAL_002.XML                    [Discussion Draft]

30

1          (bb) offered for trading on a
2          provisional digital commodity ex-
3          change.

4      (ii)  DE-LISTING  OF  DIGITAL  AS-
5  SETS.—

6          (I)  NOTICE  OF  NONCOMPLI-
7      ANCE.—

8          (aa)  IN  GENERAL.—After
9          such time as the Commission and
10         the  Securities  and  Exchange
11         Commission  finalize  the  joint
12         rulemaking  described  under  sec-
13         tion  104,  the  Commission  and
14         the  Securities  and  Exchange
15         Commission may issue notices to
16         an entity under this section.

17         (bb)  NOTICE  FROM  THE
18         COMMISSION.—The  Commission
19         may  provide  notice  to  a  provi-
20         sionally  registered  digital  com-
21         modity  exchange  that  a  digital
22         asset  certified  under  clause
23         (i)(I)(bb)  does  not  satisfy  the
24         listing  standards  under  5i(c)(3)
25         of the Commodity Exchange Act.

G:\P\18\MISC\DIGITAL_002.XML    [Discussion Draft]

31

1        (cc) NOTICE FROM THE SE-
2    CURITIES AND EXCHANGE COM-
3    MISSION.—The Securities and
4    Exchange Commission may pro-
5    vide notice to a provisionally reg-
6    istered digital commodity ex-
7    change that a digital asset cer-
8    tified under clause (i)(I)(bb) is
9    not related to a blockchain net-
10   work that is a functional network
11   and a decentralized network

12   (II) DE-LISTING REQUIRED.—

13        (aa) PROVISIONAL DIGITAL
14   COMMODITY EXCHANGE.—A pro-
15   visional digital commodity ex-
16   change shall de-list a digital asset
17   from trading if the provisional
18   digital commodity exchange—

19            (AA) did not submit a
20       certification under clause
21       (i)(I)(bb) with respect to the
22       digital asset; or

23            (BB) received a notice
24       under subclause (I) with re-
25       spect to the digital asset.

G:\P\18\MISC\DIGITAL_002.XML    [Discussion Draft]

32

1           (bb) PROVISIONAL DIGITAL
2       COMMODITY BROKERS AND DEAL-
3       ERS.—A provisional digital com-
4       modity broker or digital com-
5       modity dealer shall de-list a dig-
6       ital asset from trading if—

7               (AA) within 6 months
8           after the date of the enact-
9           ment of this Act, a provi-
10          sional digital commodity ex-
11          change has not submitted a
12          certification under clause
13          (i)(I)(bb) with respect to the
14          digital asset; or

15              (BB) a provisionally
16          registered digital commodity
17          exchange has received a no-
18          tice under subclause (I) with
19          respect to the digital asset.

20          (cc) REASONABLE TIME.—
21      With respect to a required de-
22      listing, the Commission shall pro-
23      vide a provisional digital com-
24      modity exchange, digital com-
25      modity broker, or digital com-

G:\P\18\MISC\DIGITAL_002.XML    **[Discussion Draft]**

33

1  modity dealer sufficient time to

2  ensure—

3    (AA) an orderly

4    winddown of trading activi-

5    ties; and

6    (BB) the prevention of

7    disruptive trading.

8    (4) EXPIRATION OF PROVISIONAL REGISTRA-

9  TION.—

10    (A) IN GENERAL.—No person may file a

11  provisional registration statement with the

12  Commission after the rules for the registration

13  of digital commodity exchanges or digital com-

14  modity brokers or digital commodity dealers are

15  finalized, as appropriate.

16    (B) TRANSITION TO FULL REGISTRA-

17  TION.—The Commission shall provide for an or-

18  derly transition to full registration for any enti-

19  ty that has filed a provisional registration state-

20  ment under this subsection.

21    (C) REVOCATION OF REGISTRATION.—The

22  Commission shall revoke a provisional registra-

23  tion statement filed by any person that fails to

24  comply with this section, after providing notice

25  to the person of the failure of the person to

**[Discussion Draft]**

34

1    comply and affording the person a reasonable

2    opportunity to correct the noncompliance.

3    (5) DEFERMENT OF ENFORCEMENT.—

4        (A) IN GENERAL.—Any person who has

5    filed a provisional registration statement under

6    this section and is in compliance with this sec-

7    tion shall not be subject to an enforcement ac-

8    tion by the Commodity Futures Trading Com-

9    mission or the Securities and Exchange Com-

10    mission, or any other cause of action, for—

11            (i) listing for trading a digital asset

12        that is not a digital commodity; or

13            (ii) failing to register as a digital com-

14        modity    exchange,    digital    commodity

15        broker, or digital commodity dealer.

16        (B) FULL REGISTRATION.—A registered

17    digital commodity exchange, registered digital

18    commodity broker, and registered digital com-

19    modity dealer shall not be subject to an enforce-

20    ment action by the Commodity Futures Trad-

21    ing Commission or the Securities and Exchange

22    Commission, or any other cause of action, while

23    such person was in compliance with this sec-

24    tion, for—

35

1          (i) listing for trading a digital asset

2          that is not a digital commodity; or

3          (ii) failing to register as a digital com-

4          modity exchange.

5 SEC. 106. PROVISIONAL REGISTRATION OF SEC INTER-

6          MEDIARIES.

7 (a) PROVISIONAL REGISTRATION.—

8          (1) IN GENERAL.—Any person engaging in, or

9 proposing to engage in, activities of a broker, dealer,

10 or alternative trading system involving digital assets

11 that would be subject to registration with the Securi-

12 ties and Exchange Commission (in this subsection

13 referred to as the "Commission") may file a provi-

14 sional registration statement with the Commission,

15 and any relevant self-regulatory organization, as a

16 broker, dealer, or alternative trading system, as ap-

17 propriate, by providing the Commission and any rel-

18 evant self-regulatory organization with a statement

19 stating the intention of the person to provisionally

20 register as such under this section.

21          (2) INSPECTION AND EXAMINATION.—Each

22 broker, dealer, or alternative trading system that

23 has filed a provisional registration statement pursu-

24 ant to this section shall be subject to inspection and

25 examination by the Commission.

G:\P\18\MISC\DIGITAL_002.XML    **[Discussion Draft]**

36

1  (3) REGISTRATION PRIOR TO FINAL RULES.—

2      (A) IN GENERAL.—The Commission shall
3      permit any person engaging in, or proposing to
4      engage in, activities of a broker, dealer, or al-
5      ternative trading system involving digital assets
6      to file a provision registration statement pursu-
7      ant to this section.

8      (B) ENFORCEMENT DEFERRED.—Begin-
9      ning on the date of the enactment of this Act
10     and ending on the date the Commission estab-
11     lishes a registration process for purposes of this
12     section, a person engaging in, or proposing to
13     engage in, activities of a broker, dealer, or al-
14     terative trading system involving digital assets
15     shall not be subject to an enforcement action by
16     the Commission for a violation of this Act or
17     the securities laws related to a failure to reg-
18     ister with the Commission before engaging in
19     such activities.

20  (4) EXCEPTION.—A person may not file a pro-
21  visional registration statement to be a broker, deal-
22  er, or alternative trading system is such person is
23  disqualified under the securities laws or rules issued
24  thereunder from acting as a broker, dealer, or alter-
25  native trading system, as applicable.

G:\P\18\MISC\DIGITAL_002.XML    **[Discussion Draft]**

37

1       (5) TREATMENT UNDER CUSTOMER PROTEC-

2   TION RULES.—The revisions required under section

3   304 shall apply to a broker, dealer, or alternative

4   trading system that has provisionally registered pur-

5   suant to this section to the same extent as such revi-

6   sions apply to a registered broker or dealer.

7   (b) TRANSITION TO FULL REGISTRATION.—

8       (1) IN GENERAL.—When finalizing the rules re-

9   quired under this section, the Commission shall pro-

10   vide for an orderly transition to full registration for

11   each broker, dealer, or alternative trading system

12   which has filed a provisional registration statement.

13       (2) REVOCATION OF REGISTRATION.—The

14   Commission shall revoke a provisional registration

15   statement under this section of any broker, dealer,

16   or alternative trading system which fails to comply

17   with this section after notice of such failure to com-

18   ply and a reasonable opportunity to correct the defi-

19   ciency.

20   (c) DEFERMENT OF ENFORCEMENT.—

21       (1) IN GENERAL.—A broker, dealer, or alter-

22   native trading system which has filed a provisional

23   registration statement and is in compliance with the

24   requirements of this section shall not be subject to

25   an enforcement action by the Commission for engag-

38

1      ing in activities involving digital assets, while the
2      provisional registration statement for the broker,
3      dealer, or alternative trading system is in effect,
4      for—

5                (A) a violation of offering a digital asset
6           deemed a security; or

7                (B) failure to register as a broker, dealer,
8           or alternative trading system.

9           (2) FULL REGISTRATION.—A registered broker,
10     dealer, or alternative trading system shall not be
11     subject to an enforcement action by the Commission,
12     while it was provisionally registered for—

13                (A) a violation of offering a digital asset
14          deemed a security; or

15                (B) for failure to register as a broker,
16          dealer, or alternative trading system.

# TITLE II—DIGITAL ASSET EXEMPTIONS

**SEC. 201. EXEMPTED TRANSACTIONS IN DIGITAL ASSETS.**

20     (a) IN GENERAL.—The Securities Act of 1933 (15
21     U.S.C. 77a et seq.) is amended—

22          (1) in section 4(a), by adding at the end the
23     following:

24          "(8) transactions involving the offer or sale of
25     units of a digital asset by a digital asset issuer, if—

G:\P\18\MISC\DIGITAL_002.XML    **[Discussion Draft]**

39

1           ''(A) the aggregate amount of units of the
2       digital asset sold by the digital asset issuer, in-
3       cluding any amount sold in reliance on the ex-
4       emption provided under this paragraph, during
5       the 12-month period preceding the date of such
6       transaction, including the amount sold in such
7       transaction, is not more than $75,000,000;

8           ''(B) with respect to a transaction involv-
9       ing the purchase of units of a digital asset by
10      a person who is not an accredited investor, the
11      aggregate amount of all units of digital assets
12      purchased by such person during the 12-month
13      period preceding the date of such transaction,
14      including the unit of a digital asset purchased
15      in such transaction, does not exceed the greater
16      of—

17              ''(i) 5 percent of the person's annual
18          income or joint income with that person's
19          spouse or spousal equivalent ; or

20              ''(ii) 5 percent of the person's net
21          worth or joint net worth with the person's
22          spouse or spousal equivalent;

23          ''(C) after the completion of the trans-
24      action, the purchaser does not own more than
25      10 percent of the total amount of the units of

G:\P\18\MISC\DIGITAL_002.XML                **[Discussion Draft]**

40

1    the digital asset sold in reliance on the exemp-

2    tion under this paragraph;

3        ''(D) the transaction does not involve the

4    offer or sale of equity securities, debt securities,

5    or debt securities convertible or exchangeable to

6    equity interests;

7        ''(E) the transaction does not involve the

8    offer or sale of a unit of a digital asset by a

9    digital asset issuer that—

10            ''(i) is not organized under the laws of

11        a State, a territory of the United States or

12        the District of Columbia;

13            ''(ii) is a development stage company

14        that either—

15                ''(I) has no specific business plan

16            or purpose; or

17                ''(II) has indicated that the busi-

18            ness plan of the company is to merge

19            with or acquire an unidentified com-

20            pany;

21            ''(iii) is an investment company, as

22        defined in section 3 of the Investment

23        Company Act of 1940 (15 U.S.C. 80a-3),

24        or is excluded from the definition of invest-

25        ment company by section 3(b) or section

41

1          3(c) of that Act (15 U.S.C. 80a–3(b) or

2          80a–3(c));

3                    ''(iv) is issuing fractional undivided

4          interests in oil or gas rights, or a similar

5          interest in other mineral rights;

6                    ''(v) is, or has been, subject to any

7          order of the Commission entered pursuant

8          to section 12(j) of the Securities Exchange

9          Act of 1934 during the 5-year period be-

10         fore the filing of the offering statement;

11         and

12                   ''(vi) is disqualified pursuant to sec-

13         tion 230.262 of title 17, Code of Federal

14         Regulations; and

15                   ''(F) the issuer meets the requirements of

16         section 4B(a).''; and

17         (2) by inserting after section 4A the following:

18   **''SEC. 4B. REQUIREMENTS WITH RESPECT TO CERTAIN DIG-**

19            **ITAL ASSET TRANSACTIONS.**

20         ''(a) REQUIREMENTS    FOR    DIGITAL    ASSET

21   ISSUERS.—

22                   ''(1) INFORMATION REQUIRED IN STATE-

23         MENT.—A digital asset issuer offering or selling a

24         unit of digital asset in reliance on section 4(a)(8)

G:\P\18\MISC\DIGITAL_002.XML         **[Discussion Draft]**

42

1     shall file with the Commission a statement con-
2     taining the following information:

3          ''(A) The name, legal status (including the
4     jurisdiction in which the issuer is organized and
5     the date of organization), and website of the
6     digital asset issuer.

7          ''(B) A certification that the digital asset
8     issuer meets the relevant requirements de-
9     scribed under section 4(a)(8).

10          ''(C) An overview of the material aspects
11     of the offering.

12          ''(D) A description of the purpose and in-
13     tended use of the offering proceeds.

14          ''(E) A description of the plan of distribu-
15     tion of any unit of a digital asset that is to be
16     offered.

17          ''(F) A description of the material risks
18     surrounding ownership of a unit of a digital
19     asset.

20          ''(G) A description of exempt offerings
21     conducted within the past three years by the
22     digital asset issuer.

23          ''(H) A description of the digital asset
24     issuer and the current number of employees of
25     the digital asset issuer.

43

1          ''(I) A description of any material trans-

2      actions or relationships between the digital

3      asset issuer and affiliated persons.

4      ''(2) INFORMATION REQUIRED FOR PUR-

5  CHASERS.—A digital asset issuer shall disclose the

6  information described under section 203 of

7  〖SHORT TITLE〗 on a freely accessible public

8  website.

9      ''(3) ONGOING DISCLOSURE REQUIREMENTS.—

10  A digital asset issuer that has filed a statement

11  under paragraph (1) to offer and sell a unit of a dig-

12  ital asset in reliance on section 4(a)(8) shall file the

13  following with the Commission:

14          ''(A) ANNUAL REPORTS.—An annual re-

15      port that includes any material changes to the

16      information described under paragraph (2) for

17      the current fiscal year and for any fiscal year

18      thereafter, unless the issuer is no longer obli-

19      gated to file such annual report pursuant to

20      paragraph (4).

21          ''(B) SEMIANNUAL REPORTS.—Every six

22      months, a report containing—

23              ''(i) an updated description of the cur-

24          rent state and timeline for the development

25          of the blockchain network to which the dig-

G:\P\18\MISC\DIGITAL_002.XML          **[Discussion Draft]**

44

1       ital asset relates, showing how and when

2       the blockchain network intends or intended

3       to be considered a functional network and

4       a decentralized network; and

5              "(ii) any material changes to the in-

6       formation in the most recent annual re-

7       port.

8       "(C) CURRENT REPORTS.—A current re-

9       port shall be filed with the Commission reflect-

10      ing any fundamental changes to the information

11      previously reported to the Commission by the

12      digital asset issuer.

13      "(4) TERMINATION OF REPORTING REQUIRE-

14      MENTS.—

15             "(A) IN GENERAL.—The ongoing reporting

16      requirements under paragraph (3) shall not

17      apply to a digital asset issuer 180 days after

18      the end of the covered fiscal year.

19             "(B) COVERED FISCAL YEAR DEFINED.—

20      In this paragraph, the term 'covered fiscal year'

21      means the first fiscal year of an issuer in which

22      the blockchain network to which the digital

23      asset relates is a functional network and cer-

24      tified to be a decentralized network under sec-

25      tion 204 of [SHORT TITLE].

**[Discussion Draft]**

45

1    ''(b) REQUIREMENTS FOR INTERMEDIARIES.—

2        ''(1) IN GENERAL.—A person acting as an

3    intermediary in a transaction involving the offer or

4    sale of a unit of a digital asset in reliance on section

5    4(a)(8) shall—

6            ''(A) register with the Commission as a

7        broker under section 15(b) of the Securities Ex-

8        change Act of 1934 (15 U.S.C. 78o(b)); and

9            ''(B) be a member of a national securities

10       association registered under section 15A of the

11       Securities Exchange Act of 1934 (15 U.S.C.

12       78o–3).

13       ''(2) PURCHASER QUALIFICATION.—

14           ''(A) IN GENERAL.—Each time, before ac-

15       cepting any commitment (including any addi-

16       tional commitment from the same person), an

17       intermediary or digital asset issuer shall have a

18       reasonable basis for believing that the pur-

19       chaser satisfies the requirements of section

20       4(a)(8).

21           ''(B) RELIANCE ON PURCHASER'S REP-

22       RESENTATIONS.—For purposes of subpara-

23       graph (A), an intermediary or digital asset

24       issuer may rely on a purchaser's representa-

25       tions concerning the purchaser's annual income

1    and net worth and the amount of the pur-
2    chaser's other investments made, unless the
3    intermediary or digital asset issuer has reason
4    to question the reliability of the representation.
5        "(C) RELIANCE ON INTERMEDIARY.—For
6    purposes of determining whether a transaction
7    meets the requirements described under sub-
8    paragraph (A) through (C) of section 4(a)(8), a
9    digital asset issuer may rely on the efforts of an
10   intermediary.
11   "(c) ADDITIONAL PROVISIONS.—
12       "(1) ACCEPTANCE OF WRITTEN OFFERS;
13   SALES.—After an issuer files a statement under
14   paragraph (1) to offer and sell a digital asset in reli-
15   ance on section 4(a)(8)—
16       "(A) written offers of the digital asset may
17   be made; and
18       "(B) the issuer may sell the digital assets
19   in reliance on section 4(a)(8), if such sales meet
20   all other requirements.
21   "(2) SOLICITATION OF INTEREST.—
22       "(A) IN GENERAL.—At any time before
23   the filing of a statement under paragraph (1),
24   a digital asset issuer may communicate orally
25   or in writing to determine whether there is any

G:\P\18\MISC\DIGITAL_002.XML

**[Discussion Draft]**

47

1    interest in a contemplated offering. Such com-
2    munications are deemed to be an offer of a unit
3    of a digital asset for sale for purposes of the
4    antifraud provisions of the Federal securities
5    laws. No solicitation or acceptance of money or
6    other consideration, nor of any commitment,
7    binding or otherwise, from any person is per-
8    mitted until the statement is filed.

9        ''(B) CONDITIONS.—In any communication
10    described under subparagraph (A), the digital
11    asset issuer shall—

12            ''(i) state that no money or other con-
13        sideration is being solicited, and if sent in
14        response, will not be accepted;

15            ''(ii) state that no offer to buy a unit
16        of a digital asset can be accepted and no
17        part of the purchase price can be received
18        until the statement is filed and then only
19        through an intermediary; and

20            ''(iii) state that a person's indication
21        of interest involves no obligation or com-
22        mitment of any kind.

23        ''(C) INDICATIONS OF INTEREST.—Any
24    written communication described under sub-
25    paragraph (A) may include a means by which

1          a person may indicate to the digital asset issuer

2          that such person is interested in a potential of-

3          fering. A digital asset issuer may require a

4          name, address, telephone number, or email ad-

5          dress in any response form included with a

6          communication described under subparagraph

7          (A).

8               ''(3)    DISQUALIFICATION    PROVISIONS.—The

9     Commission shall issue rules to apply the disquali-

10    fication provisions under section 230.262 of title 17,

11    Code of Federal Regulations, to the exemption pro-

12    vided under section 4(a)(8).

13              ''(4) DIGITAL ASSETS DEEMED RESTRICTED SE-

14    CURITIES.—A unit of a digital asset acquired di-

15    rectly or indirectly from the digital asset issuer in a

16    transaction, or chain of transactions, made in reli-

17    ance on the exemption provided under section

18    4(a)(8) is deemed a restricted digital asset.''.

19    (b) ADDITIONAL EXEMPTIONS.—

20              (1) CERTAIN REGISTRATION REQUIREMENTS.—

21         Section 12(g)(6) of the Securities Exchange Act of

22         1934 (15 U.S.C. 78l(g)(6)) is amended by striking

23         ''under section 4(6)'' and inserting ''under section

24         4(a)(6) or 4(a)(8)''.

G:\P\18\MISC\DIGITAL_002.XML    **[Discussion Draft]**

49

1    (2) EXEMPTION FROM STATE REGULATION.—

2    Section 18(b)(4) of the Securities Act of 1933 (15

3    U.S.C. 77r(b)(4)) is amended—

4        (A) in section (B), by striking "section

5        4(4)" and inserting "section 4(a)(4)";

6        (B) in section (C), by striking "section

7        4(6)" and inserting "section 4(a)(6)";

8        (C) in subparagraph (F)—

9            (i) by striking "section 4(2)" each

10           place such term appears and inserting

11           "section 4(a)(2)";

12           (ii) by striking "or" at the end;

13       (D) in subparagraph (G), by striking the

14       period and inserting "; or"; and

15       (E) by adding at the end the following:

16       "(H) section 4(a)(8).".

17   **SEC. 202. REQUIREMENTS TO TRANSACT IN CERTAIN DIG-**

18   **ITAL ASSETS.**

19   (a) TRANSACTIONS IN CERTAIN RESTRICTED DIG-

20   ITAL ASSETS.—

21       (1) IN GENERAL.—Notwithstanding any other

22       provision of law, subject to paragraph (2), a re-

23       stricted digital asset may be offered and sold on an

24       alternative trading system by any person other than

25       a digital asset issuer if, at the time of such offer or

G:\P\18\MISC\DIGITAL_002.XML    [Discussion Draft]

50

1    sale, the information described in section 203 has

2    been certified and made publicly available for any

3    blockchain network to which the restricted digital

4    asset relates.

5        (2) ADDITIONAL RULES FOR RELATED AND AF-

6    FILIATED PERSONS.—A restricted digital asset

7    owned by a related person or an affiliated person

8    may only be offered or sold after 12 months after

9    the later of—

10            (A) the date on which such restricted dig-

11        ital asset was acquired; or

12            (B) the digital asset maturity date.

13    (b) DIGITAL COMMODITIES.—

14        (1) IN GENERAL.—Subject to paragraph (2), a

15    digital commodity may be offered and sold by any

16    person other than a digital asset issuer, a related

17    person, or an affiliated person.

18        (2) PREVIOUSLY RESTRICTED DIGITAL AS-

19    SETS.—A digital commodity that was a restricted

20    digital asset when it was first acquired, may only be

21    offered or sold by a related person or an affiliated

22    person if—

23            (A) the holder of the digital commodity

24        owned the digital commodity while it was a re-

G:\P\18\MISC\DIGITAL_002.XML                    **[Discussion Draft]**

51

1    stricted digital asset for 12 months after the
2    later of—

3            (i) the date on which such restricted
4        digital asset was acquired; or

5            (ii) the digital asset maturity date;
6        and

7        (B) the digital commodity is offered or
8    sold on or subject to the rules of a digital com-
9    modity exchange registered under section 5i of
10    the Commodity Exchange Act.

11        (3) NOT AN INVESTMENT CONTRACT.—For pur-
12    poses of the securities laws, a transaction in a dig-
13    ital commodity made in compliance with paragraph
14    (1) or (2) shall not be a transaction in an invest-
15    ment contract.

16    (c) SALES RESTRICTIONS FOR AFFILIATED PER-
17    SONS.—A digital asset may be offered or sold by an affili-
18    ated person under subsection (a) or (b) if—

19        (1) the aggregate amount of such digital assets
20    sold in any 3-month period by the affiliated person
21    is not greater than one percent of the digital assets
22    then outstanding; or

23        (2) the affiliated person promptly, following the
24    placement of an order to sell one percent of the dig-

52

1    ital assets then outstanding during any 3-month pe-
2    riod, reports the sale to—

3        (A) the Commodity Futures Trading Com-
4        mission, in the case of an order to sell a digital
5        commodity on or subject to the rules of a dig-
6        ital commodity exchange; or

7        (B) the Securities and Exchange Commis-
8        sion, in the case of a sell order for a restricted
9        digital asset placed with an alternative trading
10       system.

11   (d) TREATMENT UNDER THE SECURITIES LAWS.—

12       (1) NOT AN INVESTMENT CONTRACT.—For pur-
13       poses of the securities laws, an end user distribution
14       shall not be a transaction in an investment contract.

15       (2) EXEMPTION.—Section 5 of the Securities
16       Act of 1933 (15 U.S.C. 77e) shall not apply to an
17       end user distribution or a unit of digital asset issued
18       in such a distribution.

19   **SEC. 203. ENHANCED DISCLOSURE REQUIREMENTS.**

20   (a) DISCLOSURE INFORMATION.—With respect to a
21   digital asset and any blockchain network to which the dig-
22   ital asset relates, the information described under this sec-
23   tion is as follows:

24       (1) SOURCE CODE.—The source code for any
25       blockchain network to which the digital asset relates.

G:\P\18\MISC\DIGITAL_002.XML          **[Discussion Draft]**

53

1    (2) TRANSACTION HISTORY.—A description of

2    the steps necessary to independently access, search,

3    and verify the transaction history of any blockchain

4    network to which the digital asset relates.

5    (3) DIGITAL ASSET ECONOMICS.—A description

6    of the purpose of any blockchain network to which

7    the digital asset relates and the operation of any

8    such blockchain network, including—

9        (A) information explaining the launch and

10       supply process, including the number of digital

11       assets to be issued in an initial allocation, the

12       total number of digital assets to be created, the

13       release schedule for the digital assets, and the

14       total number of digital assets then outstanding;

15       (B) information on any applicable con-

16       sensus mechanism or process for validating

17       transactions, method of generating or mining

18       digital assets, and any process for burning or

19       destroying digital assets on the blockchain net-

20       work;

21       (C) an explanation of governance mecha-

22       nisms for implementing changes to the

23       blockchain network or forming consensus

24       among holders of such digital assets; and

54

(D) sufficient information for a third party
to create a tool for verifying the transaction
history of the digital asset.

(4) PLAN OF DEVELOPMENT.—The current
state and timeline for the development of any
blockchain network to which the digital asset relates,
showing how and when the blockchain network in-
tends or intended to be considered a functional net-
work and decentralized network.

(5) DEVELOPMENT DISCLOSURES.—A list of all
persons who are related persons or affiliated persons
who have been issued a unit of a digital asset by a
digital asset issuer or have a right to a unit of a dig-
ital asset from a digital asset issuer.

(6) RISK FACTOR DISCLOSURES.—Where appro-
priate, provide under the caption "Risk Factors" a
description of the material risks surrounding owner-
ship of a unit of a digital asset. This discussion shall
be organized logically with relevant headings and
each risk factor shall be set forth under a subcaption
that adequately describes the risk.

(b) CERTIFICATION.—With respect to a digital asset
and any blockchain network to which the digital asset re-
lates, the information required to be made available under
this section has been certified if the digital asset issuer,

G:\P\18\MISC\DIGITAL_002.XML                    **[Discussion Draft]**

55

1    an affiliated person, or a decentralized organization (or,

2    if no digital asset issuer, affiliated person, or decentralized

3    organization are identifiable, an alternative trading system

4    or digital commodity exchange) certifies on a quarterly

5    basis to the Securities and Exchange Commission and

6    Commodity Futures Trading Commission that the infor-

7    mation is true and correct.

**SEC. 204. CERTIFICATION OF CERTAIN DIGITAL ASSETS.**

9    (a) CERTIFICATION.—Any person may certify to the

10    Securities and Exchange Commission (in this subsection

11    referred to as the "Commission") that the blockchain net-

12    work to which a digital asset relates is a decentralized net-

13    work.

14    (b) FILING REQUIREMENTS.—A certification de-

15    scribed under subsection (a) shall be filed with the Com-

16    mission, and include—

17        (1) information regarding the person making

18        the certification; and

19        (2) an analysis of the factors on which such

20        person based the certification that the blockchain

21        network is a decentralized network.

22    (c) REBUTTABLE PRESUMPTION.—The Commission

23    may rebut a certification described under subsection (a)

24    with respect to a blockchain network if the Commission,

25    within 30 days of receiving such certification, determines

1 that the blockchain network is not a decentralized net-
2 work.

3        (d) CERTIFICATION REVIEW.—

4            (1) IN GENERAL.—Any blockchain network that
5        relates to a digital asset for which a certification has
6        been made under subsection (a) shall be considered
7        a decentralized network 30 days after the date on
8        which the Commission receives a certification under
9        subsection (a), unless the Commission notifies the
10       person who made the certification within such time
11       that the Commission is staying the certification due
12       to—

13               (A) an inadequate explanation by the per-
14           son making the certification; or

15               (B) any novel or complex issues which re-
16           quire additional time to consider.

17           (2) PUBLIC NOTICE.—The Commission shall
18       make the following available to the public and pro-
19       vide a copy to the Commodity Futures Trading
20       Commission:

21               (A) Each certification received under sub-
22           section (a).

23               (B) Each stay of the Commission under
24           this section, and the reasons therefore.

57

1          (C) Any response from a person making a
2      certification under subsection (a) to a stay of
3      the certification by the Commission.

4  (e) STAY OF CERTIFICATION.—

5          (1) IN GENERAL.—A notification by the Com-
6      mission pursuant to subsection (d)(1) shall stay the
7      certification once for up to an additional 90 days
8      from the date of the notification.

9          (2) PUBLIC COMMENT PERIOD.—Before the end
10      of the 30-day period described under subsection
11      (d)(1), the Commission may begin a public comment
12      period of at least 30 days in conjunction with a stay
13      under this section.

14  (f) DISPOSITION OF CERTIFICATION.—

15          (1) IN GENERAL.—A certification made under
16      subsection (a) shall—

17              (A) become effective—

18                  (i) upon the publication of a notifica-
19              tion from the Commission to the person
20              who made the certification that the Com-
21              mission does not object to the certification;
22              or

23                  (ii) at the expiration of the certifi-
24              cation review period; and

G:\P\18\MISC\DIGITAL_002.XML    **[Discussion Draft]**

58

1          (B) not become effective upon the publica-
2      tion of a notification from the Commission to
3      the person who made the certification that the
4      Commission has rebutted the certification.

5      (2) DETAILED ANALYSIS INCLUDED WITH RE-
6  BUTTAL.—The Commission shall include, with each
7  publication of a notification of rebuttal described
8  under paragraph (1)(B), a detailed analysis of the
9  factors on which the decision was based.

10  (g) RECONSIDERATION.—

11      (1) IN GENERAL.—Any certification of a
12  blockchain network that becomes effective pursuant
13  to subsection (f) shall be eligible to be reconsidered
14  by the Commission one year after the date on which
15  the certification becomes effective and each year
16  thereafter.

17      (2) RECONSIDERATION PROCESS.—To recon-
18  sider a certification under (f), the Commission
19  shall—

20          (A) publish a notice announcing the recon-
21      sideration 120 days before the anniversary of
22      the initial certification;

23          (B) provide a 30 day comment period, be-
24      ginning 90 days before the anniversary of the
25      initial certification; and

G:\P\18\MISC\DIGITAL_002.XML          **[Discussion Draft]**

59

1          (C) after the end of the 30-day comment

2              required under subparagraph (B) and no later

3              than 30 days prior to the anniversary of the ini-

4              tial certification, publish either—

5                  (i) a rebuttal of the certification; or

6                  (ii) a notice that the Commission is

7                      not rebutting the certification.

8          (3) DETAILED ANALYSIS REQUIRED.—The

9      Commission shall include, with each publication of a

10     notification of rebuttal described under paragraph

11     (2)(C)(i), a detailed analysis of the factors on which

12     the decision was based.

13         (h) APPEAL OF REBUTTAL.—If the Commission re-

14     buts a certification under this section, either initially or

15     in a reconsideration under subsection (g), the person mak-

16     ing such certification may appeal the decision of the Com-

17     mission to a court of competent jurisdiction.

# TITLE III—REGISTRATION FOR DIGITAL ASSET INTER-MEDIARIES AT THE SECURI-TIES AND EXCHANGE COM-MISSION

**SEC. 301. TREATMENT OF DIGITAL COMMODITIES AND OTHER DIGITAL ASSETS.**

(a) SECURITIES ACT OF 1933.—Section 2(a)(1) of the Securities Act of 1933 (15 U.S.C. 77b(a)(1)) is amended by adding at the end the following: "The term does not include a digital commodity or payment stablecoin.".

(b) SECURITIES EXCHANGE ACT OF 1934.—Section 3(a) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)) is amended—

(1) in paragraph (6), by striking "receiving deposits or exercising fiduciary powers" and inserting "receiving deposits, exercising fiduciary powers, or offering custody and safekeeping services";

(2) in paragraph (10), by adding at the end the following: "Subject to subsection (i), the term does not include a digital commodity or payment stablecoin.";

(3) by redesignating the second paragraph (80) (relating to funding portals) as paragraph (81); and

[Discussion Draft]

61

1    (4) by adding at the end the following:

2    "(82) DIGITAL ASSET-RELATED TERMS.—The

3 terms 'blockchain network', 'digital asset', 'digital

4 commodity', 'payment stablecoin', and 'restricted

5 digital asset' have the meaning given those terms,

6 respectively, under section 2(a) of the Securities Act

7 of 1933 (15 U.S.C. 77b(a)).".

8    (c) INVESTMENT ADVISERS ACT OF 1940.—Section

9 202(a) of the Investment Advisers Act of 1940 (15 U.S.C.

10 80b–2) is amended—

11    (1) in paragraph (2), by striking "receiving de-

12 posits or exercising fiduciary powers" and inserting

13 "receiving deposits, exercising fiduciary powers, or

14 offering custody and safekeeping services,";

15    (2) in paragraph (18), by adding at the end the

16 following: "The term does not include a digital com-

17 modity or payment stablecoin.";

18    (3) by redesignating the second paragraph (29)

19 (relating to commodity pools) as paragraph (31);

20    (4) by adding at the end, the following:

21    "(32) DIGITAL ASSET-RELATED TERMS.—The

22 terms 'digital commodity' and 'payment stablecoin'

23 have the meaning given those terms, respectively,

24 under section 2(a) of the Securities Act of 1933 (15

25 U.S.C. 77b(a)).".

62

1  (d) INVESTMENT COMPANY ACT OF 1940.—Section

2  2(a) of the Investment Company Act of 1940 (15 U.S.C.

3  80a–2) is amended—

4  (1) in paragraph (5), by striking ''receiving de-

5  posits or exercising fiduciary powers'' and inserting

6  ''receiving deposits, exercising fiduciary powers, or

7  offering custody and safekeeping services,'';

8  (2) in paragraph (36), by adding at the end the

9  following: ''The term does not include a digital com-

10  modity or payment stablecoin.''; and

11  (3) by adding at the end, the following:

12  ''(55) DIGITAL ASSET-RELATED TERMS.—The

13  terms 'digital commodity' and 'payment stablecoin'

14  have the meaning given those terms, respectively,

15  under section 2(a) of the Securities Act of 1933 (15

16  U.S.C. 77b(a)).''.

**SEC. 302. ANTIFRAUD AUTHORITY OVER PAYMENT**

**STABLECOINS.**

19  Section 10 of the Securities Exchange Act of 1934

20  (15 U.S.C. 78j) is amended—

21  (1) by designating the undesignated matter at

22  the end of that section as paragraph (3) of sub-

23  section (c); and

24  (2) in subsection (c)(3), as so designated—

1          (A) by striking "Rules promulgated under
2      subsection (b)" and inserting "Subsection (b)
3      and rules promulgated thereunder";

4          (B) by inserting "and shall apply to pay-
5      ment stablecoins with respect to those cir-
6      cumstances in which the payment stablecoins
7      are brokered, traded, or custodied by a broker
8      or dealer or through an alternative trading sys-
9      tem to the same extent as they apply to securi-
10     ties" after "to the same extent as they apply to
11     securities" each place it occurs; and

12         (C) by inserting before the period at the
13     end the following: "provided, that the Commis-
14     sion shall have no authority under subsection
15     (b) or rules promulgated thereunder with re-
16     spect to payment stablecoins (including the de-
17     sign, structure, or operation of such payment
18     stablecoins) except with respect to cir-
19     cumstances in which the payment stablecoins
20     are brokered, traded, or custodied by a broker
21     or dealer or through an alternative trading sys-
22     tem".

G:\P\18\MISC\DIGITAL_002.XML                    **[Discussion Draft]**

64

**SEC. 303. ELIGIBILITY OF ALTERNATIVE TRADING SYS-**
      **TEMS.**

  (a) IN GENERAL.—Section 5 of the Securities Ex-
change Act of 1934 (15 U.S.C. 78e) is amended—

    (1) by striking "It" and inserting the following:
"(a) IN GENERAL.—It"; and

    (2) by adding at the end the following:
"(b) DIGITAL ASSET PROTECTIONS.—

      "(1) IN GENERAL.—The Commission may not
    preclude a trading platform from operating pursuant
    to a covered exemption on the basis that the assets
    traded or to be traded on such platform are digital
    assets.

      "(2) COVERED EXEMPTION.—In this sub-
    section, the term 'covered exemption' means an ex-
    emption with respect to—

        "(A) the requirements of subsection (a);
      and

        "(B) any other rule of the Commission re-
      lating to the definition of 'exchange'.".

  (b) RULEMAKING.—

      "(1) IN GENERAL.—Not later than 270 days
    after the date of the enactment of this Act, the Se-
    curities and Exchange Commission shall revise the
    covered regulations to—

G:\P\18\MISC\DIGITAL_002.XML    **[Discussion Draft]**

65

1          (A) exempt an alternative trading system

2       permitting the trading of only securities, cov-

3       ered assets, or both from registration as a na-

4       tional securities exchange under section 6 of the

5       Securities Exchange Act of 1934 (15 U.S.C.

6       78f); and

7          (B) permit disintermediated trading be-

8       tween holders of covered assets and real-time

9       settlement through custody of the covered as-

10      sets, consistent with what is necessary or ap-

11      propriate in the public interest or for the pro-

12      tection of investors.

13      (2) DEFINITIONS.—In this subsection—

14         (A) COVERED ASSETS.—The term "cov-

15      ered assets" means restricted digital assets,

16      digital commodities, and payment stablecoins.

17         (B) COVERED REGULATIONS.—The term

18      "covered regulations" means sections 242.301,

19      242.302, 242.303, and 242.304 of title 17,

20      Code of Federal Regulations.

21  **SEC. 304. CUSTOMER PROTECTION RULE MODERNIZATION.**

22      Not later than 270 days after the date of enact-

23  ment of this Act, the Securities and Exchange Commission shall

24  revise section 240.15c3–3 of title 17, Code of Federal Reg-

25  ulations, to provide that a registered broker or dealer shall

66

1  be considered to have control of digital assets, in addition

2  to such other methods as the Securities and Exchange

3  Commission may permit, if—

4      (1) the broker or dealer holds such digital asset

5      at a bank (as defined in section 3(a) of the Securi-

6      ties Exchange Act of 1934 (15 U.S.C. 78c(a)))—

7          (A) that is recognized by the appropriate

8          Federal banking agency or State bank super-

9          visor (as such terms are defined, respectively, in

10         section 3 of the Federal Deposit Insurance Act

11         (12 U.S.C. 1813)) as having custody over such

12         assets;

13         (B) the delivery of which to the broker or

14         dealer does not require the payment of money

15         or value; and

16         (C) that has acknowledged in writing that

17         the digital asset in its custody or control is free

18         of charge, lien, or claim of any kind in favor of

19         such bank or any person claiming through the

20         bank; or

21     (2) the broker or dealer establishes, maintains,

22     and enforces written policies, procedures, and con-

23     trols reasonably designed to demonstrate that the

24     broker has control over the digital asset it holds in

25     custody to protect against the theft, loss, or unau-

G:\P\18\MISC\DIGITAL_002.XML  **[Discussion Draft]**

67

1  thorized use of the private keys necessary to access

2  and transfer such digital assets.

**SEC. 305. MODERNIZATION OF RECORDKEEPING REQUIRE-**

**MENTS.**

5  (a) IN GENERAL.—For purposes of determining cus-

6  tody of assets and maintenance of books and records by

7  brokers, dealers, transfer agents, clearing agencies, and

8  exchanges under the Securities and Exchange Act of 1934

9  (15 U.S.C. 78a et seq.), a person may consider records

10  of ownership of a digital asset determinable from a cryp-

11  tographically secured distributed ledger as accurately indi-

12  cating ownership.

13  (b) REVISION OF RULES.—Not later than 180 days

14  after the date of enactment of this Act, the Securities and

15  Exchange Commission shall issue and revise rules—

16  (1) in accordance with subsection (a); and

17  (2) to authorize registered transfer agents to

18  use the technology described in such subsection to

19  carry out the functions of such transfer agents

20  under section 17A(c)(1) of the Securities Exchange

21  Act of 1934 (15 U.S.C. 78q–1(c)(1)).

**SEC. 306. MODIFICATIONS TO EXISTING RULES FOR DIG-**

**ITAL ASSETS.**

24  (a) STUDY REQUIRED.—Not later than 180 days

25  after the date of the enactment of this Act, the Securities

68

1 and Exchange Commission shall complete a study with re-

2 spect to the modernization of specified regulations under

3 title 17, Code of Federal Regulations to apply to digital

4 assets.

5     (b) RULE REVISION REQUIRED.—Not later than 180

6 days after the date the study required under subsection

7 (a) is completed, the Securities and Exchange Commission

8 shall propose rules to modernize the specified regulations.

9 Such rules may not be unnecessary or unduly burdensome.

10     (c) SPECIFIED REGULATIONS.—In this section, the

11 term ''specified regulations'' means—

12         (1) regulation NMS under part 242 of title 17,

13     Code of Federal Regulations;

14         (2) regulation SCI under part 242 of such title;

15         (3) section 240.15c3–5 of such title; and

16         (4) section 240.15c2–11 of such title.

**17 SEC. 307. TREATMENT OF CERTAIN DIGITAL ASSETS IN**

**18           CONNECTION WITH FEDERALLY REGULATED**

**19           INTERMEDIARIES.**

20     Section 18(b) of the Securities Act of 1933 (15

21 U.S.C. 77r(b)) is amended by adding at the end the fol-

22 lowing:

23         ''(5) EXEMPTION FOR CERTAIN DIGITAL ASSETS

24     IN CONNECTION WITH FEDERALLY REGULATED

25     INTERMEDIARIES.—A digital asset is a covered secu-

69

1    rity with respect to a transaction that is exempt

2    from registration under this Act when—

3          "(A) it is brokered, traded, custodied, or

4         cleared by a broker or dealer registered under

5         section 15 of the Securities Exchange Act of

6         1934; or

7          "(B) traded through an alternative trading

8         system (as defined under section 242.301 of

9         title 17, Code of Federal Regulations.".

**10    SEC. 308. DUAL REGISTRATION.**

11    Any person that is registered with the Securities and

12 Exchange Commission as a broker, dealer, or alternative

13 trading system may register with the Commodity Futures

14 Trading Commission, as appropriate, as—

15    (1) a digital commodity exchange under section

16    5i of the Commodity Exchange Act (7 U.S.C. 1 et

17    seq.), as added by this Act, if the person offers or

18    seeks to offer a cash or spot market in at least one

19    digital commodity;

20    (2) a digital commodity broker under section 4u

21    of the Commodity Exchange Act, as added by this

22    Act, if the person is engaged in soliciting or accept-

23    ing orders in digital commodity cash or spot mar-

24    kets; or

70

1    (3) a digital commodity dealer under section 4u

2        of the Commodity Exchange Act, as added by this

3        Act, if the person holds themself out as a dealer in

4        digital commodity cash or spot markets.

**SEC. 309. EXCLUSION FOR ANCILLARY ACTIVITIES.**

6    The Securities Exchange Act of 1934 (15 U.S.C. 78a

7    et seq.) is amended by inserting after section 15G the fol-

8    lowing:

**"SEC. 15H. EXCLUSION FOR ANCILLARY ACTIVITIES.**

10   "(a) IN GENERAL.—Notwithstanding any other pro-

11   vision of this Act, a person shall not be subject to the

12   regulatory requirements of this Act solely based on the

13   person undertaking any ancillary activities.

14   "(b) EXCEPTIONS.—Subsection (a) shall not be con-

15   strued to apply to the anti-manipulation and anti-fraud

16   authorities of the Commission.

17   "(c) ANCILLARY ACTIVITIES DEFINED.—In this sec-

18   tion, the term 'ancillary activities' means any of the fol-

19   lowing activities related to the operation of a blockchain

20   network:

21       "(1) Network transactions compilation, pool op-

22       erating, relating, searching, sequencing, validating,

23       or acting in a similar capacity with respect to a re-

24       stricted digital asset.

71

1       "(2) Providing computational work, or pro-

2     curing, offering or utilizing network bandwidth, or

3     other similar incidental services with respect to a re-

4     stricted digital asset.

5       "(3) Providing a user-interface that enables a

6     user to read and access data about a blockchain net-

7     work, send messages, or otherwise interact with a

8     blockchain network.

9       "(4) Developing, publishing, constituting, ad-

10    ministering, maintaining, or otherwise distributing a

11    blockchain network.

12      "(5) Developing, publishing, constituting, ad-

13    ministering, maintaining, or otherwise distributing

14    software or systems that create or deploy a hard-

15    ware or software wallet or other system facilitating

16    an individual user's own personal ability to keep,

17    safeguard, or custody the user's restricted digital as-

18    sets or related private keys.".

Case 2:23-cv-00159-AMA-CMR    Document 37-1    Filed 06/15/23    PageID.317    Page
73 of 163
G:\P\18\MISC\DIGITAL_002.XML    [Discussion Draft]

72

# TITLE IV—REGISTRATION FOR DIGITAL ASSET INTERMEDIARIES AT THE COMMODITY FUTURES TRADING COMMISSION

### SEC. 401. COMMISSION JURISDICTION OVER DIGITAL COMMODITY TRANSACTIONS.

(a) IN GENERAL.—Section 2(c)(2) of the Commodity Exchange Act (7 U.S.C. 2(c)(2)) is amended—

(1) in subparagraph (D)(ii)—

(A) in subclause (III), in the matter that precedes item (aa), by inserting "of a commodity, other than a digital commodity," before "that"; and

(B) by redesignating subclauses (IV) and (V) as subclauses (V) and (VI) and inserting after subclause (III) the following:

"(IV) a contract of sale of a digital commodity that—

"(aa) results in actual delivery, as the Commission shall by rule determine, within 2 days or such other period as the Commission may determine by rule or regulation based upon the typical

1    commercial practice in cash or

2    spot markets for the digital com-

3    modity involved; or

4        "(bb) is executed with a reg-

5    istered digital commodity deal-

6    er—

7            "(AA) directly;

8            "(BB) through a reg-

9        istered digital commodity

10        broker; or

11            "(CC) on or subject to

12        the rules of a registered dig-

13        ital commodity exchange;";

14        and

15    (2) by adding at the end the following:

16 "(F) COMMISSION JURISDICTION WITH RESPECT TO

17 DIGITAL COMMODITY TRANSACTIONS.—

18    "(i) IN GENERAL.—Subject to sections 6d and

19    12(e), the Commission shall have exclusive jurisdic-

20    tion with respect to any account, agreement, con-

21    tract, or transaction involving a contract of sale of

22    a digital commodity in interstate commerce, includ-

23    ing in a digital commodity cash or spot market, that

24    is offered, solicited, traded, facilitated, executed,

25    cleared, reported, or otherwise dealt in—

74

1          ''(I) on or subject to the rules of a reg-
2     istered entity or an entity that is required to be
3     registered as a registered entity; or
4          ''(II) by any other entity registered, or re-
5     quired to be registered, with the Commission.
6     ''(ii) LIMITATIONS.—Clause (i) shall not apply
7     with respect to custodial or depository activities for
8     a digital commodity, or custodial or depository ac-
9     tivities for any promise or right to a future digital
10    commodity, of an entity regulated by an appropriate
11    Federal banking agency or a State bank supervisor
12    (within the meaning of section 3 of the Federal De-
13    posit Insurance Act).
14    ''(iii) SAVINGS CLAUSE.—Clause (i) shall not
15    affect, or be interpreted to affect, the scope of the
16    jurisdiction of the Commission with respect to—
17          ''(I) any contract for the purchase or sale
18     of any commodity for future delivery, security
19     futures product, or swap;
20          ''(II) any agreement, contract, or trans-
21     action described in subparagraph (C)(i) or
22     (D)(i);
23          ''(III) any commodity option authorized
24     under section 4c; or

75

1        ''(IV) any leverage transaction authorized
2            under section 19.

3    ''(G) AGREEMENTS, CONTRACTS, AND TRANS-
4    ACTIONS IN STABLECOINS.—

5        ''(i) IN GENERAL.—Except as provided in
6    clause (ii)—

7            ''(I) nothing in this Act governs or applies
8            to an agreement, contract, or transaction in or
9            with a payment stablecoin; and

10           ''(II) a registered entity or other entity
11           registered with the Commission shall not offer,
12           offer to enter into, enter into, execute, confirm
13           the execution of, or conduct any office or busi-
14           ness for the purpose of soliciting, accepting any
15           order for, or otherwise dealing in, any trans-
16           action in, or in connection with, a payment
17           stablecoin.

18       ''(ii) PERMITTED PAYMENT STABLECOIN
19   TRANSACTIONS.—

20           ''(I) A registered entity and any other enti-
21           ty registered with the Commission may trans-
22           act, offer, offer to enter into, enter into, exe-
23           cute, confirm the execution of, solicit, or accept
24           any order for a payment stablecoin, as provided
25           in subclauses (II) and (III).

Case 2:23-cv-00159-AMA-CMR    Document 37-1    Filed 06/15/23    PageID.321    Page
G:\P\18\MISC\DIGITAL_002.XML                [Discussion Draft]
77 of 163

76

1          ''(II) The requirements of this Act shall

2     apply to, and the Commission shall have juris-

3     diction over, an agreement, contract, or trans-

4     action with or for a payment stablecoin that is

5     offered, offered to enter into, entered into, exe-

6     cuted, confirmed the execution of, solicited, or

7     accepted—

8               ''(aa) on or subject to the rules of a

9          registered entity that is registered with the

10         Commission; or

11              ''(bb) by any other entity registered

12         by the Commission.

13         ''(III) The provisions of this Act and the

14     jurisdiction of the Commission shall apply to

15     any agreement, contract, or transaction de-

16     scribed in subclause (II) as if the payment

17     stablecoin were a digital commodity.

18         ''(IV) A registered entity and any other en-

19     tity registered with the Commission may use a

20     payment stablecoin in general business trans-

21     actions that are not otherwise subject to regula-

22     tion by the Commission.''.

23    (b) CONFORMING AMENDMENT.—Section 2(a)(1)(A)

24 of such Act (7 U.S.C. 2(a)(1)(A)) is amended in the 1st

77

1  sentence by inserting "subsection (c)(2)(F) of this section

2  or" before "section 19".

3  **SEC. 402. REQUIRING FUTURES COMMISSION MERCHANTS**

4            **TO USE QUALIFIED DIGITAL COMMODITY**

5            **CUSTODIANS.**

6       Section 4d of the Commodity Exchange Act (7 U.S.C.

7  6d) is amended—

8            (1) in subsection (a)(2)—

9                 (A) in the 1st proviso, by striking "any

10            bank or trust company" and inserting "any

11            bank, trust company, or qualified digital com-

12            modity custodian"; and

13                 (B) by inserting "*: Provided further,* That

14            any such property that is a digital commodity

15            shall be held in a qualified digital commodity

16            custodian" before the period at the end; and

17            (2) in subsection (f)(3)(A)(i), by striking "any

18       bank or trust company" and inserting "any bank,

19       trust company, or qualified digital commodity custo-

20       dian".

21  **SEC. 403. TRADING CERTIFICATION AND APPROVAL FOR**

22            **DIGITAL COMMODITIES.**

23       Section 5c of the Commodity Exchange Act (7 U.S.C.

24  7a–2) is amended—

G:\P\18\MISC\DIGITAL_002.XML          **[Discussion Draft]**

78

1          (1) in subsection (a), by striking "5(d) and

2     5b(c)(2)" and inserting "5(d), 5b(c)(2), and 5i(c)";

3          (2) in subsection (b)—

4               (A) in each of paragraphs (1) and (2), by

5          inserting "digital commodity exchange," before

6          "derivatives"; and

7               (B) in paragraph (3), by inserting "digital

8          commodity exchange," before "derivatives" each

9          place it appears;

10          (3) in subsection (c)—

11               (A) in paragraph (2), by inserting "or par-

12          ticipants" before "(in";

13               (B) in paragraph (4)(B), by striking

14          "1a(10)" and inserting "1a(9)"; and

15               (C) in paragraph (5), by adding at the end

16          the following:

17          "(D) SPECIAL RULES FOR DIGITAL COM-

18     MODITY CONTRACTS.—In certifying any new

19     rule or rule amendment, or listing any new con-

20     tract or instrument, in connection with a con-

21     tract of sale of a commodity for future delivery,

22     option, swap, or other agreement, contract, or

23     transaction, that is based on or references a

24     digital commodity, a registered entity shall

G:\P\18\MISC\DIGITAL_002.XML                    **[Discussion Draft]**

79

1          make or rely on a certification under subsection

2          (d) for the digital commodity."; and

3          (4) by inserting after subsection (c) the fol-

4          lowing:

5     "(d) CERTIFICATIONS FOR DIGITAL COMMODITY

6  TRADING.—

7          "(1) IN GENERAL.—Notwithstanding subsection

8          (c), for the purposes of listing or offering a digital

9          commodity for trading in a digital commodity cash

10         or spot market, an eligible entity shall issue a writ-

11         ten certification that the digital commodity meets

12         the requirements of this Act (including regulations

13         thereunder).

14         "(2) CONTENTS OF THE CERTIFICATION.—

15             "(A) IN GENERAL.—In making a written

16             certification under this paragraph, the eligible

17             entity shall furnish to the Commission—

18                 "(i) an analysis of how the digital

19                 commodity meets the requirements of sec-

20                 tion 5i(c)(3);

21                 "(ii) information about the digital

22                 commodity regarding—

23                     "(I) its purpose and use;

24                     "(II) its unit creation or release

25                     process;

80

1          ''(III) its consensus mechanism;

2          ''(IV) its governance structure;

3          ''(V) its participation and dis-

4     tribution; and

5          ''(VI) its current and proposed

6     functionality; and

7     ''(iii) any other information, analysis,

8     or documentation the Commission may, by

9     rule, require.

10     ''(B) RELIANCE ON PRIOR DISCLO-

11     SURES.—In making a certification under this

12     subsection, an eligible entity may rely on the

13     records and disclosures of any relevant person

14     registered with the Securities and Exchange

15     Commission or other State or Federal agency.

16     ''(3) MODIFICATIONS.—

17     ''(A) IN GENERAL.—An eligible entity shall

18     modify a certification made under paragraph

19     (1) to—

20          ''(i) account for significant changes in

21     nature, operation, or functionality of the

22     digital commodity; or

23          ''(ii) permit trading in units of a dig-

24     ital commodity which were once restricted

25     digital assets.

G:\P\18\MISC\DIGITAL_002.XML    **[Discussion Draft]**

81

1           "(B) RECERTIFICATION.—Modifications

2      required by this subsection shall be subject to

3      the same disapproval and review process as a

4      new certification under paragraphs (4) and (5),

5      unless the Commission or such registered fu-

6      tures association (or committee thereof) to

7      which the Commission has, by rule or order,

8      delegated such authority finds that the digital

9      asset no longer meets the requirements of this

10     subsection (including regulations thereunder).

11     "(4) DISAPPROVAL.—

12          "(A) IN GENERAL.—The written certifi-

13     cation described in paragraph (1) shall become

14     effective unless the Commission or such reg-

15     istered futures association (or committee there-

16     of) to which the Commission has, by rule or

17     order, delegated such authority, finds that the

18     digital asset does not meet the requirements of

19     this Act (including regulations thereunder).

20          "(B) ANALYSIS REQUIRED.—The Commis-

21     sion shall include, with any findings referred to

22     in subparagraph (A), a detailed analysis of the

23     factors on which the decision was based.

24     "(5) REVIEW.—

**[Discussion Draft]**

82

1           ''(A) In general.—The written certifi-
2       cation described in paragraph (1) shall become
3       effective, pursuant to the certification by the el-
4       igible entity and notice of the certification to
5       the public (in a manner determined by the
6       Commission) on the date that is—

7               ''(i) 20 business days after the date
8           the Commission receives the certification
9           (or such shorter period as determined by
10          the Commission by rule or regulation), in
11          the case of a digital commodity that has
12          not been certified under this section or for
13          which a certification is being modified
14          under paragraph (3); or

15              ''(ii) 2 business days after the date
16          the Commission receives the certification
17          (or such shorter period as determined by
18          the Commission by rule or regulation) for
19          any digital commodity that has been cer-
20          tified under this section.

21          ''(B) Extensions.—The time for consid-
22      eration under subparagraph (A) may be ex-
23      tended through notice to the eligible entity that
24      there are novel or complex issues that require
25      additional time to analyze, that the explanation

**[Discussion Draft]**

83

1       by the submitting eligible entity is inadequate,

2       or of a potential inconsistency with this Act—

3             "(i) once, for 30 business days,

4             through written notice to the eligible entity

5             by the Chairman or such other executive

6             office of a registered futures association to

7             which the Commission has, by rule or

8             order, delegated such authority; and

9             "(ii) once, for an additional 30 busi-

10            ness days, through written notice to the

11            digital commodity exchange from the Com-

12            mission or such registered futures associa-

13            tion (or committee thereof) to which the

14            Commission has, by rule or order, dele-

15            gated such authority, that includes a de-

16            scription of any deficiencies with the cer-

17            tification, including any—

18                "(I) novel or complex issues

19                which require additional time to ana-

20                lyze;

21                "(II) missing information or in-

22                adequate explanations; or

23                "(III) potential inconsistencies

24                with this Act.

84

1        ''(6)    CERTIFICATION    REQUIRED.—Notwith-

2    standing any other requirement of this Act, a reg-

3    istered entity or other entity registered with the

4    Commission shall not list for trading, accept for

5    clearing, offer to enter into, enter into, execute, con-

6    firm the execution of, or conduct any office or busi-

7    ness anywhere in the United States, its territories or

8    possessions, for the purpose of soliciting, or accept-

9    ing any order for, or otherwise dealing in, any trans-

10    action in, or in connection with, a digital asset, un-

11    less a certification has been made under this section

12    for the digital asset.

13        ''(7) ELIGIBLE ENTITY DEFINED.—In this sub-

14    section, the term 'eligible entity' means a registered

15    entity or group of registered entities acting jointly.''.

16 **SEC. 404. REGISTRATION OF DIGITAL COMMODITY EX-**

17            **CHANGES.**

18        The Commodity Exchange Act (7 U.S.C. 1 et seq.)

19 is amended by inserting after section 5h the following:

20 **''SEC. 5i. REGISTRATION OF DIGITAL COMMODITY EX-**

21            **CHANGES.**

22        ''(a) IN GENERAL.—

23        ''(1) REGISTRATION.—

24            ''(A) IN GENERAL.—A trading facility that

25        offers or seeks to offer a cash or spot market

1    in at least 1 digital commodity shall register
2    with the Commission as a digital commodity ex-
3    change.

4          ''(B) APPLICATION.—A person desiring to
5    register as a digital commodity exchange shall
6    submit to the Commission an application in
7    such form and containing such information as
8    the Commission may require for the purpose of
9    making the determinations required for ap-
10   proval.

11         ''(C) EXEMPTIONS.—A trading facility
12   that offers or seeks to offer a cash or spot mar-
13   ket in at least 1 digital commodity shall not be
14   required to register under this section if the
15   trading facility—

16               ''(i) permits no more than a de mini-
17         mis amount of trading activity; or

18               ''(ii) serves only customers in a single
19         State or territory.

20   ''(2) ADDITIONAL REGISTRATIONS.—

21         ''(A) WITH THE COMMISSION.—

22               ''(i) IN GENERAL.—A registered dig-
23         ital commodity exchange may also register
24         as—

G:\P\18\MISC\DIGITAL_002.XML    **[Discussion Draft]**

86

1            ''(I) a designated contract mar-
2        ket;
3            ''(II) a swap execution facility; or
4            ''(III) a digital commodity
5        broker.
6        ''(ii) RULES.—The Commission shall
7    prescribe rules for an entity with multiple
8    registrations under clause (i) to—
9            ''(I) exempt the entity from du-
10       plicative, conflicting, or unduly bur-
11       densome provisions of this Act and
12       the rules under this Act, to the extent
13       such an exemption would foster the
14       development of fair and orderly cash
15       or spot markets in digital commodi-
16       ties, be necessary or appropriate in
17       the public interest, and be consistent
18       with the protection of customers; and
19           ''(II) provide for portfolio mar-
20       gining.
21   ''(B) WITH THE SECURITIES AND EX-
22   CHANGE COMMISSION.—A registered digital
23   commodity exchange may register with the Se-
24   curities and Exchange Commission as an alter-

Case 2:23-cv-00159-AMA-CMR    Document 37-1    Filed 06/15/23    PageID.332    Page
G:\P\18\MISC\DIGITAL_002.XML            [Discussion Draft]                    88 of 163

87

1    native trading system to list or trade contracts

2    of sale for digital assets deemed securities.

3        ''(C) WITH A REGISTERED FUTURES ASSO-

4    CIATION.—

5            ''(i) IN GENERAL.—A registered dig-

6        ital commodity exchange shall also be a

7        member of a registered futures association

8        and comply with rules related to such ac-

9        tivity, if the registered digital commodity

10       exchange—

11               ''(I) accepts customer funds re-

12           quired to be segregated under sub-

13           section (d); or

14               ''(II) maintains an account for

15           the trading of digital commodities di-

16           rectly with any person who is not an

17           eligible contract participant under

18           subsection (e).

19           ''(ii) RULEMAKING REQUIRED.—The

20       Commission shall require any registered

21       futures association with a digital com-

22       modity exchange as a member to provide

23       such rules as may be necessary to further

24       compliance with subsections (d) and (e),

1            protect customers, and promote the public

2            interest.

3                "(D) REGISTRATION REQUIRED.—A per-

4            son required to be registered as a digital com-

5            modity exchange under this section shall reg-

6            ister with the Commission as such regardless of

7            whether the person is registered as such with

8            another State or Federal regulator.

9        "(b) TRADING.—

10                "(1) PROHIBITION ON CERTAIN TRADING PRAC-

11            TICES.—

12                    "(A) Section 4b shall apply to any agree-

13                ment, contract, or transaction in a digital com-

14                modity as if the agreement, contract, or trans-

15                action were a contract of sale of a commodity

16                for future delivery.

17                    "(B) Section 4c shall apply to any agree-

18                ment, contract, or transaction in a digital com-

19                modity as if the agreement, contract, or trans-

20                action were a transaction involving the purchase

21                or sale of a commodity for future delivery.

22                "(2) PROHIBITION ON CERTAIN TRADING AC-

23            TIVITIES.—A registered digital commodity exchange

24            shall not—

1    ''(A) offer any contract of sale of a com-
2    modity for future delivery, option, or swap for
3    trading without also being registered as a des-
4    ignated contract market or swap execution fa-
5    cility;
6        ''(B) act as counterparty to any margined,
7    leveraged, or financed transaction under section
8    2(c)(2)(D); or
9        ''(C) act as any counterparty to any mar-
10   gined, leveraged, or financed transaction under
11   section 2(c)(2)(C) without also being registered
12   in a capacity determined by the Commission by
13   rule or regulation.
14   ''(3) TRADING SECURITIES.—A registered dig-
15   ital commodity exchange that is also registered with
16   the Securities and Exchange Commission may offer
17   a contract of sale of a digital asset deemed a secu-
18   rity.
19   ''(4) RULES FOR CERTAIN DIGITAL ASSET
20   SALES.—The digital commodity exchange shall have
21   in place such rules as may be necessary to reason-
22   ably ensure the orderly sale of any unit of a digital
23   commodity sold by a related person or an affiliated
24   person.

90

1    ''(c) CORE PRINCIPLES FOR DIGITAL COMMODITY

2    EXCHANGES.—

3        ''(1) COMPLIANCE WITH CORE PRINCIPLES.—

4            ''(A) IN GENERAL.—To be registered, and

5        maintain registration, as a digital commodity

6        exchange, a digital commodity exchange shall

7        comply with—

8                ''(i) the core principles described in

9            this subsection; and

10               ''(ii) any requirement that the Com-

11           mission may impose by rule or regulation

12           pursuant to section 8a(5).

13           ''(B) REASONABLE DISCRETION OF A DIG-

14       ITAL COMMODITY EXCHANGE.—Unless other-

15       wise determined by the Commission by rule or

16       regulation, a digital commodity exchange de-

17       scribed in subparagraph (A) shall have reason-

18       able discretion in establishing the manner in

19       which the digital commodity exchange complies

20       with the core principles described in this sub-

21       section.

22       ''(2) COMPLIANCE WITH RULES.—A digital

23   commodity exchange shall—

1          ''(A) establish and enforce compliance with

2     any rule of the digital commodity exchange, in-

3     cluding—

4               ''(i) the terms and conditions of the

5          trades traded or processed on or through

6          the digital commodity exchange; and

7               ''(ii) any limitation on access to the

8          digital commodity exchange;

9          ''(B) establish and enforce trading, trade

10    processing, and participation rules that will

11    deter abuses and have the capacity to detect,

12    investigate, and enforce those rules, including

13    means—

14              ''(i) to provide market participants

15         with impartial access to the market; and

16              ''(ii) to capture information that may

17         be used in establishing whether rule viola-

18         tions have occurred; and

19         ''(C) establish rules governing the oper-

20    ation of the exchange, including rules specifying

21    trading procedures to be used in entering and

22    executing orders traded or posted on the facil-

23    ity.

24        ''(3) LISTING STANDARDS FOR DIGITAL COM-

25    MODITIES.—

92

1    ''(A) IN GENERAL.—A digital commodity

2    exchange shall permit trading in only a digital

3    commodity that is not readily susceptible to ma-

4    nipulation.

5    ''(B) PUBLIC INFORMATION REQUIRE-

6    MENTS.—

7        ''(i) IN GENERAL.—A digital com-

8        modity exchange shall permit trading only

9        in a digital commodity if the information

10       required in clause (ii) is correct, current,

11       and available to this public.

12       ''(ii) REQUIRED INFORMATION.—

13       With respect to a digital commodity and

14       each blockchain network to which the dig-

15       ital commodity relates for which the digital

16       commodity exchange will make the digital

17       asset available to the customers of the dig-

18       ital commodity exchange, the information

19       required in this clause is as follows:

20           ''(I) SOURCE CODE.—The source

21           code for any blockchain network to

22           which the digital commodity relates.

23           ''(II) TRANSACTION HISTORY.—A

24           narrative description of the steps nec-

25           essary to independently access, search,

G:\P\18\MISC\DIGITAL_002.XML    **[Discussion Draft]**

93

1    and verify the transaction history of

2    any blockchain network to which the

3    digital commodity relates.

4    "(III) DIGITAL ASSET ECONOM-

5    ICS.—A narrative description of the

6    purpose of any blockchain network to

7    which the digital asset relates and the

8    operation of any such blockchain net-

9    work, including—

10    "(aa) information explaining

11    the launch and supply process,

12    including the number of digital

13    assets to be issued in an initial

14    allocation, the total number of

15    digital assets to be created, the

16    release schedule for the digital

17    assets, and the total number of

18    digital assets then outstanding;

19    "(bb) information detailing

20    any applicable consensus mecha-

21    nism or process for validating

22    transactions, method of gener-

23    ating or mining digital assets,

24    and any process for burning or

1              destroying digital assets on the
2              blockchain network;
3                    "(cc) an explanation of gov-
4              ernance mechanisms for imple-
5              menting changes to the
6              blockchain network or forming
7              consensus among holders of the
8              digital assets; and
9                    "(dd) sufficient information
10             for a third party to create a tool
11             for verifying the transaction his-
12             tory of the digital asset.
13        "(C) ADDITIONAL LISTING CONSIDER-
14        ATIONS.—In addition to the requirements of
15        subparagraphs (A) and (B), a digital com-
16        modity exchange shall consider—
17                    "(i) whether a sufficient percentage of
18             the units of the digital asset are units of
19             a digital commodity to permit robust price
20             discovery;
21                    "(ii) whether it is reasonably unlikely
22             that the transaction history can be fraudu-
23             lently altered by any person or group of
24             persons acting collectively;

1          "(iii) whether the operating structure
2     and system of the digital commodity is se-
3     cure from cybersecurity threats;
4          "(iv) whether the functionality of the
5     digital commodity will protect holders from
6     operational failures;
7          "(v) whether sufficient public informa-
8     tion about the operation, functionality, and
9     use of the digital commodity is available;
10    and
11         "(vi) any other factor which the Com-
12    mission has, by rule, determined to be in
13    the public interest or in furtherance of the
14    requirements of this Act.
15    "(D) RESTRICTED DIGITAL ASSETS.—A
16    digital commodity exchange shall not permit the
17    trading of a unit of a digital asset that is a re-
18    stricted digital asset.
19    "(4) TREATMENT OF CUSTOMER ASSETS.—A
20    digital commodity exchange shall establish standards
21    and procedures that are designed to protect and en-
22    sure the safety of customer money, assets, and prop-
23    erty.
24    "(5) MONITORING OF TRADING AND TRADE
25    PROCESSING.—

96

1          "(A) IN GENERAL.—A digital commodity

2      exchange shall provide a competitive, open, and

3      efficient market and mechanism for executing

4      transactions that protects the price discovery

5      process of trading on the exchange.

6          "(B) PROTECTION OF MARKETS AND MAR-

7      KET PARTICIPANTS.—A digital commodity ex-

8      change shall establish and enforce rules—

9              "(i) to protect markets and market

10         participants from abusive practices com-

11         mitted by any party, including abusive

12         practices committed by a party acting as

13         an agent for a participant; and

14             "(ii) to promote fair and equitable

15         trading on the exchange.

16         "(C) TRADING PROCEDURES.—A digital

17     commodity exchange shall—

18             "(i) establish and enforce rules or

19         terms and conditions defining, or specifica-

20         tions detailing—

21                 "(I) trading procedures to be

22             used in entering and executing orders

23             traded on or through the facilities of

24             the digital commodity exchange; and

G:\P\18\MISC\DIGITAL_002.XML                **[Discussion Draft]**

97

1              ''(II) procedures for trade proc-
2          essing of digital commodities on or
3          through the facilities of the digital
4          commodity exchange; and
5              ''(ii) monitor trading in digital com-
6          modities to prevent manipulation, price
7          distortion, and disruptions of the delivery
8          or cash settlement process through surveil-
9          lance, compliance, and disciplinary prac-
10         tices and procedures, including methods
11         for conducting real-time monitoring of
12         trading and comprehensive and accurate
13         trade reconstructions.
14     ''(6) ABILITY TO OBTAIN INFORMATION.—A
15 digital commodity exchange shall—
16         ''(A) establish and enforce rules that will
17     allow the facility to obtain any necessary infor-
18     mation to perform any of the functions de-
19     scribed in this section;
20         ''(B) provide the information to the Com-
21     mission on request; and
22         ''(C) have the capacity to carry out such
23     international information-sharing agreements as
24     the Commission may require.

Case 2:23-cv-00159-AMA-CMR    Document 37-1    Filed 06/15/23    PageID.343    Page
G:\P\18\MISC\DIGITAL_002.XML    **[Discussion Draft]**    99 of 163

98

1       "(7) EMERGENCY AUTHORITY.—A digital com-
2  modity exchange shall adopt rules to provide for the
3  exercise of emergency authority, in consultation or
4  cooperation with the Commission or a registered en-
5  tity, as is necessary and appropriate, including the
6  authority to facilitate the liquidation or transfer of
7  open positions in any digital commodity or to sus-
8  pend or curtail trading in a digital commodity.

9       "(8) TIMELY PUBLICATION OF TRADING INFOR-
10  MATION.—

11          "(A) IN GENERAL.—A digital commodity
12      exchange shall make public timely information
13      on price, trading volume, and other trading
14      data on digital commodities to the extent pre-
15      scribed by the Commission.

16          "(B) CAPACITY OF DIGITAL COMMODITY
17      EXCHANGE.—A digital commodity exchange
18      shall have the capacity to electronically capture
19      and transmit trade information with respect to
20      transactions executed on the exchange.

21       "(9) RECORDKEEPING AND REPORTING.—

22          "(A) IN GENERAL.—A digital commodity
23      exchange shall—

24              "(i) maintain records of all activities
25          relating to the business of the facility, in-

Case 2:23-cv-00159-AMA-CMR    Document 37-1    Filed 06/15/23    PageID.344    Page
100 of 163
G:\P\18\MISC\DIGITAL_002.XML    [Discussion Draft]

99

1 cluding a complete audit trail, in a form

2 and manner acceptable to the Commission

3 for a period of 5 years;

4  "(ii) report to the Commission, in a

5 form and manner acceptable to the Com-

6 mission, such information as the Commis-

7 sion determines to be necessary or appro-

8 priate for the Commission to perform the

9 duties of the Commission under this Act;

10 and

11  "(iii) keep any such records of digital

12 commodities which relate to a security

13 open to inspection and examination by the

14 Securities and Exchange Commission.

15 "(B) INFORMATION-SHARING.—Subject to

16 section 8, and on request, the Commission shall

17 share information collected under subparagraph

18 (A) with—

19  "(i) the Board;

20  "(ii) the Securities and Exchange

21 Commission;

22  "(iii) each appropriate Federal bank-

23 ing agency;

100

1             "(iv) each appropriate State bank su-

2         pervisor (within the meaning of section 3

3         of the Federal Deposit Insurance Act);

4             "(v) the Financial Stability Oversight

5         Council;

6             "(vi) the Department of Justice; and

7             "(vii) any other person that the Com-

8         mission determines to be appropriate, in-

9         cluding—

10                 "(I) foreign financial supervisors

11             (including foreign futures authorities);

12                 "(II) foreign central banks; and

13                 "(III) foreign ministries.

14         "(C) CONFIDENTIALITY AGREEMENT.—Be-

15     fore the Commission may share information

16     with any entity described in subparagraph (B),

17     the Commission shall receive a written agree-

18     ment from the entity stating that the entity

19     shall abide by the confidentiality requirements

20     described in section 8 relating to the informa-

21     tion on digital commodities that is provided.

22         "(D) PROVIDING INFORMATION.—A digital

23     commodity exchange shall provide to the Com-

24     mission (including any designee of the Commis-

25     sion) information under subparagraph (A) in

101

1        such form and at such frequency as is required

2        by the Commission.

3        "(10) ANTITRUST CONSIDERATIONS.—Unless

4   necessary or appropriate to achieve the purposes of

5   this Act, a digital commodity exchange shall not—

6        "(A) adopt any rules or take any actions

7        that result in any unreasonable restraint of

8        trade; or

9        "(B) impose any material anticompetitive

10       burden on trading.

11       "(11) CONFLICTS OF INTEREST.—A registered

12   digital commodity exchange shall implement conflict-

13   of-interest systems and procedures that—

14       "(A) establish structural and institutional

15       safeguards—

16           "(i) to minimize conflicts of interest

17           that might potentially bias the judgment or

18           supervision of the digital commodity ex-

19           change and contravene the principles of

20           fair and equitable trading and the business

21           conduct standards described in this Act,

22           including conflicts arising out of trans-

23           actions or arrangements with affiliates (in-

24           cluding affiliates engaging in digital com-

25           modity activities) which may include infor-

G:\P\18\MISC\DIGITAL_002.XML   **[Discussion Draft]**

102

1    mation partitions and the legal separation
2    of different persons or entities involved in
3    digital commodity activities; and

4           "(ii) to ensure that the activities of
5    any person within the digital commodity
6    exchange or any affiliated entity relating to
7    research or analysis of the price or market
8    for any digital commodity or acting in a
9    role of providing dealing, brokering, or ad-
10   vising activities are separated by appro-
11   priate informational partitions within the
12   digital commodity exchange or any affili-
13   ated entity from the review, pressure, or
14   oversight of persons whose involvement in
15   pricing, trading, exchange, or clearing ac-
16   tivities might potentially bias their judg-
17   ment or supervision and contravene the
18   core principles of open access and the busi-
19   ness conduct standards described in this
20   Act; and

21          "(B) address such other issues as the
22   Commission determines to be appropriate.

23   "(12) FINANCIAL RESOURCES.—

24          "(A) IN GENERAL.—A digital commodity
25   exchange shall have adequate financial, oper-

G:\P\18\MISC\DIGITAL_002.XML                    **[Discussion Draft]**

103

1      ational, and managerial resources, as deter-

2      mined by the Commission, to discharge each re-

3      sponsibility of the digital commodity exchange.

4              "(B) MINIMUM AMOUNT OF FINANCIAL RE-

5      SOURCES.—A digital commodity exchange shall

6      possess financial resources that, at a minimum,

7      exceed the total amount that would enable the

8      digital commodity exchange to conduct an or-

9      derly wind-down of its activities.

10     "(13) GOVERNANCE FITNESS STANDARDS.—

11             "(A) GOVERNANCE ARRANGEMENTS.—A

12     digital commodity exchange shall establish gov-

13     ernance arrangements that are transparent to

14     fulfill public interest requirements.

15             "(B) FITNESS STANDARDS.—A digital

16     commodity exchange shall establish and enforce

17     appropriate fitness standards for—

18                     "(i) directors; and

19                     "(ii) any individual or entity with di-

20             rect access to, or control of, customer as-

21             sets.

22     "(14) SYSTEM SAFEGUARDS.—A digital com-

23     modity exchange shall—

24             "(A) establish and maintain a program of

25     risk analysis and oversight to identify and mini-

G:\P\18\MISC\DIGITAL_002.XML    **[Discussion Draft]**

104

1    mize sources of operational and security risks,

2    through the development of appropriate controls

3    and procedures, and automated systems, that—

4        ''(i) are reliable and secure; and

5        ''(ii) have adequate scalable capacity;

6        ''(B) establish and maintain emergency

7    procedures, backup facilities, and a plan for dis-

8    aster recovery that allow for—

9        ''(i) the timely recovery and resump-

10        tion of operations; and

11        ''(ii) the fulfillment of the responsibil-

12        ities and obligations of the digital com-

13        modity exchange; and

14        ''(C) periodically conduct tests to verify

15    that the backup resources of the digital com-

16    modity exchange are sufficient to ensure contin-

17    ued—

18        ''(i) order processing and trade

19        matching;

20        ''(ii) price reporting;

21        ''(iii) market surveillance; and

22        ''(iv) maintenance of a comprehensive

23        and accurate audit trail.

24    ''(d) HOLDING OF CUSTOMER ASSETS.—

G:\P\18\MISC\DIGITAL_002.XML                    **[Discussion Draft]**

105

1    "(1) IN GENERAL.—A digital commodity ex-

2    change shall hold customer money, assets, and prop-

3    erty in a manner to minimize the risk of loss to the

4    customer or unreasonable delay in the access to the

5    money, assets, and property of the customer.

6        "(A) SEGREGATION OF FUNDS.—

7            "(i) IN GENERAL.—A digital com-

8            modity exchange shall treat and deal with

9            all money, assets, and property that is re-

10           ceived by the digital commodity exchange,

11           or accrues to a customer as the result of

12           trading in digital commodities, as belong-

13           ing to the customer.

14           "(ii) COMMINGLING PROHIBITED.—

15           Money, assets, and property of a customer

16           described in clause (i) shall be separately

17           accounted for and shall not be commingled

18           with the funds of the digital commodity ex-

19           change or be used to margin, secure, or

20           guarantee any trades or accounts of any

21           customer or person other than the person

22           for whom the same are held.

23       "(B) EXCEPTIONS.—

24           "(i) USE OF FUNDS.—

106

1                                                              "(I) IN GENERAL.—Notwith-

2                    standing subparagraph (A), money,

3                    assets, and property of customers of a

4                    digital commodity exchange described

5                    in subparagraph (A) may, for conven-

6                    ience, be commingled and deposited in

7                    the same account or accounts with

8                    any bank, trust company, derivatives

9                    clearing organization, or qualified dig-

10                   ital commodity custodian.

11                    "(II) WITHDRAWAL.—Notwith-

12                    standing subparagraph (A), such

13                    share of the money, assets, and prop-

14                    erty described in item (aa) as in the

15                    normal course of business shall be

16                    necessary to margin, guarantee, se-

17                    cure, transfer, adjust, or settle a con-

18                    tract of sale of a digital commodity

19                    with a registered entity may be with-

20                    drawn and applied to such purposes,

21                    including the payment of commis-

22                    sions, brokerage, interest, taxes, stor-

23                    age, and other charges, lawfully ac-

24                    cruing in connection with the contract

25                    of sale of a digital commodity.

1             "(ii) COMMISSION ACTION.—Notwith-
2         standing subparagraph (A), in accordance
3         with such terms and conditions as the
4         Commission may prescribe by rule, regula-
5         tion, or order, any money, assets, or prop-
6         erty of the customers of a digital com-
7         modity exchange described in subpara-
8         graph (A) may be commingled and depos-
9         ited in customer accounts with any other
10        money, assets, or property received by the
11        digital commodity exchange and required
12        by the Commission to be separately ac-
13        counted for and treated and dealt with as
14        belonging to the customer of the digital
15        commodity exchange.

16        "(2) PERMITTED INVESTMENTS.—Money de-
17    scribed in subparagraph (A) may be invested in obli-
18    gations of the United States, in general obligations
19    of any State or of any political subdivision of a
20    State, and in obligations fully guaranteed as to prin-
21    cipal and interest by the United States, or in any
22    other investment that the Commission may by rule
23    or regulation prescribe, and such investments shall
24    be made in accordance with such rules and regula-

G:\P\18\MISC\DIGITAL_002.XML                **[Discussion Draft]**

108

1    tions and subject to such conditions as the Commis-

2    sion may prescribe.

3        ''(3) CUSTOMER PROTECTION DURING BANK-

4    RUPTCY.—

5            ''(A) CUSTOMER PROPERTY.—All assets

6        held on behalf of a customer by a digital com-

7        modity exchange, and all money, assets, and

8        property of any customer received by a digital

9        commodity exchange registered under section 5i

10       of this Act for trading or custody, or to facili-

11       tate, margin, guarantee, or secure contracts of

12       sale of a digital commodity (including money,

13       assets, or property accruing to the customer as

14       the result of the transactions), shall be consid-

15       ered customer property for purposes of section

16       761 of title 11, United States Code.

17           ''(B) TRANSACTIONS.—A transaction in-

18       volving a unit of a digital commodity occurring

19       on or subject to the rules of a digital com-

20       modity exchange shall be considered a 'contract

21       for the purchase or sale of a commodity for fu-

22       ture delivery, on or subject to the rules of, a

23       contract market or board of trade' for the pur-

24       poses of the definition of a 'commodity con-

109

1    tract' in section 761 of title 11, United States

2    Code.

3        "(C) EXCHANGES.—A digital commodity

4        exchange shall be considered a futures commis-

5        sion merchant for purposes of section 761 of

6        title 11, United States Code.

7        "(4) MISUSE OF CUSTOMER PROPERTY.—It

8    shall be unlawful—

9        "(A) for any digital commodity exchange

10        that has received any customer money, assets,

11        or property for custody to dispose of, or use any

12        such money, assets, or property as belonging to

13        the digital commodity exchange; or

14        "(B) for any other person, including any

15        depository, other digital commodity exchange,

16        or digital commodity custodian that has re-

17        ceived any customer money, assets, or property

18        for deposit, to hold, dispose of, or use any such

19        money, assets, or property as belonging to the

20        depositing digital commodity exchange or any

21        person other than the customers of the digital

22        commodity exchange.

23        "(e) CUSTOMER PROTECTION.—For each registered

24    digital commodity exchange that maintains an account for

25    the trading of digital commodities directly with a person

110

1   who is not an eligible contract participant, the Commission

2   shall require the digital commodity exchange to register

3   as a digital commodity broker, solely to solicit orders for

4   the digital commodity exchange, directly from any person

5   who is not an eligible contract participant.

6       "(f) DESIGNATION OF CHIEF COMPLIANCE OFFI-

7   CER.—

8           "(1) IN GENERAL.—A digital commodity ex-

9       change shall designate an individual to serve as a

10      chief compliance officer.

11          "(2) DUTIES.—The chief compliance officer

12      shall—

13              "(A) report directly to the board or to the

14          senior officer of the exchange;

15              "(B) review compliance with the core prin-

16          ciples in this subsection;

17              "(C) in consultation with the board of the

18          exchange, a body performing a function similar

19          to that of a board, or the senior officer of the

20          exchange, resolve any conflicts of interest that

21          may arise;

22              "(D) establish and administer the policies

23          and procedures required to be established pur-

24          suant to this section;

G:\P\18\MISC\DIGITAL_002.XML   **[Discussion Draft]**

111

1    ''(E) ensure compliance with this Act and

2    the rules and regulations issued under this Act,

3    including rules prescribed by the Commission

4    pursuant to this section; and

5    ''(F) establish procedures for the remedi-

6    ation of noncompliance issues found during

7    compliance office reviews, look backs, internal

8    or external audit findings, self-reported errors,

9    or through validated complaints.

10    ''(3) REQUIREMENTS FOR PROCEDURES.—In

11    establishing procedures under paragraph (2)(F), the

12    chief compliance officer shall design the procedures

13    to establish the handling, management response, re-

14    mediation, retesting, and closing of noncompliance

15    issues.

16    ''(4) ANNUAL REPORTS.—

17    ''(A) IN GENERAL.—In accordance with

18    rules prescribed by the Commission, the chief

19    compliance officer shall annually prepare and

20    sign a report that contains a description of—

21    ''(i) the compliance of the digital com-

22    modity exchange with this Act; and

23    ''(ii) the policies and procedures, in-

24    cluding the code of ethics and conflict of

G:\P\18\MISC\DIGITAL_002.XML    **[Discussion Draft]**

112

1    interest policies, of the digital commodity

2    exchange.

3        "(B) REQUIREMENTS.—The chief compli-

4    ance officer shall—

5            "(i) submit each report described in

6        subparagraph (A) with the appropriate fi-

7        nancial report of the digital commodity ex-

8        change that is required to be submitted to

9        the Commission pursuant to this section;

10        and

11            "(ii) include in the report a certifi-

12        cation that, under penalty of law, the re-

13        port is accurate and complete.

14    "(g) APPOINTMENT OF TRUSTEE.—

15        "(1) IN GENERAL.—If a proceeding under sec-

16    tion 5e results in the suspension or revocation of the

17    registration of a digital commodity exchange, or if a

18    digital commodity exchange withdraws from registra-

19    tion, the Commission, on notice to the digital com-

20    modity exchange, may apply to the appropriate

21    United States district court where the digital com-

22    modity exchange is located for the appointment of a

23    trustee.

G:\P\18\MISC\DIGITAL_002.XML    **[Discussion Draft]**

113

1    "(2) ASSUMPTION OF JURISDICTION.—If the
2    Commission applies for appointment of a trustee
3    under paragraph (1)—

4              "(A) the court may take exclusive jurisdic-
5         tion over the digital commodity exchange and
6         the records and assets of the digital commodity
7         exchange, wherever located; and

8              "(B) if the court takes jurisdiction under
9         subparagraph (A), the court shall appoint the
10        Commission, or a person designated by the
11        Commission, as trustee with power to take pos-
12        session and continue to operate or terminate
13        the operations of the digital commodity ex-
14        change in an orderly manner for the protection
15        of customers subject to such terms and condi-
16        tions as the court may prescribe.

17   "(h) QUALIFIED DIGITAL COMMODITY CUSTO-
18   DIAN.—A digital commodity exchange shall hold in a
19   qualified digital commodity custodian each unit of a digital
20   commodity that is—

21             "(1) the property of a customer of the digital
22        commodity exchange;

23             "(2) required to be held by the digital com-
24        modity exchange under subsection (c)(12) of this
25        section; or

G:\P\18\MISC\DIGITAL_002.XML                    **[Discussion Draft]**

114

1          ''(3) otherwise so required by the Commission

2     to reasonably protect customers or promote the pub-

3     lic interest.

4     ''(i) EXEMPTIONS.—In order to promote responsible

5 economic or financial innovation and fair competition, or

6 protect customers, the Commission may (on its own initia-

7 tive or on application of the registered digital commodity

8 exchange) exempt, either unconditionally or on stated

9 terms or conditions or for stated periods and either retro-

10 actively or prospectively, or both, a registered digital com-

11 modity exchange from the requirements of this section, if

12 the Commission determines that—

13          ''(1)(A) the exemption would be consistent with

14     the public interest and the purposes of this Act; and

15          ''(B) the exemption will not have a material ad-

16     verse effect on the ability of the Commission or the

17     digital commodity exchange to discharge regulatory

18     or self-regulatory duties under this Act; or

19          ''(2) the digital commodity exchange is subject

20     to comparable, comprehensive supervision and regu-

21     lation by the appropriate government authorities in

22     the home country of the exchange.

23     ''(j) CUSTOMER DEFINED.—In this section, the term

24 'customer' means any person that maintains an account

25 for the trading of digital commodities directly with a dig-

**[Discussion Draft]**

115

1  ital commodity exchange (other than a person that is

2  owned or controlled, directly or indirectly, by the digital

3  commodity exchange) for its own behalf or on behalf of

4  other any person.

5  "(k) FEDERAL PREEMPTION.—Notwithstanding any

6  other provision of law, the Commission shall have exclusive

7  jurisdiction over any digital commodity exchange reg-

8  istered under this section.".

9  **SEC. 405. QUALIFIED DIGITAL COMMODITY CUSTODIANS.**

10  The Commodity Exchange Act (7 U.S.C. 1 et seq.),

11  as amended by the preceding provisions of this Act, is

12  amended by inserting after section 5i the following:

13  **"SEC. 5j. QUALIFIED DIGITAL COMMODITY CUSTODIANS.**

14  "(a) IN GENERAL.—The Commission shall designate

15  a digital commodity custodian as a qualified digital com-

16  modity custodian, if—

17      "(1) the digital commodity custodian is—

18          "(A) subject to the supervision of the Com-

19          mission, an appropriate Federal banking agen-

20          cy, or the Securities and Exchange Commission,

21          and permitted by the supervisor to engage in

22          custodial activity;

23          "(B) subject to the supervision of a State

24          bank supervisor (within the meaning of section

25          3 of the Federal Deposit Insurance Act), unless

116

1       the Commission finds the digital commodity
2       custodian is not subject to adequate supervision
3       and appropriate regulation; or

4           ''(C) subject to the supervision of an ap-
5       propriate foreign governmental authority in the
6       home country of the digital commodity custo-
7       dian, if the Commission finds that the digital
8       commodity custodian is subject to adequate su-
9       pervision and appropriate regulation; and

10      ''(2) the digital commodity custodian agrees to
11      such regular and periodic sharing of information re-
12      garding any accounts relating to an entity registered
13      with the Commission, as the Commission determines
14      by rule shall be reasonably necessary to effectuate
15      any of the provisions, or to accomplish any of the
16      purposes, of this Act.

17      ''(b) RULEMAKING AUTHORITY.—For purposes of
18  subsection (a), the Commission, by rule or order, shall de-
19  fine 'adequate supervision' and 'appropriate regulation' as
20  any regulatory regime which meets such minimum stand-
21  ards for supervision and regulation as the Commission de-
22  termines are reasonably necessary to protect the property
23  of customers of a registered digital commodity exchange,
24  including minimum standards relating to—

25          ''(1) accessibility of customer assets;

[Discussion Draft]

117

1       ''(2) financial resources;

2           ''(3) risk management requirements;

3           ''(4) governance arrangements;

4           ''(5) fitness standards;

5           ''(6) recordkeeping;

6           ''(7) information-sharing; and

7           ''(8) conflicts of interest.

8       ''(c) AUTHORITY TO TEMPORARILY SUSPEND STAND-

9   ARDS.—The Commission may, by rule or order, tempo-

10  rarily suspend, in whole or in part, any requirement im-

11  posed under, or any standard referred to in, this section

12  if the Commission determines that the suspension would

13  be consistent with the public interest and the purposes of

14  this Act.''.

**15  SEC. 406. REGISTRATION AND REGULATION OF DIGITAL**

**16          COMMODITY BROKERS AND DEALERS.**

17      The Commodity Exchange Act (7 U.S.C. 1 et seq.),

18  as amended by the preceding provisions of this Act, is

19  amended by inserting after section 4t the following:

**20  "SEC. 4u. REGISTRATION AND REGULATION OF DIGITAL**

**21          COMMODITY BROKERS AND DEALERS.**

22      ''(a) REGISTRATION.—It shall be unlawful for any

23  person to act as a digital commodity broker or digital com-

24  modity dealer unless the person is registered as such with

25  the Commission.

G:\P\18\MISC\DIGITAL_002.XML **[Discussion Draft]**

118

1     "(b) REQUIREMENTS.—

2       "(1) IN GENERAL.—A person shall register as

3 a digital commodity broker or digital commodity

4 dealer by filing a registration application with the

5 Commission.

6       "(2) CONTENTS.—

7         "(A) IN GENERAL.—The application shall

8 be made in such form and manner as is pre-

9 scribed by the Commission, and shall contain

10 such information as the Commission considers

11 necessary concerning the business in which the

12 applicant is or will be engaged.

13         "(B) CONTINUAL REPORTING.—A person

14 that is registered as a digital commodity broker

15 or digital commodity dealer shall continue to

16 submit to the Commission reports that contain

17 such information pertaining to the business of

18 the person as the Commission may require.

19       "(3) TRANSITION.—Within 180 days after the

20 date of the enactment of this section, the Commis-

21 sion shall prescribe rules providing for the registra-

22 tion of digital commodity brokers and digital com-

23 modity dealers under this section.

24       "(4) STATUTORY DISQUALIFICATION.—Except

25 to the extent otherwise specifically provided by rule,

G:\P\18\MISC\DIGITAL_002.XML                **[Discussion Draft]**

119

1      regulation, or order, it shall be unlawful for a digital

2      commodity broker or digital commodity dealer to

3      permit any person who is associated with a digital

4      commodity broker or a digital commodity dealer and

5      who is subject to a statutory disqualification to ef-

6      fect or be involved in effecting a transaction on be-

7      half of the digital commodity broker or the digital

8      commodity dealer, respectively, if the digital com-

9      modity broker or digital commodity dealer, respec-

10     tively, knew, or in the exercise of reasonable care

11     should have known, of the statutory disqualification.

12         ''(5) LIMITATIONS ON CERTAIN ASSETS.—A

13     registered digital commodity broker or registered

14     digital commodity dealer shall not offer, offer to

15     enter into, enter into, or facilitate any transaction

16     with a digital commodity which has not been cer-

17     tified under section 5c(d).

18     ''(c) ADDITIONAL REGISTRATIONS.—

19         ''(1) WITH THE COMMISSION.—Any person re-

20     quired to be registered as a digital commodity

21     broker or digital commodity dealer may also be reg-

22     istered as a futures commission merchant, intro-

23     ducing broker, or swap dealer.

24         ''(2) WITH THE SECURITIES AND EXCHANGE

25     COMMISSION.—Any person required to be registered

G:\P\18\MISC\DIGITAL_002.XML                    **[Discussion Draft]**

120

1      as a digital commodity broker or digital commodity

2      dealer under this section may register with the Secu-

3      rities and Exchange Commission as a broker or deal-

4      er, pursuant to section 15(b) of the Securities Ex-

5      change Act of 1934, as applicable, if the broker or

6      dealer limits its solicitation of orders, acceptance of

7      orders, or execution of orders, or placing of orders

8      on behalf of others involving any contract of sale to

9      digital assets.

10          ''(3) WITH A REGISTERED FUTURES ASSOCIA-

11      TION REGISTRATION.—Any person required to be

12      registered as a digital commodity broker or digital

13      commodity dealer under this section shall register as

14      such with a registered futures association.

15          ''(4) REGISTRATION REQUIRED.—Any person

16      required to be registered as a digital commodity

17      broker or digital commodity dealer under this sec-

18      tion shall register with the Commission as such re-

19      gardless of whether the person is registered as such

20      with another State or Federal regulator.

21      ''(d) RULEMAKING.—

22          ''(1) IN GENERAL.—The Commission shall pre-

23      scribe such rules applicable to registered digital com-

24      modity brokers and registered digital commodity

25      dealers as are appropriate to carry out this section,

121

1 including rules in the public interest that limit the

2 activities of digital commodity brokers and digital

3 commodity dealers.

4  "(2) MULTIPLE REGISTRANTS.—The Commis-

5 sion shall prescribe rules or regulations permitting,

6 or may otherwise authorize, exemptions or additional

7 requirements applicable to persons with multiple reg-

8 istrations under this Act, including as futures com-

9 mission merchants, introducing brokers, digital com-

10 modity brokers, digital commodity dealers, or swap

11 dealers, as may be in the public interest to reduce

12 compliance costs and promote customer protection.

13 "(e) CAPITAL REQUIREMENTS.—

14  "(1) IN GENERAL.—Each registered digital

15 commodity broker and registered digital commodity

16 dealer shall meet such minimum capital require-

17 ments as the Commission may prescribe to ensure

18 that the digital commodity broker or digital com-

19 modity dealer, respectively, is able to—

20  "(A) conduct an orderly wind-down of the

21 activities of the digital commodity broker or

22 digital commodity dealer, respectively; and

23  "(B) fulfill the customer obligations of the

24 digital commodity broker or digital commodity

[Discussion Draft]

122

1          dealer, respectively, for any margined, lever-
2          aged, or financed transactions.

3          "(2) RULE OF CONSTRUCTION.—Nothing in
4      this section shall limit, or be construed to limit, the
5      authority of the Securities and Exchange Commis-
6      sion to set financial responsibility rules for a broker
7      or dealer registered pursuant to section 15(b) of the
8      Securities Exchange Act of 1934 (15 U.S.C. 78o(b))
9      (except for section 15(b)(11) of such Act (15 U.S.C.
10     78o(b)(11)) in accordance with section 15(c)(3) of
11     such Act (15 U.S.C. 78o(c)(3)).

12         "(3) FUTURES COMMISSION MERCHANTS AND
13     OTHER DEALERS.—

14              "(A) IN GENERAL.—Each futures commis-
15         sion merchant, introducing broker, broker, and
16         dealer shall maintain sufficient capital to com-
17         ply with the stricter of any applicable capital
18         requirements to which the futures commission
19         merchant, introducing broker, broker, or dealer,
20         respectively, is subject under this Act or the Se-
21         curities Exchange Act of 1934 (15 U.S.C. 78a
22         et seq.).

23              "(B) COORDINATION OF CAPITAL RE-
24         QUIREMENTS.—

123

1          "(i) COMMISSION RULE.—The Com-
2      mission shall, by rule, provide appropriate
3      offsets to any applicable capital require-
4      ment for a person with multiple registra-
5      tions as a digital commodity dealer, digital
6      commodity broker, futures commission
7      merchant, or introducing broker.

8          "(ii) JOINT RULE.—The Commission
9      and the Securities and Exchange Commis-
10      sion shall jointly, by rule, provide appro-
11      priate offsets to any applicable capital re-
12      quirement for a person with multiple reg-
13      istrations as a digital commodity dealer,
14      digital commodity broker, futures commis-
15      sion merchant, introducing broker, broker,
16      or dealer.

17  "(f) REPORTING AND RECORDKEEPING.—Each reg-
18  istered digital commodity broker and registered digital
19  commodity dealer—

20          "(1) shall make such reports as are required by
21      the Commission by rule or regulation regarding the
22      transactions, positions, and financial condition of the
23      digital commodity broker or digital commodity deal-
24      er, respectively;

124

1       ''(2) shall keep books and records in such form

2    and manner and for such period as may be pre-

3    scribed by the Commission by rule or regulation; and

4       ''(3) shall keep the books and records open to

5    inspection and examination by any representative of

6    the Commission.

7    ''(g) DAILY TRADING RECORDS.—

8       ''(1) IN GENERAL.—Each registered digital

9    commodity broker and registered digital commodity

10    dealer shall maintain daily trading records of the

11    transactions of the digital commodity broker or dig-

12    ital commodity dealer, respectively, and all related

13    records (including related forward or derivatives

14    transactions) and recorded communications, includ-

15    ing electronic mail, instant messages, and recordings

16    of telephone calls, for such period as the Commission

17    may require by rule or regulation.

18       ''(2) INFORMATION REQUIREMENTS.—The daily

19    trading records shall include such information as the

20    Commission shall require by rule or regulation.

21       ''(3) COUNTERPARTY RECORDS.—Each reg-

22    istered digital commodity broker and registered dig-

23    ital commodity dealer shall maintain daily trading

24    records for each customer or counterparty in a man-

G:\P\18\MISC\DIGITAL_002.XML                    [Discussion Draft]

125

1    ner and form that is identifiable with each digital

2    commodity transaction.

3        "(4) AUDIT TRAIL.—Each registered digital

4    commodity broker and registered digital commodity

5    dealer shall maintain a complete audit trail for con-

6    ducting comprehensive and accurate trade recon-

7    structions.

8    "(h) BUSINESS CONDUCT STANDARDS.—

9        "(1) IN GENERAL.—Each registered digital

10   commodity broker and registered digital commodity

11   dealer shall conform with such business conduct

12   standards as the Commission, by rule or regulation,

13   prescribes related to—

14           "(A) fraud, manipulation, and other abu-

15       sive practices involving spot or margined, lever-

16       aged, or financed digital commodity trans-

17       actions (including transactions that are offered

18       but not entered into);

19           "(B) diligent supervision of the business of

20       the registered digital commodity broker or dig-

21       ital commodity dealer, respectively; and

22           "(C) such other matters as the Commis-

23       sion deems appropriate.

126

1    "(2) BUSINESS CONDUCT REQUIREMENTS.—

2    The Commission shall, by rule, prescribe business

3    conduct requirements which—

4        "(A) require disclosure by a registered dig-

5        ital commodity broker and registered digital

6        commodity dealer to any counterparty to the

7        transaction (other than an eligible contract par-

8        ticipant) of—

9            "(i) information about the material

10            risks and characteristics of the digital com-

11            modity;

12            "(ii) information about the material

13            risks and characteristics of the transaction;

14        "(B) establish a duty for such a digital

15        commodity broker and such a digital commodity

16        dealer to communicate in a fair and balanced

17        manner based on principles of fair dealing and

18        good faith;

19        "(C) establish standards governing digital

20        commodity platform marketing and advertising,

21        including testimonials and endorsements; and

22        "(D) establish such other standards and

23        requirements as the Commission may determine

24        are—

25            "(i) in the public interest;

G:\P\18\MISC\DIGITAL_002.XML    **[Discussion Draft]**

127

1        ''(ii) appropriate for the protection of

2    customers; or

3        ''(iii) otherwise in furtherance of the

4    purposes of this Act.

5    ''(3) SPECIAL REQUIREMENTS FOR DIGITAL

6    COMMODITY BROKERS OR DEALERS ACTING AS ADVI-

7    SORS.—It shall be unlawful for a registered digital

8    commodity broker or registered digital commodity

9    dealer to—

10        ''(A) employ any device, scheme, or artifice

11    to defraud any customer or counterparty;

12        ''(B) engage in any transaction, practice,

13    or course of business that operates as a fraud

14    or deceit on any customer or counterparty; or

15        ''(C) engage in any act, practice, or course

16    of business that is fraudulent, deceptive, or ma-

17    nipulative.

18    ''(i) DUTIES.—

19    ''(1) RISK MANAGEMENT PROCEDURES.—Each

20    registered digital commodity broker and registered

21    digital commodity dealer shall establish robust and

22    professional risk management systems adequate for

23    managing the day-to-day business of the digital com-

24    modity broker or digital commodity dealer, respec-

25    tively.

128

1    ''(2) DISCLOSURE OF GENERAL INFORMA-
2    TION.—Each registered digital commodity broker
3    and registered digital commodity dealer shall dis-
4    close to the Commission information concerning—

5        ''(A) the terms and conditions of the trans-
6        actions of the digital commodity broker or dig-
7        ital commodity dealer, respectively;

8        ''(B) the trading operations, mechanisms,
9        and practices of the digital commodity broker
10       or digital commodity dealer, respectively;

11       ''(C) financial integrity protections relating
12       to the activities of the digital commodity broker
13       or digital commodity dealer, respectively; and

14       ''(D) other information relevant to trading
15       in digital commodities by the digital commodity
16       broker or digital commodity dealer, respectively.

17   ''(3) ABILITY TO OBTAIN INFORMATION.—Each
18   registered digital commodity broker and registered
19   digital commodity dealer shall—

20       ''(A) establish and enforce internal systems
21       and procedures to obtain any necessary infor-
22       mation to perform any of the functions de-
23       scribed in this section; and

24       ''(B) provide the information to the Com-
25       mission, on request.

129

1 ''(4) CONFLICTS OF INTEREST.—Each reg-

2 istered digital commodity broker and digital com-

3 modity dealer shall implement conflict-of-interest

4 systems and procedures that—

5    ''(A) establish structural and institutional

6    safeguards—

7       ''(i) to minimize conflicts of interest

8       that might potentially bias the judgment or

9       supervision of the digital commodity broker

10      or digital commodity dealer, respectively,

11      and contravene the principles of fair and

12      equitable trading and the business conduct

13      standards described in this Act, including

14      conflicts arising out of transactions or ar-

15      rangements with affiliates (including affili-

16      ates acting as issuers, market-makers, or

17      custodians), which may include information

18      partitions and the legal separation of dif-

19      ferent digital commodity transaction inter-

20      mediaries; and

21      ''(ii) to ensure that the activities of

22      any person within the firm relating to re-

23      search or analysis of the price or market

24      for any digital commodity or acting in a

25      role of providing exchange activities or

G:\P\18\MISC\DIGITAL_002.XML    **[Discussion Draft]**

130

1          making determinations as to accepting ex-
2          change customers are separated by appro-
3          priate informational partitions within the
4          firm from the review, pressure, or over-
5          sight of persons whose involvement in pric-
6          ing, trading, exchange, or clearing activi-
7          ties might potentially bias their judgment
8          or supervision and contravene the core
9          principles of open access and the business
10         conduct standards described in this Act;
11         and

12             "(B) address such other issues as the
13         Commission determines to be appropriate.

14         "(5) ANTITRUST CONSIDERATIONS.—Unless
15     necessary or appropriate to achieve the purposes of
16     this Act, a digital commodity broker or digital com-
17     modity dealer shall not—

18             "(A) adopt any process or take any action
19         that results in any unreasonable restraint of
20         trade; or

21             "(B) impose any material anticompetitive
22         burden on trading or clearing.

23         "(j) DESIGNATION OF CHIEF COMPLIANCE OFFI-
24     CER.—

Case 2:23-cv-00159-AMA-CMR   Document 37-1   Filed 06/15/23   PageID.376   Page
132 of 163
G:\P\18\MISC\DIGITAL_002.XML   **[Discussion Draft]**

131

1           ''(1) IN GENERAL.—Each registered digital

2    commodity broker and registered digital commodity

3    dealer shall designate an individual to serve as a

4    chief compliance officer.

5           ''(2) DUTIES.—The chief compliance officer

6    shall—

7                ''(A) report directly to the board or to the

8        senior officer of the registered digital com-

9        modity broker and registered digital commodity

10        dealer;

11                ''(B) review the compliance of the reg-

12        istered digital commodity broker and registered

13        digital commodity dealer with respect to the

14        registered digital commodity broker and reg-

15        istered digital commodity dealer requirements

16        described in this section;

17                ''(C) in consultation with the board of di-

18        rectors, a body performing a function similar to

19        the board, or the senior officer of the organiza-

20        tion, resolve any conflicts of interest that may

21        arise;

22                ''(D) be responsible for administering each

23        policy and procedure that is required to be es-

24        tablished pursuant to this section;

G:\P\18\MISC\DIGITAL_002.XML    **[Discussion Draft]**

132

1          "(E) ensure compliance with this Act (in-
2      cluding regulations), including each rule pre-
3      scribed by the Commission under this section;

4          "(F) establish procedures for the remedi-
5      ation of noncompliance issues identified by the
6      chief compliance officer through any—

7              "(i) compliance office review;

8              "(ii) look-back;

9              "(iii) internal or external audit find-
10         ing;

11             "(iv) self-reported error; or

12             "(v) validated complaint; and

13         "(G) establish and follow appropriate pro-
14     cedures for the handling, management response,
15     remediation, retesting, and closing of non-
16     compliance issues.

17     "(3) ANNUAL REPORTS.—

18         "(A) IN GENERAL.—In accordance with
19     rules prescribed by the Commission, the chief
20     compliance officer shall annually prepare and
21     sign a report that contains a description of—

22             "(i) the compliance of the registered
23         digital commodity broker and registered
24         digital commodity dealer with respect to
25         this Act (including regulations); and

G:\P\18\MISC\DIGITAL_002.XML    **[Discussion Draft]**

133

1          ''(ii) each policy and procedure of the

2      registered digital commodity broker and

3      registered digital commodity dealer of the

4      chief compliance officer (including the code

5      of ethics and conflict of interest policies).

6          ''(B) REQUIREMENTS.—The chief compli-

7      ance officer shall ensure that a compliance re-

8      port under subparagraph (A)—

9          ''(i) accompanies each appropriate fi-

10     nancial report of the registered digital

11     commodity broker and registered digital

12     commodity dealer that is required to be

13     furnished to the Commission pursuant to

14     this section; and

15         ''(ii) includes a certification that,

16     under penalty of law, the compliance re-

17     port is accurate and complete.

18  ''(k) SEGREGATION OF DIGITAL COMMODITIES.—

19      ''(1) HOLDING OF CUSTOMER ASSETS.—

20          ''(A) IN GENERAL.—Each registered dig-

21      ital commodity broker and registered digital

22      commodity dealer shall hold customer money,

23      assets, and property in a manner to minimize

24      the risk of loss to the customer or unreasonable

134

1  delay in customer access to the money, assets,
2  and property of the customer.

3  "(B) QUALIFIED DIGITAL COMMODITY
4  CUSTODIAN.—Each registered digital com-
5  modity broker and registered digital commodity
6  dealer shall hold in a qualified digital com-
7  modity custodian each unit of a digital com-
8  modity that is—

9      "(i) the property of a customer or
10     counterparty of the digital commodity
11     broker or digital commodity dealer, respec-
12     tively; or

13     "(ii) otherwise so required by the
14     Commission to reasonably protect cus-
15     tomers or promote the public interest.

16  "(2) SEGREGATION OF FUNDS.—

17  "(A) IN GENERAL.—Each registered dig-
18  ital commodity broker and registered digital
19  commodity dealer shall treat and deal with all
20  money, assets, and property that is received by
21  the registered digital commodity broker or reg-
22  istered digital commodity dealer, or accrues to
23  a customer as the result of trading in digital
24  commodities, as belonging to the customer.

25  "(B) COMMINGLING PROHIBITED.—

135

1          "(i) IN GENERAL.—Except as pro-
2      vided in clause (ii), each registered digital
3      commodity broker and registered digital
4      commodity dealer shall separately account
5      for money, assets, and property of a digital
6      commodity customer, and shall not com-
7      mingle any such money, assets, or property
8      with the funds of the digital commodity
9      broker or digital commodity dealer, respec-
10     tively, or use any such money, assets, or
11     property to margin, secure, or guarantee
12     any trades or accounts of any customer or
13     person other than the person for whom the
14     money, assets, or property are held.
15          "(ii) EXCEPTIONS.—
16              "(I) USE OF FUNDS.—
17                  "(aa) IN GENERAL.—A reg-
18              istered digital commodity broker
19              or registered digital commodity
20              dealer may, for convenience, com-
21              mingle and deposit in the same
22              account or accounts with any
23              bank, trust company, derivatives
24              clearing organization, or qualified
25              digital commodity custodian

G:\P\18\MISC\DIGITAL_002.XML    **[Discussion Draft]**

136

1     money, assets, and property of
2     customers.

3          "(bb)   WITHDRAWAL.—The
4     share of the money, assets, and
5     property described in item (aa)
6     as in the normal course of busi-
7     ness shall be necessary to mar-
8     gin, guarantee, secure, transfer,
9     adjust, or settle a digital com-
10    modity transaction with a reg-
11    istered entity may be withdrawn
12    and applied to such purposes, in-
13    cluding the payment of commis-
14    sions, brokerage, interest, taxes,
15    storage, and other charges, law-
16    fully accruing in connection with
17    the digital commodity trans-
18    action.

19         "(II)   COMMISSION   ACTION.—In
20    accordance with such terms and con-
21    ditions as the Commission may pre-
22    scribe by rule, regulation, or order,
23    any money, assets, or property of the
24    customers of a registered digital com-
25    modity broker or registered digital

G:\P\18\MISC\DIGITAL_002.XML    **[Discussion Draft]**

137

1          commodity dealer may be commingled
2          and deposited in customer accounts
3          with any other money, assets, or prop-
4          erty received by the digital commodity
5          broker or digital commodity dealer,
6          respectively, and required by the Com-
7          mission to be separately accounted for
8          and treated and dealt with as belong-
9          ing to the customer of the digital com-
10          modity broker or digital commodity
11          dealer, respectively.

12      ''(3) PERMITTED INVESTMENTS.—Money de-
13   scribed in paragraph (2) may be invested in obliga-
14   tions of the United States, in general obligations of
15   any State or of any political subdivision of a State,
16   in obligations fully guaranteed as to principal and
17   interest by the United States, or in any other invest-
18   ment that the Commission may by rule or regulation
19   allow.

20      ''(4) PROHIBITION.—It shall be unlawful for
21   any person, including any derivatives clearing orga-
22   nization or depository institution, that has received
23   any money, securities, or property for deposit in a
24   separate account or accounts as provided in para-
25   graph (2) to hold, dispose of, or use any of the

G:\P\18\MISC\DIGITAL_002.XML                    **[Discussion Draft]**

138

1    money, assets, or property as belonging to the de-
2    positing registered digital commodity broker, the de-
3    positing registered digital commodity dealer, or any
4    person other than the digital commodity customer of
5    the digital commodity broker or digital commodity
6    dealer, respectively.

7        ''(5) CUSTOMER PROTECTION DURING BANK-
8    RUPTCY.—

9            ''(A) CUSTOMER PROPERTY.—All money,
10        assets, or property described in paragraph (2)
11        shall be considered customer property for pur-
12        poses of section 761 of title 11, United States
13        Code.

14            ''(B) TRANSACTIONS.—A transaction in-
15        volving a unit of a digital commodity occurring
16        with a digital commodity dealer shall be consid-
17        ered a 'contract for the purchase or sale of a
18        commodity for future delivery, on or subject to
19        the rules of, a contract market or board of
20        trade' for purposes of the definition of a 'com-
21        modity contract' in section 761 of title 11,
22        United States Code.

23            ''(C) BROKERS AND DEALERS.—A reg-
24        istered digital commodity dealer and a reg-
25        istered digital commodity broker shall be con-

**[Discussion Draft]**

139

1   sidered a futures commission merchant for pur-

2   poses of section 761 of title 11, United States

3   Code.

4   ''(D) ASSETS REMOVED FROM SEGREGA-

5   TION.—Assets removed from segregation due to

6   a customer election under paragraph (5) shall

7   not be considered customer property for pur-

8   poses of section 761 of title 11, United States

9   Code.

10   ''(l) EXEMPTIONS.—In order to promote responsible

11   economic or financial innovation and fair competition, or

12   protect customers, the Commission may (on its own initia-

13   tive or on application of the registered digital commodity

14   broker or registered digital commodity exchange) exempt,

15   unconditionally or on stated terms or conditions, or for

16   stated periods, and retroactively or prospectively, or both,

17   a registered digital commodity broker or registered digital

18   commodity exchange from the requirements of this sec-

19   tion, if the Commission determines that—

20   ''(1)(A) the exemption would be consistent with

21   the public interest and the purposes of this Act; and

22   ''(B) the exemption will not have a material ad-

23   verse effect on the ability of the Commission or the

24   digital commodity exchange to discharge regulatory

25   or self-regulatory duties under this Act; or

140

1          "(2) the registered digital commodity broker or

2     registered digital commodity exchange is subject to

3     comparable, comprehensive supervision and regula-

4     tion by the appropriate government authorities in

5     the home country of the registered digital commodity

6     broker or registered digital commodity exchange, re-

7     spectively.".

**SEC. 407. EXCLUSION FOR ANCILLARY ACTIVITIES.**

9          The Commodity Exchange Act (7 U.S.C. 1 et seq.),

10    as amended by the preceding provisions of this Act, is

11    amended by inserting after section 4u the following:

**"SEC. 4v. EXCLUSION FOR ANCILLARY ACTIVITIES.**

13         "(a) IN GENERAL.—Notwithstanding any other pro-

14    vision of this Act, a person shall not be subject to the

15    regulatory requirements of this Act solely based on the

16    person undertaking any ancillary activities.

17         "(b) EXCEPTIONS.—Subsection (a) shall not be con-

18    strued to apply to the anti-manipulation, anti-fraud, or

19    false reporting enforcement authorities of the Commission.

20         "(c) ANCILLARY ACTIVITIES DEFINED.—In this sec-

21    tion, the term 'ancillary activities' means any of the fol-

22    lowing activities related to the operation of a blockchain

23    network:

24              "(1) Network transactions compilation, pool op-

25         erating, relating, searching, sequencing, validating,

G:\P\18\MISC\DIGITAL_002.XML   **[Discussion Draft]**

141

1   or acting in a similar capacity with respect to a dig-

2   ital commodity transaction.

3       "(2) Providing computational work, or pro-

4   curing, offering or utilizing network bandwidth, or

5   other similar incidental services with respect to a

6   digital commodity transaction.

7       "(3) Providing a user-interface that enables a

8   user to read, and access data about a blockchain

9   network, send messages, or otherwise interact with

10   a blockchain network.

11       "(4) Developing, publishing, constituting, ad-

12   ministering, maintaining, or otherwise distributing a

13   blockchain network.

14       "(5) Developing, publishing, constituting, ad-

15   ministering, maintaining, or otherwise distributing

16   software or systems that create or deploy a hard-

17   ware or software wallet or other system facilitating

18   an individual user's own personal ability to keep,

19   safeguard, or custody the user's restricted digital as-

20   sets or related private keys.".

# TITLE V—INNOVATION AND TECHNOLOGY IMPROVEMENTS

### SEC. 501. CODIFICATION OF THE SEC STRATEGIC HUB FOR INNOVATION AND FINANCIAL TECHNOLOGY.

Section 4 of the Securities Exchange Act of 1934 (15 U.S.C. 78d) is amended by adding at the end the following:

"(l) STRATEGIC HUB FOR INNOVATION AND FINANCIAL TECHNOLOGY.—

"(1) OFFICE ESTABLISHED.—There is established within the Commission the Strategic Hub for Innovation and Financial Technology (referred to in this section as the 'FinHub').

"(2) PURPOSES.—The purposes of FinHub are as follows:

"(A) To assist in shaping the approach of the Commission to technological advancements in the financial industry.

"(B) To examine FinTech innovations within capital markets, market participants, and investors.

"(C) To coordinate the response of the Commission to emerging technologies in financial, regulatory, and supervisory systems.

**[Discussion Draft]**

143

1    ''(3) DIRECTOR OF FINHUB.—FinHub shall

2    have a Director who shall be appointed by the Com-

3    mission, from among individuals having experience

4    in both emerging technologies and Federal securities

5    law and serve at the pleasure of the Commission.

6    The Director shall report directly to the Commission

7    and perform such functions and duties as the Com-

8    mission may prescribe.

9    ''(4) RESPONSIBILITIES.—FinHub shall—

10    ''(A) foster responsible technological inno-

11    vation and fair competition within the Commis-

12    sion, including around financial technology, reg-

13    ulatory technology, and supervisory technology;

14    ''(B) provide internal education and train-

15    ing to the Commission regarding financial tech-

16    nology;

17    ''(C) advise the Commission regarding fi-

18    nancial technology that would serve the Com-

19    mission's oversight functions;

20    ''(D) analyze technological advancements

21    and the impact of regulatory requirements on

22    financial technology companies;

23    ''(E) advise the Commission with respect

24    to rulemakings or other agency or staff action

25    regarding financial technology;

G:\P\18\MISC\DIGITAL_002.XML                   **[Discussion Draft]**

144

1          ''(F) provide businesses working in emerg-
2     ing financial technology fields with information
3     on the Commission, its rules and regulations;
4     and

5          ''(G) encourage firms working in emerging
6     technology fields to engage with the Commis-
7     sion and obtain feedback from the Commission
8     on potential regulatory issues.

9          ''(5) ACCESS TO DOCUMENTS.—The Commis-
10    sion shall ensure that FinHub has full access to the
11    documents and information of the Commission and
12    any self-regulatory organization, as necessary to
13    carry out the functions of FinHub.

14         ''(6) REPORT TO CONGRESS.—

15         ''(A) IN GENERAL.—Not later than Octo-
16    ber 31 of each year after 2024, FinHub shall
17    submit to the Committee on Banking, Housing,
18    and Urban Affairs of the Senate and the Com-
19    mittee on Financial Services of the House of
20    Representatives a report on the activities of
21    FinHub during the immediately preceding fiscal
22    year.

23         ''(B) CONTENTS.—Each report required
24    under subparagraph (A) shall include—

G:\P\18\MISC\DIGITAL_002.XML    **[Discussion Draft]**

145

1    "(i) the total number of persons that

2    met with FinHub;

3    "(ii) the total number of market par-

4    ticipants FinHub met with, including the

5    classification of those participants;

6    "(iii) a summary of general issues dis-

7    cussed during meetings with persons;

8    "(iv) information on steps FinHub

9    has taken to improve Commission services,

10    including responsiveness to the concerns of

11    persons;

12    "(v) recommendations—

13    "(I) with respect to the regula-

14    tions of the Commission and the guid-

15    ance and orders of the Commission;

16    and

17    "(II) for such legislative actions

18    as the FinHub determines appro-

19    priate; and

20    "(vi) any other information, as deter-

21    mined appropriate by the Director of

22    FinHub.

23    "(C) CONFIDENTIALITY.—A report under

24    subparagraph (A) may not contain confidential

25    information.

Case 2:23-cv-00159-AMA-CMR    Document 37-1    Filed 06/15/23    PageID.391    Page
147 of 163
G:\P\18\MISC\DIGITAL_002.XML    **[Discussion Draft]**

146

1     "(7) SYSTEMS OF RECORDS.—

2         "(A) IN GENERAL.—The Commission shall

3 establish a detailed system of records (as de-

4 fined under section 552a of title 5, United

5 States Code) to assist FinHub in commu-

6 nicating with interested parties.

7         "(B) ENTITIES COVERED BY THE SYS-

8 TEM.—Entities covered by the system required

9 under subparagraph (A) include entities or per-

10 sons submitting requests or inquiries and other

11 information to Commission through FinHub.

12         "(C) SECURITY AND STORAGE OF

13 RECORDS.—FinHub shall store—

14         "(i) electronic records—

15         "(I) in the system required under

16 subparagraph (A); or

17         "(II) on the secure network or

18 other electronic medium, such as

19 encrypted hard drives or back-up

20 media, of the Commission; and

21         "(ii) paper records in secure facilities.

22     "(8) EFFECTIVE DATE.—This subsection shall

23 take effect on the date that is 180 days after the

24 date of the enactment of this subsection.".

147

1  **SEC. 502. CODIFICATION OF LABCFTC.**

2      (a) IN GENERAL.—Section 18 of the Commodity Ex-

3  change Act (7 U.S.C. 22) is amended by adding at the

4  end the following:

5      "(c) LABCFTC.—

6          "(1) ESTABLISHMENT.—There is established in

7      the Commission LabCFTC.

8          "(2) PURPOSE.—The purposes of LabCFTC

9      are to—

10              "(A) foster responsible financial technology

11          innovation and fair competition for the benefit

12          of the American public;

13              "(B) serve as an information platform to

14          inform the Commission about new financial

15          technology innovation; and

16              "(C) provide outreach to financial tech-

17          nology innovators to discuss their innovations

18          and the regulatory framework established by

19          this Act and the regulations promulgated there-

20          under.

21          "(3) DIRECTOR.—LabCFTC shall have a Direc-

22      tor, who shall be appointed by the Commission and

23      serve at the pleasure of the Commission. Notwith-

24      standing section 2(a)(6)(A), the Director shall re-

25      port directly to the Commission and perform such

148

1    functions and duties as the Commission may pre-
2    scribe.

3        ''(4) DUTIES.—LabCFTC shall—

4            ''(A) advise the Commission with respect
5        to rulemakings or other agency or staff action
6        regarding financial technology;

7            ''(B) provide internal education and train-
8        ing to the Commission regarding financial tech-
9        nology;

10            ''(C) advise the Commission regarding fi-
11        nancial technology that would bolster the Com-
12        mission's oversight functions;

13            ''(D) engage with academia, students, and
14        professionals on financial technology issues,
15        ideas, and technology relevant to activities
16        under this Act;

17            ''(E) provide persons working in emerging
18        technology fields with information on the Com-
19        mission, its rules and regulations, and the role
20        of a registered futures association; and

21            ''(F) encourage persons working in emerg-
22        ing technology fields to engage with the Com-
23        mission and obtain feedback from the Commis-
24        sion on potential regulatory issues.

G:\P\18\MISC\DIGITAL_002.XML                **[Discussion Draft]**

149

1    ''(5) ACCESS TO DOCUMENTS.—The Commis-

2    sion shall ensure that LabCFTC has full access to

3    the documents and information of the Commission

4    and any self-regulatory organization, as necessary to

5    carry out the functions of LabCFTC.

6    ''(6) REPORT TO CONGRESS.—

7        ''(A) IN GENERAL.—Not later than Octo-

8        ber 31 of each year after 2024, LabCFTC shall

9        submit to the Committee on Agriculture of the

10       House of Representatives and the Committee

11       on Agriculture, Nutrition, and Forestry of the

12       Senate a report on its activities.

13       ''(B) CONTENTS.—Each report required

14       under paragraph (1) shall include—

15           ''(i) the total number of persons that

16           met with LabCFTC;

17           ''(ii) a summary of general issues dis-

18           cussed during meetings with the person;

19           ''(iii) information on steps LabCFTC

20           has taken to improve Commission services,

21           including responsiveness to the concerns of

22           persons;

23           ''(iv) recommendations made to the

24           Commission with respect to the regula-

25           tions, guidance, and orders of the Commis-

G:\P\18\MISC\DIGITAL_002.XML **[Discussion Draft]**

150

1    sion and such legislative actions as may be

2    appropriate; and

3        ''(v) any other information determined

4    appropriate by the Director of LabCFTC.

5    ''(C) CONFIDENTIALITY.—A report under

6    paragraph (A) shall abide by the confidentiality

7    requirements in section 8.

8    ''(7) SYSTEMS OF RECORDS.—

9        ''(A) IN GENERAL.—The Commission shall

10    establish a detailed system of records (as de-

11    fined in section 552a of title 5, United States

12    Code) to assist the Office in communicating

13    with interested parties.

14        ''(B) ENTITIES COVERED BY THE SYS-

15    TEM.—The entities covered by the system of

16    records shall include entities submitting re-

17    quests or inquiries and other information to the

18    Commission through the Office. Proprietary in-

19    formation provided to the Office by entities or

20    persons shall be subject to the disclosure re-

21    strictions provided in section 8 of the Com-

22    modity Exchange Act.

23        ''(C) SECURITY AND STORAGE OF

24    RECORDS.—The system of records shall store

25    records electronically or on paper in secure fa-

Case 2:23-cv-00159-AMA-CMR    Document 37-1    Filed 06/15/23    PageID.396    Page
G:\P\18\MISC\DIGITAL_002.XML                 152 of 163
[Discussion Draft]

151

1          cilities, and shall store electronic records on the

2          secure network of the Commission and on other

3          electronic media, such as encrypted hard drives

4          and back-up media, as needed.''.

5     (b) CONFORMING    AMENDMENTS.—Section

6  2(a)(6)(A) of such Act (7 U.S.C. 2(a)(6)(A)) is amend-

7  ed—

8          (1) by striking ''paragraph and in'' and insert-

9     ing ''paragraph,''; and

10          (2) by inserting ''and section 18(c)(3),'' before

11     ''the executive''.

12     (c) EFFECTIVE DATE.—The Commodity Futures

13  Trading Commission shall implement the amendments

14  made by this section (including complying with section

15  18(c)(7) of the Commodity Exchange Act) within 180

16  days after the date of the enactment of this Act.

17  **SEC. 503. CFTC-SEC JOINT ADVISORY COMMITTEE ON DIG-**

18          **ITAL ASSETS.**

19     (a) ESTABLISHMENT.—The    Commodity    Futures

20  Trading Commission and the Securities and Exchange

21  Commission (in this section referred to as the ''Commis-

22  sions'') shall jointly establish the Joint Advisory Com-

23  mittee on Digital Assets (in this section referred to as the

24  ''Committee'').

25     (b) PURPOSE.—

G:\P\18\MISC\DIGITAL_002.XML          **[Discussion Draft]**

152

1    (1) IN GENERAL.—The Committee shall—

2         (A) provide the Commissions with advice

3    on the rules, regulations, and policies of the

4    Commissions related to digital assets;

5         (B) further the regulatory harmonization

6    of digital asset policy between the Commissions;

7         (C) examine and disseminate methods for

8    describing, measuring, and quantifying digital

9    asset—

10             (i) decentralization;

11             (ii) functionality;

12             (iii) information asymmetries; and

13             (iv) transaction and network security;

14        and

15        (D) discuss the implementation by the

16   Commissions of this Act and the amendments

17   made by this Act.

18   (2) REVIEW BY AGENCIES.—Each Commission

19   shall—

20        (A) review the findings and recommenda-

21   tions of the Committee;

22        (B) each time the Committee submits a

23   finding or recommendation to a Commission,

24   promptly issue a public statement—

G:\P\18\MISC\DIGITAL_002.XML    **[Discussion Draft]**

153

1          (i) assessing the finding or rec-
2     ommendation of the Committee;

3          (ii) disclosing the action or decision
4     not to take action made by the Commis-
5     sion in response to a finding or rec-
6     ommendation; and

7          (iii) the reasons for the action or deci-
8     sion not to take action; and

9     (C) each time the Committee submits a
10    finding or recommendation to a Commission,
11    provide the Committee with a formal response
12    to the finding or recommendation not later than
13    3 months after the date of the submission of
14    the finding or recommendation.

15    (c) MEMBERSHIP AND LEADERSHIP.—

16    (1) NON-FEDERAL MEMBERS.—

17          (A) IN GENERAL.—The Commissions shall
18    appoint at least 20 nongovernmental stake-
19    holders with a wide diversity of opinion and
20    who represent a broad spectrum of interests
21    representing the digital asset ecosystem, equally
22    divided between the Commissions, to serve as
23    members of the Committee. The appointees
24    shall include—

25          (i) digital asset issuers;

154

1 (ii) persons registered with the Com-

2 missions and engaged in digital asset re-

3 lated activities;

4 (iii) individuals engaged in academic

5 research relating to digital assets; and

6 (iv) digital asset users.

7 (B) MEMBERS NOT COMMISSION EMPLOY-

8 EES.—Members appointed under subparagraph

9 (A) shall not be deemed to be employees or

10 agents of a Commission solely by reason of

11 membership on the Committee.

12 (2) CO-DESIGNATED FEDERAL OFFICERS.—

13 (A) NUMBER; APPOINTMENT.—There shall

14 be 2 co-designated Federal officers of the Com-

15 mittee, as follows:

16 (i) The Director of LabCFTC of the

17 Commodity Futures Trading Commission.

18 (ii) The Director of the Strategic Hub

19 for Innovation and Financial Technology.

20 (B) DUTIES.—The duties required by

21 chapter 10 of title 5, United States Code, to be

22 carried out by a designated Federal officer with

23 respect to the Committee shall be shared by the

24 co-designated Federal officers of the Com-

25 mittee.

155

1    (3) COMMITTEE LEADERSHIP.—

2        (A) COMPOSITION; ELECTION.—The Com-

3        mittee members shall elect, from among the

4        Committee members—

5            (i) a chair;

6            (ii) a vice chair;

7            (iii) a secretary; and

8            (iv) an assistant secretary.

9        (B) TERM OF OFFICE.—Each member

10       elected under subparagraph (A) in a 2-year pe-

11       riod referred to in section 1013(b)(2) of title 5,

12       United States Code, shall serve in the capacity

13       for which the member was so elected, until the

14       end of the 2-year period.

15   (d) NO COMPENSATION FOR COMMITTEE MEM-

16   BERS.—

17       (1) NON-FEDERAL MEMBERS.—All Committee

18       members appointed under subsection (d)(1) shall—

19           (A) serve without compensation; and

20           (B) while away from the home or regular

21           place of business of the member in the perform-

22           ance of services for the Committee, be allowed

23           travel expenses, including per diem in lieu of

24           subsistence, in the same manner as persons em-

25           ployed intermittently in the Government service

G:\P\18\MISC\DIGITAL_002.XML    **[Discussion Draft]**

156

1    are allowed expenses under section 5703(b) of

2    title 5, United States Code.

3    (2) NO COMPENSATION FOR CO-DESIGNATED

4    FEDERAL OFFICERS.—The co-designated Federal of-

5    ficers shall serve without compensation in addition

6    to that received for their services as officers or em-

7    ployees of the United States.

8    (e) FREQUENCY OF MEETINGS.—The Committee

9    shall meet—

10    (1) not less frequently than twice annually; and

11    (2) at such other times as either Agency may

12    request.

13    (f) DURATION.—Section 1013(a)(2) of title 5, United

14    States Code, shall not apply to the Committee.

15    (g) TIME LIMITS.—The Commissions shall—

16    (1) adopt a joint charter for the Committee

17    within 90 days after the date of the enactment of

18    this section;

19    (2) appoint members to the Committee within

20    120 days after such date of enactment; and

21    (3) hold the initial meeting of the Committee

22    within 180 days after such date of enactment.

23    (h) FUNDING.—The Commissions may jointly fund

24    the Committee.

**[Discussion Draft]**

157

**SEC. 504. MODERNIZATION OF THE SECURITIES AND EX-
CHANGE COMMISSION MISSION.**

(a) SECURITIES ACT OF 1933.—Section 2(b) of the
Securities Act of 1933 (15 U.S.C. 77(b)) is amended—

    (1) in the heading, by inserting "INNOVATION,"
    after "EFFICIENCY,"; and

    (2) by inserting "innovation," after "effi-
    ciency,".

(b) SECURITIES EXCHANGE ACT OF 1934.—Section
3(f) of the Securities Exchange Act of 1934 (15 U.S.C.
78(c)) is amended—

    (1) in the heading, by inserting "INNOVATION,"
    after "EFFICIENCY,"; and

    (2) by inserting "innovation," after "effi-
    ciency,".

(c) INVESTMENT ADVISERS ACT OF 1940.—Section
2(c) of the Investment Advisers Act of 1940 (15 U.S.C.
80a–2) is amended—

    (1) in the heading, by inserting "INNOVATION,"
    after "EFFICIENCY,"; and

    (2) by inserting "innovation," after "effi-
    ciency,".

**SEC. 505. STUDY ON DECENTRALIZED FINANCE.**

(a) IN GENERAL.—The Securities and Exchange
Commission and the Commodity Futures Trading Com-

158

1 mission shall jointly carry out a study on decentralized

2 finance that analyzes—

3        (1) the nature, size, role, and use of decentral-

4    ized finance protocols;

5        (2) the operation of smart contracts that com-

6    prise decentralized finance protocols;

7        (3) the interoperability of smart contracts and

8    blockchain technology;

9        (4) the interoperability of smart contracts and

10    software-based systems, such as websites and soft-

11    ware wallets;

12        (5) the software-based governance systems

13    through which decentralized finance may be adminis-

14    tered or operated, including—

15            (A) whether the systems enhance or de-

16        tract from—

17                (i) the decentralization of the decen-

18            tralized finance; and

19                (ii) the inherent risks of the systems;

20            and

21            (B) any procedures or requirements that

22        would mitigate the risks identified in subpara-

23        graph (A)(ii);

24        (6) the benefits of decentralized finance, includ-

25    ing—

159

1              (A) operational resilience and interoper-
2          ability of blockchain-based systems;
3              (B) market competition and innovation;
4              (C) transaction efficiency; and
5              (D) transparency and traceability of trans-
6          actions; and
7          (7) the risks of decentralized finance, includ-
8      ing—
9              (A) pseudonymity of users and trans-
10         actions;
11             (B) lack of intermediaries; and
12             (C) cybersecurity vulnerabilities;
13         (8) the extent to which decentralized finance
14     has integrated with the traditional financial markets
15     and any potential risks to stability of such markets
16     from the integration;
17         (9) how the levels of illicit activity in decentral-
18     ized finance compare with the levels of illicit activity
19     in traditional financial markets; and
20         (10) how decentralized finance may increase the
21     accessibility of cross-border transactions.
22     (b) REPORT.—Not later than 1 year after the date
23 of enactment of this Act, the Securities and Exchange
24 Commission and the Commodity Futures Trading Com-
25 mission shall jointly submit to the relevant congressional

**[Discussion Draft]**

160

1   committees a report that includes the results of the study

2   required by subsection (a).

3       (c) GAO STUDY.—The Comptroller General of the

4   United States shall—

5           (1) carry out a study on decentralized finance

6       that analyzes the information described under para-

7       graphs (1) through (10) of subsection (a); and

8           (2) not later than 1 year after the date of en-

9       actment of this Act, submit to the relevant congres-

10      sional committees a report that includes the results

11      of the study required by paragraph (1).

12      (d) DEFINITIONS.—In this section:

13          (1) DECENTRALIZED FINANCE.—The term "de-

14      centralized finance" means a system of software ap-

15      plications that—

16              (A) are created through smart contracts

17          deployed to permissionless blockchain tech-

18          nology; and

19              (B) allow users to engage in financial

20          transactions in a self-directed manner so that a

21          third-party intermediary does not effectuate the

22          transactions or take custody of digital assets of

23          a user during any part of the transactions.

161

(2) Relevant congressional commit-
tees.—The term "relevant congressional commit-
tees" means—

   (A) the Committees on Financial Services
   and Agriculture of the House of Representa-
   tives; and

   (B) the Committees on Banking, Housing,
   and Urban Affairs and Agriculture, Nutrition,
   and Forestry of the Senate.

**SEC. 506. STUDY ON NON-FUNGIBLE DIGITAL ASSETS.**

(a) The Secretary of Commerce shall, in consultation
with the Office of Science and Technology Policy, the Se-
curities and Exchange Commission, and the Commodity
Futures Trading Commission carry out a study of non-
fungible digital assets that analyzes—

   (1) the nature, size, role, purpose, and use of
   non-fungible digital assets;

   (2) the similarities and differences between non-
   fungible digital assets and other digital assets, in-
   cluding digital commodities and payments
   stablecoins, and how the markets for those digital
   assets intersect with each other;

   (3) how non-fungible digital assets are minted
   by issuers and subsequently administered to pur-
   chasers;

G:\P\18\MISC\DIGITAL_002.XML    **[Discussion Draft]**

162

1          (4) how non-fungible digital assets are stored

2     after being purchased by a consumer;

3          (5) the interoperability of non-fungible digital

4     assets between different blockchain networks;

5          (6) the scalability of different non-fungible dig-

6     ital asset marketplaces;

7          (7) the benefits of non-fungible digital assets,

8     including verifiable digital ownership;

9          (8) the risks of non-fungible tokens, including—

10              (A) intellectual property rights;

11              (B) cybersecurity risks; and

12              (C) market risks;

13          (9) whether and how non-fungible digital assets

14     have integrated with traditional marketplaces, in-

15     cluding those for music, real estate, gaming, events,

16     and travel;

17          (10) any potential risks to such traditional mar-

18     kets from such integration; and

19          (11) the levels and types of illicit activity in

20     non-fungible digital asset markets.

21     (b) REPORT.—Not later than 1 year after the date

22 of the enactment of this Act, the Secretary of Commerce,

23 shall make publicly available a report that includes the re-

24 sults of the study required by subsection (a).