Michael E. Welsh (Massachusetts Bar No. 693537)
welshmi@sec.gov
Casey R. Fronk (Illinois Bar No. 6296535)
fronckc@sec.gov
Attorneys for Plaintiff
Securities and Exchange Commission
351 South West Temple, Suite 6.100
Salt Lake City, Utah 84101
Tel: (801) 524-5796

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>GREEN UNITED, LLC, a Utah limited liability company; WRIGHT W. THURSTON, an individual; and KRISTOFFER A. KROHN, an individual,<br><br>Defendants,<br><br>TRUE NORTH UNITED INVESTMENTS, LLC, a Utah limited liability company; and BLOCK BROTHERS, LLC, a Utah limited liability company;<br><br>Relief Defendants. | **PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM IN OPPOSITION OF DEFENDANT KRISTOFFER A. KROHN'S MOTION TO DISMISS [DKT. NO. 28]**<br><br>Case No. 2:23-cv-00159-BSJ<br><br>Judge Bruce S. Jenkins |

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES .............................................................................................. ii

PRELIMINARY STATEMENT ..........................................................................................1

SUMMARY OF ALLEGATIONS RELATED TO DEFENDANT KROHN ........................2

STANDARD OF REVIEW ..................................................................................................4

ARGUMENT  ......................................................................................................................4

    I.      THE ALLEGED SCHEME CONSTITUTES THE OFFERING OF AN
           INVESTMENT CONTRACT .................................................................................5

    II.     THE COMPLAINT IS NOT A "SHOTGUN PLEADING" AND PROVIDES
           ADEQUATE NOTICE OF THE ALLEGED VIOLATIONS................................9

    III.    THE SEC HAS ADEQUATELY PLED THAT KROHN VIOLATED THE
           ANTIFRAUD PROVISIONS OF THE SECURITIES LAWS
           (COUNTS III & IV)...............................................................................................11

        A.   The Complaint Alleges Krohn Made Material Misrepresentations in
              Violation of Section 17(a)(2) of the Securities Act (Count III) ...............11

        B.   The Complaint Alleges Scheme Liability in Violation
              of Section 17(a)(3) of the Securities Act Against Krohn (Count IV) .....13

    IV.    DEFENDANTS' CONSTITUTIONAL ARGUMENTS LACK MERIT .............15

CONCLUSION....................................................................................................................15

## **TABLE OF AUTHORITIES**

**Cases**

*Tcherepnin v. Knight*, 389 U.S. 332 (1967) ................................................................. 8

*Aaron v. SEC*, 446 U.S. 680 (1980) ...................................................................... 12

*Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036 (10th Cir. 1980) ................... 6

*Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364 (11th Cir. 1996) ................. 4, 10

*Ashcroft v. Iqbal*, 1556 U.S. 662 (2009) ................................................................. 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................. 4

*Beranger v. Harris*, 2019 WL 5485128 (N.D. Ga. Apr. 24, 2019) ........................... 9

*Berrios-Bones v. Nexidis, LLC*, 2007 WL 3231549 (D. Utah Oct. 30, 2007) ................ 6

*Campbell v. Castle Stone Homes, Inc.*, 2011 WL 902637 (D. Utah, March 15, 2011) ............ 7

*Casanova v. Ulibarri*, 595 F.3d 1120 (10th Cir. 2010) ............................................ 4

*Cook v. Baca*, 2011 WL 13157059 (D.N.M. July 8, 2011) ....................................... 9

*Crowley v. Montgomery Ward & Co.*, 570 F.2d 877 (10th Cir. 1978) ..................... 5, 6

*Dias v. City of Denver*, 567 F.3d 1169 (10th Cir. 2009) ......................................... 4

*Experian Mktg. Sols., Inc. v. Lehman*, 2015 WL 5714541 (W.D. Mich. Sept. 29, 2015) .............. 4

*Fecht v. Price Co.,* 70 F.3d 1078 (9th Cir. 1995) ................................................ 11

*Fin. Fed. Sav. & Loan Ass'n v. Sav. Inv. Serv. Corp.*, 1986 WL 641 (W.D. Okla. Dec. 11, 1986) ....... 8

*First State Bank v. American Nat. Bank*, 690 F. Supp. 967 (D.Wy.1988) ................ 8

*Geman v. SEC*, 334 F.3d 1183 (10th Cir. 2003) ................................................ 12

*Haynes v. Allstate Fire & Cas. Ins.,* 2020 WL 816043 (D. Colo. Feb. 18, 2020) ............ 9, 10

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*, 2020 WL 3026564 (D.N.J. June 5, 2020) ............ 14

*In re Longhorn Sec. Litig.*, 573 F. Supp. 255 (W.D. Okla. 1983) ............................ 6

*In re Revlon, Inc. Sec. Litig.*, 2001 WL 293820 (S.D.N.Y. March 27, 2001) .............. 12

*Lorenzo v. SEC*, 139 S.Ct. 1094 (2019) ............................................................ 14

*Malouf v. SEC*, 933 F.3d 1248 (10th Cir. 2019) ............................................... 14

*McGill v. American Land & Expl. Co*., 776 F.2d 923 (10th Cir. 1985) ................................. 6

*McVay v. W. Plains Serv. Corp.*, 823 F.2d 1395 (10th Cir. 1987) ........................................ 8

*Mellette v. Branch*, 2008 WL 4001044 (D. Colo. Aug. 26, 2008) ...................................... 9

*Parrish v. Arvest Bank*, 717 F. App'x 756 (10th Cir. 2017) ................................................ 12

*Reves v. Ernst & Young*, 494 U.S. 56 (1990) ...................................................................... 5

*Ross v. Bolton*, 904 F.2d 819 (2d Cir. 1990) ..................................................................... 15

*Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246 (10th Cir. 1997) ...................... 4, 9

*ScripsAmerica, Inc. v. Ironridge Global LLC*, 119 F.Supp.3d 1213 (C.D. Cal. 2015) ...... 13

*SEC v. Art Intellect, Inc.*, 2013 WL 840048 (D. Utah Mar. 6, 2013) .............................. 6, 7

*SEC v. Bio Def. Corp.*, 2019 WL 7578525 (D. Mass. Sept. 6, 2019) ................................ 14

*SEC v. C. Jones & Co.*, 312 F. Supp. 2d 1375 (D. Colo. 2004) ....................................... 12

*SEC v. C.M. Joiner Leasing Co.*, 320 U.S. 344 (1943) ...................................................... 7

*SEC v. Credit Bancorp, Ltd.*, 195 F. Supp. 2d 475 (S.D.N.Y. 2002) ............................... 13

*SEC v. Curshen*, 888 F.Supp.2d 1299 (S.D. Fla. 2012) ................................................... 13

*SEC v. Edwards*, 540 U.S. 389 (2004) ............................................................................... 7

*SEC v. Farias*, 2022 WL 3031082 (W.D. Tex. Aug. 1, 2022) ........................................... 14

*SEC v. Fraser*, 2009 WL 2450508 (D. Ariz. Aug. 11, 2009) ............................................ 10

*SEC v. GenAudio Inc.*, 32 F.4th 902 (10th Cir. 2022) ................................................. 12, 15

*SEC v. Goldstone*, 952 F. Supp. 2d 1060 (D.N.M. 2013) ................................................... 9

*SEC v. Gordon*, 2009 WL 1652464 (N.D. Okla. June 11, 2009) ...................................... 13

*SEC v. Kameli*, 2020 WL 2542154 (N.D. Ill. May 19, 2020) ...................................... 13, 14

*SEC v. Kik Interactive, Inc.*, 492 F. Supp. 3d 169 (S.D.N.Y. 2020) .................................. 9

*SEC v. LBRY, Inc.*, 2022 WL16744741 (D.N.H. Nov. 7, 2022) ......................................... 9

*SEC v. McDuffie*, 2014 WL 4548723 (D. Colo. Sept. 15, 2014) ............................ 12, 13, 15

*SEC v. Monterosso*, 756 F.3d 1326 (11th Cir. 2014) ...................................................... 13

*SEC v. Patel* 2009 WL 3151143 (D.N.H. Sept. 30, 2009) ................................................ 10

*SEC v. Scoville*, 913 F.3d 1204 (10th Cir. 2019) ............................................................... 5

*SEC v. SeeThruEquity, LLC*, 2019 WL 1998027 (S.D.N.Y. Apr. 26, 2019).................................. 10, 15

*SEC v. Sequential Brands Grp., Inc.*, 2021 WL 4482215 (S.D.N.Y. Sept. 30, 2021)................... 13, 14

*SEC v. Shields*, 744 F.3d 633 (10th Cir. 2014)............................................................................. 5, 6

*SEC v. Smart*, 678 F.3d 850 (10th Cir. 2012)................................................................................ 12

*SEC v. True North Fin. Corp.*, 909 F.Supp.2d 1073 (D. Minn. 2012) ................................................ 12

*SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946) ......................................................................... 5, 8, 15

*SEC v. Winemaster*, 529 F. Supp. 3d 880 (N.D. Ill. 2021) ................................................................ 10

*Simpson v. AOL Time Warner, Inc.*, 452 F.3d 1040 (9th Cir.2006) .................................................... 13

*United States v. Envirocare of Utah, Inc.*, 614 F.3d 1163 (10th Cir. 2010) ........................................ 11

*United States v. Leonard*, 529 F.3d 83 (2d Circ. 2008) ...................................................................... 6

*United States v. Triumph Grp., Inc.*, 2016 WL 1664904 (D. Utah Apr. 26, 2016) ............................... 11

*Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015).............................. 10

*Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231 (N.D. Cal. 1998)............................................................ 11

## Statutes

15 U.S.C. § 77b(a)(1)............................................................................................................... 5

15 U.S.C. § 77q(a)(2).............................................................................................................. 11

15 U.S.C. § 78c(a)(10).............................................................................................................. 5

## Rules

Fed. R. Civ. P. 8(e) .................................................................................................................. 4

Fed. R. Civ. P. 9(b) .............................................................................................................. 4, 11

## PRELIMINARY STATEMENT

Defendant Kristoffer A. Krohn's ("Krohn")'s Motion to Dismiss (Dkt. No. 28) ("Motion or "Mot.") is without merit and should be denied.  The Complaint specifically alleges that Krohn aggressively promoted a scheme to sell licenses to mine a crypto asset called GREEN (which could not be mined) powered by Green United's revolutionary blockchain (which did not exist). Through numerous YouTube videos and emails to prospective investors, Krohn falsely claimed that investors could expect substantial profits from their participation in the scheme. Krohn also touted the resale value of GREEN, while knowing these statements to be false.  And, Krohn profited handsomely from his participation in this fraudulent scheme, reaping over $545,000 in commissions from his sale of Green Boxes over 150 investors.  Based on this conduct, the Complaint alleges Krohn violated of Sections 5 and 17(a) of the Securities Act of 1933 ("Securities Act") and Section 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act").

Krohn's Motion repackages many of the same flawed arguments made by his co-defendants.  He also tries to separate himself from his co-defendants by focusing on the aspects of the broader fraud scheme in which he did not participate. And Krohn raises defenses not appropriate for a motion to dismiss. But, none of Krohn's arguments can negate his repeated lies to investors and his role in the fraudulent scheme.  The Complaint is sufficiently pled under Rule 9(b) and provides Krohn far more than the requisite notice of how his conduct violated the federal securities laws.

For brevity, the SEC incorporates, by reference, the summary of allegations and the arguments set forth in its Memorandum of Law in Opposition to Defendants Green United, LLC's and Wright W. Thurston's Motion to Dismiss (Dkt. No. 38) ("SEC Opp.") as if fully set forth herein.

1

## SUMMARY OF ALLEGATIONS RELATED TO DEFENDANT KROHN

Beginning in April 2018, Defendant Green United LLC ("Green United"), under the direction and control of Defendant Wright W. Thurston ("Thurston"), offered investments in the form of crypto asset mining software they called "Green Boxes," coupled with hosting and managerial services provided by Green United.  Dkt. No. 1, Complaint ("Compl.") ¶ 11. According to Green United, Green Boxes mined a new crypto asset called GREEN.  Green United claimed that GREEN generated from Green United's revolutionary blockchain ("Green Blockchain").  *Id.* ¶ 20.  Green United would host and operate the Green Boxes purchased by investors, and could expect a significant return in the form of an increase in the value of GREEN, or from selling that GREEN to others, for profits.  *Id.* ¶¶ 45, 50–51.  In reality, none of this was true.  The Green Boxes were never capable of mining GREEN because the Green Blockchain and GREEN did not exist.  *Id.* ¶¶ 44, 46–47.

On April 9, 2018, Green United hired Krohn to promote and sell Green Boxes.  *Id.* ¶ 23. As compensation for his services, Krohn received a $500 commission for every $3,000 Green Box he sold.  *Id.*  At no point was Krohn registered with the SEC as broker or associated with an entity registered with the SEC as a broker.  *Id.* ¶ 82.

From April 9, 2018 until at least October 2018, Krohn aggressively promoted Green Boxes to investors as a passive investment currently generating lucrative returns. *Id.* ¶ 24–25.  As part of his promotional campaign, Krohn published several YouTube videos, hosted in-person events, and disseminated emails to potential investors.  *Id.*  In each of these presentations and communications, Krohn made material misrepresentations about GREEN, Green Boxes, and the potential profits an investor could expect from the offering.  *Id.* ¶¶ 24–25, 27, 47–50.

In an April 2018 in-person meeting that Krohn later published to YouTube, Krohn told prospective investors that GREEN was currently valued at $0.02 per token. *Id.* ¶¶ 24, 48. During that same presentation, Krohn claimed that investors who already purchased Green Boxes were currently receiving an annual 40% to 50% return on their investment. *Id.* Krohn also told prospective investors that they could expect immediate profits of $100 each month. *Id.* ¶ 48. Over the next several months, Krohn repeated these claims in dozens of email blasts to prospective investors. For example, in an April 12, 2018 email to prospective investors, Krohn described Green Boxes as a $3,000 "investment" that was currently generating "100% ROI." *Id.* ¶ 25. Krohn also promised investors that GREEN would soon be available to buy or sell on a crypto asset trading platform. *Id.* ¶ 27.

The Complaint alleges that these statements were knowingly false at the time because GREEN (and the Green Blockchain that purportedly generated the GREEN tokens) did not exist at any point during the Soliciting Period. *Id.* ¶ 44–46. The Complaint also alleges that Krohn had no basis to claim that GREEN was valued at $0.02 per token in April 2018 because GREEN was not available for purchase or sale on any crypto asset trading platform at that time. *Id.* ¶ 29, 49. Further, the Complaint alleges that no investor received any profits in 2018 and, therefore, Krohn had no reasonable basis for to claim that investors were receiving monthly profits of $100 or annual returns in the range of 40% to 100% percent in April 2018. *Id.* ¶ 49–50.

Krohn's soliciting efforts were successful. He sold nearly 1,000 Green Boxes to over 150 investors, raising approximately $3 million for Green United and receiving approximately $545,090 in commissions for himself. *Id.* ¶ 55. Krohn failed to disclose to investors that he received a 25% commission on every Green Box he sold. *Id.*

## STANDARD OF REVIEW

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must determine whether the Complaint's allegations are sufficient to state a claim within the meaning of Rule 8(a). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). The standard is a liberal one, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (cleaned up). A court must accept as true all facts alleged in the Complaint in the light most favorable to the SEC. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (citation omitted). All reasonable inferences must be drawn in the SEC's favor. *Ashcroft v. Iqbal*, 1556 U.S. 662, 678 (2009).

Under Rule 9(b), for claims sounding in fraud, "a party must state with particularity the circumstances constituting" the fraud. Fed. R. Civ. P. 9(b). "The requirements of Rule 9(b) must be read in conjunction with the principles of Rule 8, which calls for pleadings to be 'simple, concise, and direct . . . and to be construed as to do substantial justice.'" *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (quoting Fed. R. Civ. P. 8(e) and (f)).

## ARGUMENT

In his Motion, Krohn asserts the following grounds for dismissal: (1) The Complaint fails to allege the existence of a "security" as defined by the federal securities laws; (2) the Complaint fails to specify which facts are linked to Krohn (*i.e.*, the Complaint is a "shotgun pleading");[1] (3) the Complaint fails to allege with particularity the fraud claims against Krohn; and (4) the action

---

[1] A motion for a more definite statement pursuant to Rule 12(e) is the proper response to a shotgun pleading, not a motion to dismiss. *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996); *Experian Mktg. Sols., Inc. v. Lehman*, 2015 WL 5714541, at *2 (W.D. Mich. Sept. 29, 2015).

violates the major questions doctrine and the Due Process Clause.  As set forth below, each of these arguments lacks merit.

## I.    THE ALLEGED SCHEME CONSTITUTES THE OFFERING OF AN INVESTMENT CONTRACT.

Krohn's primary argument is that the Complaint fails to allege that the offer and sale of Green Boxes constituted a security.  Mot. at 6.[2]  As previously explained (SEC Opp. at 7), the Supreme Court established a test to determine when an "unconventional scheme or contract" constitutes an "investment contract" and therefore a security.  *SEC v. W.J. Howey Co.*, 328 U.S. 293, 299 (1946), (investment in orange groves managed by promoter's company to be an "investment contract" and therefore a security); *SEC v. Telegram Grp., Inc.*, 448 F. Supp. 3d 352, 365 (S.D.N.Y. 2020) (applying *Howey*, holding that contracts and understandings surrounding the sale of a crypto asset amount to the distribution of securities).   That test requires: "(1) an investment, (2) in a common enterprise, (3) with a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others."  *SEC v. Scoville*, 913 F.3d 1204, 1220 (10th Cir. 2019) (citing *Howey*, 328 U.S. at 298–99); *Crowley v. Montgomery Ward & Co.*, 570 F.2d 877, 879 (10th Cir. 1978).

Consistent with the broad reach of the Securities Act and Exchange Act, the *Howey* test "embodies a 'flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits.'"  *SEC v. Shields*, 744 F.3d 633, 643 (10th Cir. 2014) (quoting *Howey*, 328 U.S. at 299); *Reves v. Ernst & Young*, 494 U.S. 56, 61 (1990) ("Congress' purpose in enacting the

---

[2] Under Securities Act Section 2(a)(1) and Exchange Act Section 3(a)(10), an "investment contract" is a security. 15 U.S.C. §§ 77b(a)(1); 78c(a)(10).

securities laws was to regulate investments, in whatever form they are made and by whatever name they are called.").  In applying *Howey*, "courts can (and should) look beyond the formal terms of a relationship to the reality of the parties' positions." *United States v. Leonard*, 529 F.3d 83, 88 (2d Circ. 2008); *Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036, 1039 (10th Cir. 1980).

Whether is a particular scheme constitutes an "investment contract" is a fact-intensive inquiry, rarely suitable for a motion to dismiss. *Berrios-Bones v. Nexidis, LLC*, 2007 WL 3231549, at *5 (D. Utah Oct. 30, 2007) (citing *Crowley*, 570 F.2d at 877); *In re Longhorn Sec. Litig.*, 573 F. Supp. 255, 266 (W.D. Okla. 1983); *see SEC v. Shields*, 744 F.3d 633, 648 (10th Cir. 2014) (reversing district court's grant of defendant's motion to dismiss); *Aldrich*, 627 F.2d at 1039.

As briefed previously, the Complaint alleges all the necessary elements to establish that Defendants' offer and sale of Green Boxes and Green Nodes constituted an investment contract under *Howey*.  *See* SEC Opp. at 8–9.  The Motion does not argue that the offering involved an "investment in money" under *Howey*, or that investors expected profits based on the efforts of others.  Rather, Krohn argues that the Complaint fails to allege a "common enterprise" because the mining software associated with the alleged scheme does not share the "characteristics traditionally associated with stock," such as "the right to receive dividends" or "voting rights in proportion to the number of shares owned." Mot. at 8.  This argument lacks merit.

In the Tenth Circuit, a "common enterprise" exists if, upon examining the economic reality, the court concludes that a transaction, in substance, involves an investment. *McGill v. American Land & Expl. Co.*, 776 F.2d 923, 925 (10th Cir. 1985) (citation omitted).  The "determining factor of a common enterprise and the economic reality of the transaction is whether or not the investment was for profit." *SEC v. Art Intellect, Inc.*, 2013 WL 840048, at *15 (D. Utah Mar. 6, 2013) (quoting *Berrios-Bones v. Nexidis, LLC*, 2007 WL 3231549, at *5 (D. Utah Oct. 30, 2007)); *see also*

*Campbell v. Castle Stone Homes, Inc.*, 2011 WL 902637, at *4 (D. Utah, March 15, 2011) (common enterprise present where contractor used credit scores of individual investors to obtain financing to build homes because investors expected contractor to generate profits for investors through the sale of homes built using the investors' credit).[3]

Here, as previously explained, the Complaint more than adequately alleges a common enterprise. SEC Opp. at 9–10. Green United promised investors it would handle all aspects of the mining process, touting its technical expertise and access to cheap power as the key ingredients that allow them to maximize profits for investors. Indeed, Krohn himself marketed Green Boxes as a hassle-free investment. He told investors they would receive returns as high as 100% a year (Compl. ¶ 25) and represented that investors would see immediate cash flow of at least $100 per month. *Id.* ¶ 24; *see Art Intellect*, 2013 WL 840048, at *15 (finding similar statements sufficient to constitute common enterprise). Investors would profit from a supposed increase in the value of their GREEN, or from selling that GREEN to others, for profit. Compl. ¶¶ 45, 50–51. The common enterprise element of the *Howey* test is satisfied.

Krohn's contention that all securities, including investment contracts, must possess the characteristics of "stocks" ignores the Securities Act's plain text, which defines "security" to include specific terms like "stock," which have "well settled meaning[s]," but also separately lists the more general term "investment contracts." *SEC v. C.M. Joiner Leasing Co.*, 320 U.S. 344, 351 (1943) (holding that courts should not, in construing "investment contracts," "read out of the statute these general descriptive designations merely because more specific ones have been used to reach some kinds of documents."). The Supreme Court has consistently held that investment

---

[3] Under *Howey*, profit means an "income or return, to include, for example, dividends, other periodic payments, *or the increased value of the investment*." *Telegram*, 448 F. Supp. 3d at 371 (quoting *SEC v. Edwards*, 540 U.S. 389, 394 (2004) (emphasis added)).

vehicles that *do not* possess the characteristics of stock constitute "investment contracts" and therefore, securities.  In *Howey*, for example, the investment contract at issue was offered by two corporations that led investors to expect returns based upon the success of a citrus grove cultivation enterprise, but no investor was entitled to voting rights or dividends, for example, with respect to the two corporations that offered the investment contract, as they would have had they been offered stock in those corporations.  328 U.S. at 299-300.  Similarly, in *Tcherepnin v. Knight*, the Supreme Court specifically rejected the argument that because the investment instrument at issue there did *not* give investors the right to inspect the books and records of the offering corporation—like a stock certificate would—the investment instrument was outside the scope of the federal securities laws.  389 U.S. 332, 343 (1967).

None of the cases cited in the Motion support Krohn's narrow reading of *Howey* and its progeny.  Krohn relies on several cases where (at the summary judgment stage) courts have held loan participation agreements containing fixed interest rates or interest rates tied to a market rate did not constitute an "investment contract" under *Howey*.  Mot. at 7 (citing *First State Bank v. American Nat. Bank*, 690 F. Supp. 967, 970 (D.Wy.1988)); *id.* (citing *McVay v. W. Plains Serv. Corp.*, 823 F.2d 1395, 1399 (10th Cir. 1987)); *id.* at 9 (citing *Fin. Fed. Sav. & Loan Ass'n v. Sav. Inv. Serv. Corp.*, 1986 WL 641, at *2 (W.D. Okla. Dec. 11, 1986)).  None of the loan agreements at issue in these cases were marketed as investments, and investors did not expect a return other than the repayment of the loan plus interest.  Here, the Complaint alleges that investors were led to expect profits in the form of increases in the value of their GREEN, all in proportion to the amount they invested in Green Nodes, which investors could sell to others for profit.  Compl. ¶¶ 24, 27, 40–41.  All investors stood to gain equally and in proportion to their investments in the form of capital appreciation of the value of GREEN.  *See SEC v. Kik Interactive, Inc.*, 492 F. Supp.

3d 169, 177 (S.D.N.Y. 2020); *SEC v. LBRY, Inc.*, 2022 WL16744741 at * 8 (D.N.H. Nov. 7, 2022); *Beranger v. Harris*, 2019 WL 5485128, at *4 (N.D. Ga. Apr. 24, 2019).

The allegations of the Complaint more than adequately support the conclusion that the offer and sale of Green Boxes and Green Nodes, coupled with the hosting and managerial services of Green United and the promise GREEN, constitute an "investment contract" and therefore a security. Thus, because the Motion raises no additional arguments with respect to the SEC's Securities Act Section 5 and Exchange Act Section 15(a)(1) claims against Krohn, the Motion should be denied with respect to the Complaint's First and Seventh Claims.

## II.     THE COMPLAINT IS NOT A "SHOTGUN PLEADING" AND PROVIDES ADEQUATE NOTICE OF THE ALLEGED VIOLATIONS.

Krohn next argues that the Complaint is an impermissible "shotgun pleading,"[4] apparently reasoning that the Claims in the Complaint incorporate preceding allegations.  Mot. at 10.  Courts have rejected this argument.  *See, e.g.*, *SEC v. Goldstone*, 952 F. Supp. 2d 1060, 1222 (D.N.M. 2013) (rejecting shotgun pleading claim based on incorporating preceding paragraphs into each count); *Haynes v. Allstate Fire & Cas. Ins.*, 2020 WL 816043, at *7 (D. Colo. Feb. 18, 2020) (same, noting that incorporating by reference prior allegations into each claim "is a practice that is almost universally employed by the attorneys who practice before this Court").  In fact, "[t]he Tenth Circuit has specifically approved of incorporating paragraphs of a complaint into securities allegations against defendants."  *Goldstone*, 952 F. Supp. 2d at 1222 (cleaned up) (citing *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1253 (10th Cir. 1997)).

---

[4] Complaints are held to be improper shotgun pleadings when defendants cannot tell what claims are asserted against them.  *Mellette v. Branch*, 2008 WL 4001044, at *9 (D. Colo. Aug. 26, 2008); *see Cook v. Baca*, 2011 WL 13157059, at *3 (D.N.M. July 8, 2011) (observing "a shotgun pleading prevents the parties and the court from understanding what the case is really about because the complaint is so cluttered with irrelevant and unrelated facts.").

Here, each count specifically identifies the defendants against whom it is asserted. To the extent that there may be instances of overinclusion of factual allegations which have been incorporated by reference in particular counts, this would not be fatal to the pleading. *See SEC v. Winemaster*, 529 F. Supp. 3d 880, 907 (N.D. Ill. 2021) ("Unlike improper shotgun pleadings, the SEC's complaint specifically identifies the role of each Defendant in the alleged fraud, their actions and inactions that led to the misstated financial statements, and why their actions constituted fraud."); *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1325 (11th Cir. 2015) (dismissal is inappropriate unless "it is *virtually impossible* to know which allegations of fact are intended to support which claims(s) for relief") (quoting *Anderson*, 77 F.3d at 466).[5]

The Complaint provides Krohn with more than adequate notice of the specific claims against Krohn and the factual allegations that support those claims. *Haynes,* 2020 WL 816043, at *7; *see SEC v. SeeThruEquity*, 2019 WL 1998027, at *3–4 (S.D.N.Y. Apr. 26, 2019) (holding SEC's complaint did not engage in "shotgun pleading" where the complaint organized defendants' misconduct under several factual headings and specified which counts applied to which defendants). The SEC's Complaint is detailed, clear, and in-line with Rules 8(a), 10(c), and relevant Tenth Circuit authority and should not be dismissed.

---

[5] Krohn's citations to *SEC v. Patel* and *SEC v. Fraser* are unpersuasive. Mot. at 10–11; *SEC v. Patel* 2009 WL 3151143, *3 (D.N.H. Sept. 30, 2009); *SEC v. Fraser*, 2009 WL 2450508, *7-8 (D. Ariz. Aug. 11, 2009). *Patel* involved six individual defendants where the Court noted that they were not able to determine the precise conduct each had engaged in to support primary liability. 2009 WL 3151143, *3. Here, in contrast, the Complaint specifically identifies Krohn's statements and participation in the fraudulent scheme. Similarly inapposite is *Fraser*, where the Court found the Complaint (despite spanning hundreds of pages) did not allege that Frasier had a significant enough amount of involvement in the allegedly fraudulent filings, thus falling short of the pleading standard under Rule 9(b). 2009 WL 2450508, at *7–8. Here, the Complaint specifically alleges involvement in, and knowledge of, the fraud by Krohn.

### III.    THE SEC HAS ADEQUATELY PLED THAT KROHN VIOLATED THE ANTIFRAUD PROVISIONS OF THE SECURITIES LAWS (COUNTS III & IV).

The Commission also adequately alleges that Krohn violated the anti-fraud provisions of Sections 17(a)(2) and 17(a)(3) of the Securities Act.  Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake" but that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). "[T]he heightened pleading standard of Rule 9(b) is not an invitation to disregard the requirement of simplicity, directness and clarity of Rule Fed. R. Civ. P. 8." *Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1239 (N.D. Cal. 1998); *United States v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1171 (10th Cir. 2010)).  Rather, "[i]n a securities fraud action, a pleading is sufficient under Rule 9(b) if it identifies the circumstances of the alleged fraud so that the defendant can prepare an adequate answer." *Fecht v. Price Co.,* 70 F.3d 1078, 1082 (9th Cir. 1995); *see also United States v. Triumph Grp., Inc.*, 2016 WL 1664904, at *7 (D. Utah Apr. 26, 2016) ("The purpose of Rule 9(b) is to afford defendant fair notice of plaintiff's claims and the factual ground upon which they are based" (cleaned up)).

As discussed below, the Complaint satisfies the pleading and particularity requirements of Rule 9(b). It clearly, and in sufficient detail, pleads all of the requisite elements for Krohn's deceptive and manipulative conduct and materially false and misleading statements and omissions.

### A.    The Complaint Alleges Krohn Made Material Misrepresentations in Violation of Section 17(a)(2) of the Securities Act (Count III).

Section 17(a)(2) of the Securities Act makes it unlawful for any person to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. 15 U.S.C. § 77q(a)(2).  The elements of a Section 17(a)(2) claim

are "substantially similar" to a claim under Section 10(b) of the Exchange Act, for making untrue statements and omissions.  SEC Opp. at 17.  *SEC v. GenAudio Inc.*, 32 F.4th 902, 921 (10th Cir. 2022); *SEC v. Smart*, 678 F.3d 850, 856 (10th Cir. 2012); *SEC v. McDuffie*, 2014 WL 4548723, at *9 (D. Colo. Sept. 15, 2014).  The state of mind necessary to prove a claim under section 17(a)(2) is negligence.  *Aaron v. SEC*, 446 U.S. 680, 701–02 (1980). A defendant acts negligently in stating or omitting a material fact if he "fail [s] to use the degree of care and skill that a reasonable person of ordinary prudence and intelligence would be expected to exercise in the situation." *SEC v. True North Fin. Corp.*, 909 F.Supp.2d 1073, 1122 (D. Minn. 2012).

The Complaint more than satisfies the requirements of Rule 9(b) as to Krohn, as it includes specific allegations regarding the time, place, and manner of Krohn's material misstatements.[6]  In particular, the Complaint alleges that Krohn misrepresented the value of GREEN and the profits investors could receive from Green Boxes to "prospective investors" in "a April 2018 in-person presentation that Krohn later posted to YouTube."  Compl. ¶¶ 24, 48; *See, e.g.*, *In re Revlon, Inc. Sec. Litig.*, 2001 WL 293820, at *8 (S.D.N.Y. March 27, 2001) ("To satisfy Rule 9(b), however, a plaintiff need not plead dates, times, and places with absolute precision, so long as the complaint gives fair and reasonable notice to defendants of the claim and the grounds upon which it is based."); *SEC v. C. Jones & Co.*, 312 F. Supp. 2d 1375, 1381 (D. Colo. 2004) (allegations that defendant made certain false representations "in the fall of 1999" adequate under Rule 9(b)).

In addition, the Complaint alleges that Krohn made similar false statements in an "April 12, 2018 email to his followers."  Compl. ¶¶ 25, 50.  These misrepresentations, which concern the

---

[6] Krohn complains that the Complaint does not allege the "consequences" of a Krohn's misstatements (*i.e.*, reliance).  Mot. at 4; *see Parrish v. Arvest Bank*, 717 F. App'x 756, 761 (10th Cir. 2017).  But "[t]he SEC is not required to prove reliance or injury in enforcement actions." *Geman v. SEC*, 334 F.3d 1183, 1191 (10th Cir. 2003).

method by which the investments would generate returns for investors, the profits investors could expect, and the form investors would receive such profits, are unquestionably material. SEC Opp. at 19; *SEC v. Credit Bancorp, Ltd.*, 195 F. Supp. 2d 475, 492 (S.D.N.Y. 2002); *see also SEC v. Sequential Brands Grp., Inc.*, 2021 WL 4482215, at *7 (S.D.N.Y. Sept. 30, 2021) ("Materiality is rarely dispositive on a motion to dismiss."). The Motion should be denied as to the Complaint's Third Claim.

**B.      The Complaint Alleges Scheme Liability in Violation of Section 17(a)(3) of the Securities Act Against Krohn (Count IV).**

The Complaint also alleges that Krohn, in violation of Section 17(a)(3) of the Securities Act, engaged in a fraudulent scheme. The elements of scheme liability under Section 17(a)(3) are: (1) the defendant commits a deceptive or manipulative act; (2) in furtherance of a scheme to defraud; and (3) with negligence. *SEC v. Curshen*, 888 F. Supp. 2d 1299, 1307 (S.D. Fla. 2012); *SEC v. McDuffie,* 2014 WL 4548723, at *5 (D. Colo. Sept. 15, 2014). A defendant can be held liable for engaging in a fraudulent scheme under these provisions if he "committed a manipulative or deceptive act in furtherance of a scheme," which is an act that "creates the false appearance of fact." *Simpson v. AOL Time Warner, Inc.*, 452 F.3d 1040, 1048 (9th Cir.2006) (cleaned up). As previously briefed, for purposes of alleging a violation of the scheme liability provisions, the SEC need not plead that Krohn made a specific misrepresentation, on a particular date, to a particular investor. SEC Opp. at 18; *SEC v. Monterosso*, 756 F.3d 1326, 1334 (11th Cir. 2014). Rather, Complaint sufficiently pleads scheme liability under Rule 9(b) if it alleges "the nature, purpose, and effect of the fraudulent conduct and the roles of the defendants." SEC Opp. at 17; *ScripsAmerica, Inc. v. Ironridge Global LLC*, 119 F. Supp. 3d 1213, 1239 (C.D. Cal. 2015); *SEC v. Gordon*, 2009 WL 1652464 at *4 (N.D. Okla. June 11, 2009); *SEC v. Kameli*, 2020 WL 2542154, at *14 (N.D. Ill. May 19, 2020).

The Complaint alleges that Krohn was a key participant in his co-defendants' scheme to defraud the investors who purchased the Green Boxes.  As set forth above, the Complaint alleges specific misstatements made by Krohn to investors in furtherance of the scheme.  Compl. ¶¶ 24–25, 48, 50.  These statements alone are sufficient to support a scheme liability claim under Section 17(a)(3).  *See Lorenzo v. SEC*, 139 S.Ct. 1094, 1101–02 (2019) (noting the various subsections of the anti-fraud laws overlap and capture a wide range of misconduct); *Malouf v. SEC*, 933 F.3d 1248, 1260 (10th Cir. 2019) (applying *Lorenzo* to Section 17(a)(3) because it "is virtually identical to Rule 10b-5(c)");  *In re Cognizant Tech. Sols. Corp. Sec. Litig.*, 2020 WL 3026564, at *17 (D.N.J. June 5, 2020) ("[U]nder *Lorenzo,* unlike prior precedent, a plaintiff need not necessarily allege deceptive conduct that extends beyond the alleged misstatement itself."); *Kameli*, 2020 WL 2542154, at *14 (same); *SEC v. Sequential Brands Grp., Inc*., 2021 WL 4482215, at *6 (S.D.N.Y. Sept. 30, 2021) (collecting cases). [7]

In any event, the Complaint also alleges Krohn repeated Green United's fraudulent claims about Green Boxes, and he told investors that GREEN would be listed on certain trading platforms in the near future, despite knowing that GREEN did not exist.  Compl. ¶¶ 20, 27–53.  And, Krohn failed to disclose to potential investors that he would retain 25% of their investment as a commission.  *Id.* ¶ 55.  *SEC v. Farias*, 2022 WL 3031082, at *5 (W.D. Tex. Aug. 1, 2022); *SEC v. Bio Def. Corp.*, 2019 WL 7578525, at *21 (D. Mass. Sept. 6, 2019) (charging undisclosed excessive commissions constitutes deceptive conduct).  These allegations, along with the other

---

[7] Krohn's reliance on *Ross v. Bolton*, 904 F.2d 819, 824 (2d Cir. 1990) is misplaced.  Mot. at 13. In Ross, the Second Circuit affirmed the dismissal of aiding and abetting charges because the Complaint failed to allege defendant possessed the requisite scienter for that claim (actual intent). *Id.* At 824.  Here, in contrast, the only claims asserted against Krohn that include a knowledge component are Sections 17(a)(2) and 17(a)(3) of the Securities Act, both which only require a showing of negligence.  *McDuffie*, 2014 WL 4548723, at *10; *GenAudio*, 34 F.4th at 921. Tellingly, Krohn does not argue in his Motion that the Complaint fails to allege negligence.

factual allegations in the Complaint describing the fraudulent scheme and Krohn's role in it, are sufficiently particularized to state a claim for relief under Sections 17(a)(3) of the Securities Act for "scheme liability." *See* SEC Opp. 18; *SEC v. Seethruequity, LLC*, 2019 WL 1998027, at *5 (S.D.N.Y. April 26, 2019). The Motion should be denied as to the Complaint's Fourth Claim.

## IV.    DEFENDANTS' CONSTITUTIONAL ARGUMENTS LACK MERIT.

Finally, Krohn incorporates by reference the major questions doctrine and Due Process Clause arguments set forth in Section III of the motion to dismiss filed by Green United and Thurston.  Mot. at 13; *see* Dkt. No. 23 at 20–37.  These arguments fail for the same reasons as those set forth in the SEC's opposition to that motion.  *See* SEC Opp. at 21–25.  Congress, not the SEC, defined the term "security" broadly, to capture the "countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." *Howey*, 328 U.S. at 299.  Over the nearly eighty years since *Howey*, no federal court has ever held that the term "investment contract" as used in the Securities Act or as construed by the Supreme Court in *Howey*, is unconstitutionally vague in any context.  Indeed, the courts applying *Howey* have consistently ruled favorably on allegations that schemes involving crypto assets or mining software constituted investments contracts, including in several actions filed by the SEC before Krohn was hired by Green United.  The Motion should be denied in its entirety.

<u>**CONCLUSION**</u>

The Motion lacks merit.  Thus, for the foregoing reasons, the SEC respectfully requests it be denied.

Dated: June 30, 2023

/s/ Michael E.  Welsh

Michael E. Welsh
Casey R. Fronk
*Attorneys for Plaintiff*
*Securities and Exchange Commission*

## CERTIFICATE OF SERVICE

On this 30th day of June 2023, I hereby certify that I electronically filed a true and correct copy of the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification and service to all counsel of record.

/s/ Michael E.  Welsh