David J. Jordan
FOLEY & LARDNER LLP
95 S. State Street, Suite 2500
Salt Lake City, UT 84111
Tel. (801) 401-8919
Email: djordan@foley.com

Thomas J. Krysa (*pro hac vice*)
Stephanie Adamo (*pro hac vice*)
FOLEY & LARDNER LLP
1400 16th Street, Suite 200
Denver, CO 80202
Tel. (720) 437-2000
Email: tkrysa@foley.com
        sadamo@foley.com

Richard F. Ensor
MICHAEL BEST & FRIEDRICH LLP
2750 E. Cottonwood Pkwy, Suite 560
Cottonwood Heights, UT 84121
Tel. (801) 833-0500
Email: rfensor@michaelbest.com

*Attorneys for Kristoffer Krohn*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH, NORTHERN DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>GREEN UNITED, LLC, a Utah limited liability company; WRIGHT W. THURSTON, an individual; and KRISTOFFER A. KROHN, an individual;<br><br>Defendants,<br><br>TRUE NORTH UNITED INVESTMENTS, LLC, a Utah limited liability; and BLOCK BROTHERS, LLC, a Utah limited liability company;<br><br>Relief Defendants. | Case No.: 2:23-CV-00159-BSJ<br><br><br>**KRISTOFFER KROHN'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS** |

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES ..................................................................................................... ii

    I.    INTRODUCTION ........................................................................................................ 1

    II.    ARGUMENT ................................................................................................................ 1

        A.  Green Box Mining Machines Do Not Constitute a Security. ............................................ 1

            i.   Green Box Purchasers Support Krohn's Motion. ............................................ 4

        B.  The SEC's Fraud Claims Fail Because They Are Not Pled with the Requisite Particularity. .................................................................................................................. 5

            i.   The SEC's Response Does Not Clarify Its Shotgun Pleading. ..................................... 5

            ii.  The SEC's Section 17(a)(2) Claim Is Not Pled with Particularity. .............................. 7

            iii. The SEC's Section 17(a)(3) Claim Is Entirely Unsupported by the Complaint. .......... 7

        C.  The SEC's Case Against Krohn Violates the Major Questions Doctrine and Due Process Clause. ....................................................................................................... 10

    III.   CONCLUSION ........................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*Campbell v. Castle Stone Homes, Inc.*, No., 2011 WL 902637 (D. Utah March 15, 2011) ............ 4

*Cognizant Tech. Solutions Corp. Sec. Litig.*, 2020 WL 3026564 (D. N.J. June 5, 2020) ............. 10

*Deschepper v. Midwest Wine & Spirits, Inc.*, 84 F.Supp.3d 767 (N.D. Ill. 2015) ......................... 7

*Fin. Fed. Sav. and Loan Ass'n v. Savings Inv. Serv. Corp.*, 1986 WL 641,
 (W.D. Okla. Dec. 11, 1986) ................................................................................................ 4

*First State Bank of Wheatland v. Am. Nat. Bank*, 690 F.Supp. 967 (D. Wyo. 1988) ..................... 1

*Lorenzo v. SEC*, 139 S. Ct. 1094 (2019) ................................................................................ 9, 10

*Malouf v. S.E.C.*, 933 F.3d 1248 (10th Cir. 2019) ........................................................................ 10

*McGill v. Am. Land & Exploration Co.*, 776 F.2d 923 (10th Cir. 1985) .................................... 1, 2

*McGovern Plaza Joint Venture v. First of Denver Mortg. Inv.*, 562 F.2d 645
 (10th Cir. 1977) .................................................................................................................. 2

*McVay v. W. Plains Serv. Corp.*, 823 F.2d 1395 (10th Cir. 1987) ................................................. 2

*S.E.C. v. Fraser*, 2009 WL 2450508 (D. Ariz. Aug. 11, 2009) ..................................................... 7

*S.E.C. v. Kameli*, 2020 WL 2542154 (N.D. Ill. May 19, 2020) ................................................... 10

*S.E.C. v. Kik Interactive Inc.*, 492 F.Supp.3d 169 (2020) ............................................................. 4

*S.E.C. v. Rio Tinto PLC*, 2022 WL 2760323 (2d Cir. July 15, 2022) .......................................... 10

*S.E.C. v. Scoville*, 913 F.3d 1204 (10th Cir. 2019) ...................................................................... 4

*S.E.C. v. Sequential Brands Grp., Inc.*, 2021 WL 4482215 (S.D.N.Y. Sept. 30, 2021) ............... 10

*S.E.C. v. W.J. Howey Co.*, 328 U.S. 293 (1946) ..................................................................... 3, 11

*SEC v. Telegram Grp., Inc.*, 448 F.Supp. 3d 352 (S.D.N.Y. 2020) ............................................... 2

*Tcherepnin v. Knight*, 389 U.S. 332 (1967) .................................................................................. 4

*Zabriskie v. Lewis*, 507 F.2d 546 (10th Cir. 1974) ........................................................................ 2

```
```
…

**Statutes**

15 U.S.C. § 77q(a)(3) .................................................................................................................. 8

**Other Authorities**

Securities Act 17(a)(3) ............................................................................................................. 7, 8

**Rules**

Rule 9(b) ................................................................................................................................. 5, 6

I.  INTRODUCTION

The SEC's Response does nothing to salvage its flawed claims against Krohn because the SEC has not plausibly pled that Green Boxes are a security. Absent a security, each of the SEC's claims against Krohn—sale of an unregistered security; sale of a security as an unregistered broker; and negligence-based fraud in the offer or sale of a security—must be dismissed. The SEC's fraud claims against Krohn fail for the additional reason that they are not pled with particularity pursuant to Rule 9(b). And the SEC makes no effort to meaningfully engage with Defendants' argument that this case constitutes unconstitutional overreach. This case should be dismissed.

II.  ARGUMENT

A.  **Green Box Mining Machines Do Not Constitute a Security.**

Green Boxes are "crypto asset mining machines." (Compl. ¶ 20.) Eager to convince this Court that such computer hardware is an investment contract, the SEC attempts to circumvent and ignore longstanding Tenth Circuit law. The Tenth Circuit test for determining whether a transaction is an investment contract bears repeating:

> If the law of the Tenth Circuit comes into play and a transaction is purely commercial in nature (for example, a commercial loan or a sale of assets), then it does not give rise to a 'common enterprise' or a 'security.' If, on the other hand, a transaction is in reality an investment (that is, a transaction of a type in which stock is often given), then it creates a 'common enterprise' and gives rise to a 'security' falling within the ambit of the 1933 and 1934 Securities Acts.

*McGill v. Am. Land & Exploration Co.*, 776 F.2d 923, 925 (10th Cir. 1985). *See also First State Bank of Wheatland v. Am. Nat. Bank*, 690 F.Supp. 967, 969 (D. Wyo. 1988) (the "test for distinguishing between commercial and investment transactions is 'whether the transaction is of the kind in which stock often actually is given'") (citing *Zabriskie v. Lewis*, 507 F.2d 546, 551 (10th Cir. 1974); *McGovern Plaza Joint Venture v. First of Denver Mortg. Inv.*, 562 F.2d 645, 647 (10th

Cir. 1977) (transaction was not an investment contract because it "is not the kind of transaction in which stock might be given."); *McVay v. W. Plains Serv. Corp.*, 823 F.2d 1395, 1399 (10th Cir. 1987) (alleged investment not a security because it "lack[ed] any of the basic attributes of true stock").

Krohn set forth this standard in his opening Motion. (Mot. at 7.) In response, the SEC denies that this is the test for determining an investment contract and claims that Krohn "ignores the Security Act's plain text[.]" (Resp. at 6-7.) Yet, the SEC cites the very same *McGill* case. (*Id.* at 6.) The SEC does not attempt to explain or distinguish *McGill's* finding that an "investment [] is a transaction of a type in which stock is often given." It simply cuts that language from its quote. (Resp. at 7.) Contrary to the SEC's repeated assertion that it has "more than adequately" alleged a common enterprise, the SEC has not even applied the correct law.[1]

As discussed in Krohn's Motion, the SEC has not (and cannot) allege that the sale and purchase of Green Box computer hardware is the kind of transaction in which stock might be given. (Mot. at 7-8.) The SEC does not dispute that, after purchasing a Green Box mining machine, a miner may independently operate the equipment however they choose, including not using it at all. Miners are not entitled to receive dividends, and there is no apportionment of profits to them. Green Boxes are not negotiable, cannot be pledged, do not confer voting rights, and do not appreciate in value. These points also are undisputed by the SEC.

---

[1] The SEC also cites to *SEC v. Telegram Grp., Inc.*, which does not set forth Tenth Circuit law. 448 F.Supp. 3d 352 (S.D.N.Y. 2020). In *Telegram*, the S.D.N.Y. found that the SEC had shown "horizontal commonality" sufficient to establish the existence of a common enterprise in the sale of crypto assets. Id. at 369. The Tenth Circuit, however, has explicitly rejected the horizontal commonality test. *McGill*, 776 F.2d at 925 ("The rigid 'horizontal commonality' requirement that the district court imposed has never been a part of the law of this circuit.").

Instead, the SEC emphasizes the "broad reach" of the *Howey* test. (Resp. at 5.) But the SEC overstates *Howey's* reach. Indeed, the Tenth Circuit found, the "Supreme Court's opinion in the *Howey* case contemplates that we determine the economic reality of the transaction that occurred. In other words, the *Howey* doctrine does not go completely across the board and pick up everything that does not comply with its view of the situation." *McGill*, 776 F.2d at 925. Moreover, the instant case is easily distinguishable from *Howey*. In *Howey*, the Supreme Court found that investment in an orange grove was an investment contract and therefore a security. *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 299-300 (1946). The Supreme Court reasoned that the orange grove management company offered "something more than fee simple interests in land, something different from a farm or orchard coupled with management services. They offer[ed] an opportunity to contribute money and to share in the profits of a large citrus fruit enterprise managed and partly owned by respondents. They [offered] this opportunity to persons who reside in distant localities and who lack the equipment and experience requisite to the cultivation, harvesting and marketing of the citrus products." *Id*. at 300. In contrast here, Green United did not offer miners any profit sharing, while miners did purchase the necessary equipment and independently chose how to use it. *Howey* does not reach this far.[2]

As noted in Krohn's Motion: when evaluating whether a transaction is an investment for the purpose of identifying a security, "[p]rofit does not mean any return beyond principal. Rather, it is profit of the type typically associated with an investment. This includes 'capital appreciation

---

[2] Other cases cited by the SEC also involve profit sharing, making them similarly distinguishable. See *S.E.C. v. Scoville*, 913 F.3d 1204, 1221 (10th Cir. 2019) (investors had the opportunity to share in revenue); *Campbell v. Castle Stone Homes, Inc.*, No. 2:09-cv-250-TS, 2011 WL 902637, *4 (D. Utah March 15, 2011) (plaintiffs' allegations included distribution of profits); *Tcherepnin v. Knight*, 389 U.S. 332, 338-39 (1967) (petitioners could expect a payment of dividends on withdrawable capital shares to an apportionment of profits); *S.E.C. v. Kik Interactive Inc.*, 492 F.Supp.3d 169, 179 (2020) (investors' profits were tied to the success of the enterprise).

3

resulting from the development of the initial investment … or a participation in earnings resulting from the use of investor funds[.]'" *Fin. Fed. Sav. and Loan Ass'n v. Savings Inv. Serv. Corp.*, No. cv-86-176, 1986 WL 641, *3 (W.D. Okla. Dec. 11, 1986) (citing *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 851 (1975)). The SEC's response on this point confirms that miners had no prospect of this type of investment profit from the purchase of a Green Box. The SEC argues, "the Complaint alleged that investors were led to expect profits in the form of increases in the value of their GREEN, all in proportion to the amount invested in **Green Nodes**, which investors could sell for profit." (Resp. at 8 (emphasis added).) The SEC has alleged that Krohn promoted and sold Green Boxes for a six month span in 2018 (Compl. ¶¶ 23, 55); it does not allege that Krohn had any involvement with Green Nodes software. (*See id*.)

      i.    ***Green Box Purchasers Support Krohn's Motion.***

On June 6, 2023, dozens of individuals who purchased Green Box hardware filed an Amici Curiae Brief on Behalf of Green Users in Support of the Defendants' Motions to Dismiss. (Dkt. 36, hereinafter "Amici Brief".) The amici explain:

> [They] did not buy the hardware and software to share in Green United's profits or pool their money to share in the collective profits obtained from the sale or use of the software or hardware. They bought it to use it: to participate in the decentralized network and build the digital infrastructure for future and varied uses. As they use it, their fates are not co-dependent: any benefit an individual GREEN user received is independent of any other's.

(Amici Br. at 6-7.) "To whatever extent users realize any value from GREEN, it will be due to their own efforts to capitalize on the utility offered by the GREEN hardware and software. This is nothing like an investment." (*Id*. at 8-9.) The Amici Brief was filed more than three weeks before the SEC submitted its Response to this Motion, but the SEC chose not to address it.

Because a Green Box purchase is not the type of transaction "in which stock is often given," it did not create a common enterprise, and the mining machines do not constitute a security. Accordingly, Krohn's sale of the computer hardware is not governed by federal securities law, and Counts I, III, IV, and VII of the SEC's Complaint should be dismissed.

### B. The SEC's Fraud Claims Fail Because They Are Not Pled with the Requisite Particularity.

The SEC admits that its fraud claims against Krohn are subject to Rule 9(b)'s pleading requirements. (Resp. at 11.) The SEC's failure to satisfy Rule 9(b) and plead fraud with particularity is a separate basis for this Court to dismiss these claims—Count III and IV.

#### i. *The SEC's Response Does Not Clarify Its Shotgun Pleading.*

The SEC misunderstands Krohn's position on the Complaint's shotgun pleading. (*See* Resp. at 9.) If Krohn were able to determine which allegations the SEC intended to support the claims against him, incorporating preceding allegations into those claims would not pose a problem. However, the SEC's allegations largely group the Defendants together, and the fraud claims asserted against Krohn do not specify which acts constitute the alleged violations against him. As discussed in the Motion, this type of pleading is impermissible. (Mot. at 10-11.)

In its Response, without citing to any paragraph of the Complaint, the SEC states that the "Complaint is detailed, clear, and in-line" with federal rules. (Resp. at 10.) The SEC also claims that it "provides Krohn with more than adequate notice of the specific claims against Krohn and the factual allegations that support those claims." (*Id.*) Yet, a review of the Complaint's allegations shows that is not true.

The following is a sampling of the SEC's allegations in which all Defendants are lumped together:

- "Defendants falsely stated that these products mined a crypto asset called GREEN on a purported blockchain called the "Green Blockchain." (Compl. ¶ 2.) "Defendants led investors to believe that Green United intended to develop the Green Blockchain to create a 'public global decentralized power grid,' and, based on their efforts, that the GREEN token would therefore increase in value." (*Id*.)

- "Defendants told investors the Green Blockchain generates GREEN through a calculation of the amount of energy consumed in mining other crypto assets." (*Id*. at ¶ 21.)

- "According to Defendants, the Green Blockchain purportedly converts this data into GREEN, which is then deposited in the wallet associated with the respective Green Box." (*Id*. at ¶ 22.)

- "Defendants told Initial Green Box investors that Green United would control all aspects of the mining operation." (*Id*. at ¶ 26.)

- "As described by Defendants, investors in Green Nodes had the option of running the Green Node software on their personal computer or on a remote server." (*Id*. at ¶ 36.)

- "Defendants repeatedly led investors to believe that the value of GREEN would increase." (*Id*. at ¶ 41.)

- "Beginning in at least April 2018, Defendants told investors that the Green Blockchain provides a way to 'capture, store and share energy peer to peer' and that Green United had created a decentralized power grid. These statements made to investors by Green United and Krohn were materially false and misleading." (*Id*. at ¶ 43.)

- "[T]he supposed 'Green Blockchain' described by Defendants did not exist." (*Id*. at ¶ 46.)

Do any of these allegations form the basis of the SEC's fraud claims against Krohn? It is impossible to know. The Complaint does not put Krohn on notice of the alleged factual basis for the claims specifically brought against him; thus, it does not satisfy Rule 9(b). *See Deschepper v. Midwest Wine & Spirits, Inc.*, 84 F.Supp.3d 767 (N.D. Ill. 2015) (dismissing fraud claims for shotgun pleading and generalized assertions); *see also S.E.C. v. Fraser*, No. 09-cv-00443, 2009 WL 2450508, at *14 (D. Ariz. Aug. 11, 2009) (same).

  ii. ***The SEC's Section 17(a)(2) Claim Is Not Pled with Particularity.***

In its Response, the SEC states that it is basing its Section 17(a)(2) claim against Krohn on two communications, both of which occurred in April 2018.[3] (Resp. at 12.) Those allegations are insufficient for the reasons explained in the Motion. (Mot. at 12-13.)

| SEC's Allegations[4] | Missing Facts |
|---|---|
| "[D]uring an April 2018 in-person presentation that Krohn later posted to YouTube, Krohn told prospective investors that GREEN was currently valued at $0.02 per token. Later on in that presentation, Krohn claimed that Green Boxes were producing $100 each month and, as a result, Green Boxes were generating 40% to 50% return by mining GREEN." (Compl. ¶¶ 24; *see also* ¶ 48 (different phrasing of same communication) | <ul><li>*When* in April the representations were made.</li><li>*Where* the representations were made.</li><li>*To whom* the representations were made. Note, at ¶ 24, the SEC alleges this representation was made to "prospective investors" and at ¶ 48, it alleges that the representation was made to "investors."</li></ul> |
| "[I]n an April 12, 2018 email to his followers, Krohn touted Green Boxes as a $3,000 investment 'generating 100%+ ROIs.'" (*Id.* at ¶ 25.) | <ul><li>*To whom* the representation was made. There is no description of who the SEC believes to be Krohn's "followers."</li></ul> |

After four years of investigation, including investigative subpoenas and investigative testimony, these two flawed allegations are the only misstatements the SEC has come up with. There is no excuse for the SEC's failure to adequately plead this claim, and it should be dismissed with prejudice.

  iii. ***The SEC's Section 17(a)(3) Claim Is Entirely Unsupported by the Complaint.***

Under Section 17(a)(3) of the Securities Act, it is unlawful for a person to engage in any fraudulent or deceitful transaction, practice, or course of business in the offer or sale of securities

---

[3] Krohn's guess at the applicable allegations was close. (Mot. at 11-12.)

[4] The SEC baldly asserts that these alleged misstatements are "unquestionably material." (Resp. at 13.) In doing so, the SEC again ignores the Amici Brief in which the amici unequivocally state they were not defrauded. (Amici Br. at 9.)

in interstate commerce. 15 U.S.C. § 77q(a)(3). It is unclear which alleged acts the SEC relies on for this claim (Count IV) because the SEC simply quotes the language of the statute and alleges a violation against all Defendants. (Compl. ¶¶ 69-72.) In its Response, the SEC claims for the first time that Krohn "engaged in a fraudulent scheme." (Resp. at 13.) There are no allegations in the Complaint to support scheme liability against Krohn.

The word "scheme" is found in the Complaint a total of three times. Not one of those allegations references Krohn.

- "Thurston and Green United knowingly or recklessly engaged in the fraudulent scheme detailed in the paragraphs above." (Compl. ¶ 52.)

- "By engaging in the conduct described above, Green United and Thurston directly or indirectly, individually or in concert with others, in the offer and sale of securities, by use of the means and instruments of transportation and communication in interstate commerce or by use of the mails has employed devices, schemes, or artifices to defraud. (Id. at ¶ 62.)

- "By engaging in the conduct described above, Green United and Thurston, directly or indirectly, individually or in concert with others, in connection with the purchase or sale of securities, by use of the means and instrumentalities of interstate commerce or by use of the mails has (a) employed devices, schemes, and artifices to defraud; and (b) engaged in acts, practices, and course of business which operated as a fraud and deceit upon purchasers, prospective purchasers, and other persons." (Id. at ¶ 74.)

Despite this utter absence of scheme-based allegations against Krohn, the SEC incredibly argues the "Complaint alleges that Krohn was a key participant in his co-defendants' scheme to defraud the investors who purchased the Green Boxes" and "the Complaint alleges specific misstatements made by Krohn to investors in furtherance of the scheme." (Resp. at 14.) These statements are accompanied by a citation only to the two alleged April 2018 misstatements discussed above. (*Id.*)

The SEC relies on *Lorenzo v. SEC*, 139 S. Ct. 1094 (2019) to claim that "[t]hese statements alone are sufficient to support a scheme liability claim under Section 17(a)(3)." (Resp. at 14.) Not true. In *Lorenzo*, the SEC brought an enforcement proceeding against Lorenzo for sending emails

8

to investors that contained false and misleading statements made by other people. 139 S. Ct. at 1099. The Supreme Court held that Lorenzo's "dissemination" of these emails—spreading the material untruths spoken by others—could sustain a claim for scheme liability. *Id*. at 1101.

Here, the SEC has not alleged that Krohn was involved in a scheme. The Complaint is devoid of scheme-like allegations against him. Krohn made his own statements, and those alleged misstatements standing alone cannot serve as the basis for scheme liability. *Lorenzo* did not expand the scope of scheme liability to make an individual's *own* misstatements and omissions alone sufficient to state a scheme liability claim. *S.E.C. v. Rio Tinto PLC*, No. 21-2042, 2022 WL 2760323, *1 (2d Cir. July 15, 2022) ("dissemination of those misstatements was key."). "[M]isstatements and omissions alone are not enough for scheme liability." *Id*. at *6.[5]

The SEC goes on to make two more statements about its Complaint that are completely and demonstrably false. First, the SEC states that the "Complaint also alleges Krohn repeated Green United's fraudulent claims about Green Boxes, and he told investors that GREEN would be listed on certain trading platforms in the near future[.]"[6] (*Id*.) Yet, the SEC has not alleged that Krohn repeated any statement made by Green United. (*See* Compl.) Then, the SEC states there are "factual allegations in the Complaint describing the fraudulent scheme and Krohn's role in it[.]"

---

[5] Each of the cases cited by the SEC on this topic is inapposite as they address scheme liability for an individual who is involved in the misrepresentations of another. *Malouf v. S.E.C.*, 933 F.3d 1248, 1259 (10th Cir. 2019) ("Mr. Malouf had failed to correct UASNM's false or misleading statements"); *In re Cognizant Tech. Solutions Corp. Sec. Litig.*, No. 16-6509, 2020 WL 3026564, *18 (D. N.J. June 5, 2020) (company executive disseminated alleged misstatements in public filings); *S.E.C. v. Kameli*, No. 17C4686, 2020 WL 2542154, *15 (N.D. Ill. May 19, 2020) ("defendants disseminated the false/misleading statements"); *S.E.C. v. Sequential Brands Grp., Inc.*, No. 20-cv-10471, 2021 WL 4482215, *6 (S.D.N.Y. Sept. 30, 2021) (accounting and finance personnel discarded quantitative evidence resulting in misleading statements on public filings).

[6] As discussed in the Motion, this alleged misstatement also fails under Rule 9(b) because it does not identify when the representation was made, where the representation was made, how the representation was made, or to whom it was made. (Mot. at 12-13; Compl. ¶ 27.)

(Resp. at 15.) Again, there are no such allegations. (*See* Compl.) The SEC's brand new theory of liability is baseless because there are no allegations in the Complaint to support it, and this claim should be dismissed.

### C. The SEC's Case Against Krohn Violates the Major Questions Doctrine and Due Process Clause.

The SEC does not dispute that its position in this lawsuit—that purchases of computer hardware are subject to SEC regulation as a security—is unprecedented. Instead, the SEC touts the purportedly limitless application of *Howey*. As discussed *supra* § II.A, there are limits to *Howey*, and the sale and purchase of Green Boxes do not constitute a security under *Howey* and its progeny. The SEC's assertion of executive authority to regulate this space is impermissible under the Major Questions Doctrine. Moreover, as even experts disagree on the application of federal securities laws to the digital-asset industry, Krohn could never have known five years ago what the regulatory landscape (and ongoing debate) would be today. The SEC's retroactive assertion that all digital assets should be registered as securities is a violation of the Due Process Clause.

To avoid repetition and duplication, Krohn also joins Section III of the reply brief in support of the motion to dismiss filed on July 28, 2023 by Defendants Green United and Thurston. (Dkt. 43.)

## III. CONCLUSION

For the reasons stated above and the reasons in Krohn's opening Motion, Krohn respectfully requests that the Court enter an Order dismissing Counts I, III, IV, and VII of the SEC's Complaint with prejudice, and granting Krohn such further relief the Court deems just and appropriate.

DATED this 28th day of July, 2023.

                                        **FOLEY & LARDNER LLP**

                                        */s/ Thomas J. Krysa*

                                        David J. Jordan
                                        FOLEY & LARDNER LLP
                                        95 S. State Street, Suite 2500
                                        Salt Lake City, UT 84111
                                        Tel. (801) 401-8919
                                        Email: djordan@foley.com

                                        Thomas J. Krysa (*pro hac vice*)
                                        Stephanie Adamo (*pro hac vice*)
                                        FOLEY & LARDNER LLP
                                        1400 16th Street, Suite 200
                                        Denver, CO 80202
                                        Tel. (720) 437-2000
                                        Email: tkrysa@foley.com
                                                 sadamo@foley.com

                                        Richard F. Ensor
                                        MICHAEL BEST & FRIEDRICH LLP
                                        2750 E. Cottonwood Pkwy, Suite 560
                                        Cottonwood Heights, UT 84121
                                        Tel. (801) 833-0500
                                        Email: rfensor@michaelbest.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of July, 2023, a true and correct copy of the above and foregoing **KRISTOFFER KROHN'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS** was filed and served *via* CM/ECF upon the following:

Michael E. Welsh
Casey R. Fronk
Securities and Exchange Commission
351 South West Temple, Suite 6.100
Salt Lake City, UT 84101

                                                  */s/ Heather Kunkel*
                                                   Heather Kunkel