David J. Jordan
FOLEY & LARDNER LLP
95 S. State Street, Suite 2500
Salt Lake City, UT 84111
Tel. (801) 401-8919
Email: djordan@foley.com

Thomas J. Krysa (*pro hac vice*)
Stephanie Adamo (*pro hac vice*)
FOLEY & LARDNER LLP
1400 16th Street, Suite 200
Denver, CO 80202
Tel. (720) 437-2000
Email: tkrysa@foley.com
        sadamo@foley.com

*Attorneys for Kristoffer Krohn*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH, NORTHERN DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>GREEN UNITED, LLC, a Utah limited liability company; WRIGHT W. THURSTON, an individual; and KRISTOFFER A. KROHN, an individual;<br><br>　　　　　Defendants,<br><br>TRUE NORTH UNITED INVESTMENTS, LLC, a Utah limited liability; and BLOCK BROTHERS, LLC, a Utah limited liability company;<br><br>　　　　　Relief Defendants. | Case No.: 2:23-CV-00159-AMA-CMR<br><br><br>**DEFENDANT KRISTOFFER KROHN'S REPLY IN SUPPORT OF HIS MOTION TO CERTIFY ORDER ON MOTION TO DISMISS FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C.A. § 1292(b)** |

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................................. 1

II.   ARGUMENT ........................................................................................................................ 2

   A.   There Is Substantial Ground for Difference of Opinion ............................................... 2

III.   CONCLUSION .................................................................................................................... 6

## TABLE OF AUTHORITIES

**Cases**   **Page(s)**

*Chamberlain v. Crown Asset Mgmt.*
  622 F.Supp.3d 1068 (D. Utah 2022) .................................................................................... 2

*McGill v. Am. Land. & Expl. Co.*
  776 F.2d 923 (10th Cir. 1985) ........................................................................... 1, 2, 3, 5, 6

*SEC v. Edwards*
  540 U.S. 389 (2004) .............................................................................................................. 4

*SEC v. Coinbase, Inc.*
  *23cv4738 KFP*, 2024 WL 1304037 (S.D.N.Y. Mar. 27, 2024) .................................................. 5

*SEC v. Ripple Labs, Inc.*
  682 F.Supp.3d 308, 325 (S.D.N.Y. 2023) ............................................................................ 5

*SEC v. Scoville*
  913 F.3d 1204 (10th Cir. 2019) ....................................................................................... 3, 5

*SEC v. W.J. Howey Co.*
  328 U.S. 293 (1946) ......................................................................................................... 1, 4

*Tcherepnin v. Knight*
  389 U.S. 332 (1967) .............................................................................................................. 3

**Statutes**

28 U.S.C. § 1292(b) .......................................................................................................... 2, 6, 7

## I. INTRODUCTION[1]

As defined in *SEC v. W.J. Howey Co.*, 328 U.S. 293, 301 (1946), an investment contract has three elements: (1) an investment, (2) in a common enterprise, (3) with a reasonable expectation of profits to be derived from the efforts of others. (MTD at 8.) Yet, just as the SEC neglected the common enterprise element in its Amended Complaint (*id*. at 12-13), the SEC glosses over this element in its Opposition to Krohn's Motion to Certify as well. The SEC refuses to grapple specifically with the element of common enterprise and instead references generally the "well-settled [*Howey*] test for what constitutes an investment contract." (Opp. at 2.) Perhaps this is not surprising, given the SEC's public mission to strike the common enterprise element from the *Howey* test in the digital asset space. The SEC has boldly proclaimed that it "does not require vertical or horizontal commonality *per se*, nor does it view a 'common enterprise' as a distinct element of the term 'investment contract." *See* "Framework for 'Investment Contract' Analysis of Digital Assets," fn. 10, found on SEC's website at https://www.sec.gov/corpfin/framework-investment-contract-analysis-digital-assets and cited by the SEC in Dkt. #38 at 25. The Tenth Circuit and Supreme Court, however, do require a common enterprise in order to find an investment contract. *McGill v. Am. Land. & Expl. Co.*, 776 F.2d 923 (10th Cir. 1985) (discussing the "'common enterprise' requirement of the Supreme Court's *Howey* test for the existence of a 'security'").

What constitutes a common enterprise? This is where substantial ground exists for a difference of opinion. Under Tenth Circuit law, does the common enterprise element of an investment contract require that an investor have some right, interest, or stake in the profits of the

---

[1] Capitalized terms not defined herein have the meaning ascribed in Krohn's Motion to Certify.

promoter's underlying business venture? This question posed in Krohn's Motion to Certify is not "amorphous," as the SEC claims. (Opp. at 6.) It is a clear and specific question the Tenth Circuit should consider and answer for the efficient adjudication of this case. And Tenth Circuit precedent suggests that the answer is "yes."

II. **ARGUMENT**

This Court may certify its Order for interlocutory appeal if the Order "[1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and … [3] an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The SEC does not dispute that the Order involves a controlling question of law and that immediate appeal from the Order may materially advance the ultimate termination of this litigation. (*See* Opp. at 4.) Therefore, the Court need only determine whether there is substantial ground for difference of opinion. Based on longstanding Tenth Circuit law, Krohn posits that substantial ground for difference of opinion exists here because "reasonable jurists might disagree" about whether an individual is engaged in a common enterprise when she has no right, interest, or stake in the profits of the underlying business venture. *See Chamberlain v. Crown Asset Mgmt.*, 622 F.Supp.3d 1068, 1072 (D. Utah 2022).

A. **There Is Substantial Ground for Difference of Opinion**

As noted in the Court's Order, the Tenth Circuit instructed district courts to "examine the economic reality of a given transaction to determine whether a security had been offered or sold." (Order at 4-5, citing *McGill*, 776 F.2d at 924-25.) To evaluate the whole of a given transaction, it follows that the examination of economic reality must apply to each element of an investment contract. Numerous Tenth Circuit and Supreme Court cases provide insight on the economic reality that constitutes a common enterprise.

2

- In *McGill*, an investor "purchased the right to participate in the joint venture's operating profits, not merely the right to enjoy capital appreciation on certain tangible assets." 776 F.2d at 925. Accordingly, the Tenth Circuit found "[c]ommon sense tells us that McGill joined in a 'common enterprise[.]'"

- In *SEC v. Scoville*, the Tenth Circuit held:

  > An Adpack is an investment in "a common enterprise." Just as the land purchasers in *Howey* bought the opportunity "to share in the profits of a large citrus fruit enterprise managed and partly owned by" the citrus grove owners, so Adpack purchasers bought the opportunity to share in revenue derived from the sale of all of Traffic Monsoon's advertising services. The revenue in which Adpack purchasers could share, then, was generated from a common enterprise, Traffic Monsoon's sale of internet advertising services.

  913 F.3d 1204, 1221 (10th Cir. 2019). This common enterprise analysis was separate and distinct from the Tenth Circuit's analysis of whether the investors had a reasonable expectation of profits derived from the efforts of others.

- In *Tcherepnin v. Knight*, investors were entitled to dividends based on the association's profits, and the Supreme Court found that "Petitioners are participants in a common enterprise—a money-lending operation depended for its success upon the skill and efforts of the management of City Savings in making sounds loans." 389 U.S. 332, 337-38 (1967).

- Contrary to the SEC's claim that "the facts of *Howey* itself foreclose Krohn's argument" (Opp. at 4), the Supreme Court paid particular attention to the profit-sharing nature of the investment scheme in that preeminent securities case.

  > The transactions in this case clearly involve investment contracts as so defined. The respondent companies are offering something more than fee simple interests in land, something different from a farm or orchard coupled with management services. ***They are offering an opportunity to contribute money and to share in the profits of a large citrus fruit enterprise*** managed and partly owned by respondents.

3

> …
> Thus all the elements of a profit-seeking business venture are present here. ***The investors provide the capital and share in the earnings and profits***; the promoters manage, control and operate the enterprise.
>
> *Howey*, 328 U.S. at 299-300.

Thus, the SEC's insistence that "Krohn cites no authority to suggest his argument is colorable" (Opp. at 7) is patently incorrect. Each of the cases described above supports Krohn's position that the economic reality of a common enterprise necessitates that an investor have some right or stake in the profits of the underlying business venture. The SEC, on the other hand, has not cited to any Tenth Circuit case where an individual who was **not** entitled to profits of the underlying business venture was nonetheless deemed to be engaged in a common enterprise.

Instead, the SEC conflates the second element of common enterprise with the third element of a reasonable expectation of profits to be derived from the efforts of others. (Opp. at 5.) The SEC points to *SEC v. Edwards*, 540 U.S. 389 (2004) to argue that the Supreme Court has held that "profits" refers to what "investors seek on their investment, not the profits of the scheme in which they invest." (*Id.*) But the SEC glosses over the fact that the Supreme Court used that language to clarify what it meant when it "held that 'profits' must 'come solely from the efforts of others,'"— an analysis of the third element of the *Howey* test. 540 U.S. at 394. Notably, as to the common enterprise element, the *Edwards* investors were not involved in the day-to-day operation of the payphones they owned, and ***returns were paid out of the operations of the business venture***. *Id*. at 391-92.

In the instant case, the SEC has not alleged that Green Box purchasers had any right or stake in the profits of Green United's underlying business venture. While the Court surmised that "all investors share, proportionally, in the profits of the enterprise consisting of the jointly managed Green Boxes" (Order at 6), the SEC did not make that allegation. Krohn noted this disconnect in his Motion to Certify (Mot. at 3, n.2.), and the SEC does not dispute that the allegation is not found

4

in the Amended Complaint. (*See* Opp. at 6.) The SEC did not (and cannot) allege that Green Box purchasers were entitled to proportional profits from Green United's business. On this point, the SEC is unfairly benefiting from the Court's presumption of how Green Box purchasers earned income.

When addressing a novel issue like cryptocurrency mining, however, misconceptions are expected.[2] As noted in the Motion to Certify, courts across the country currently are analyzing crypto-related assets and determining whether such assets constitute securities in various contexts.[3] (Mot. at 5.) Where "fair-minded jurists might reach contradictory conclusions" about novel legal issues, there is substantial ground for difference of opinion. *Chamberlain*, 622 F.Supp.3 at 1072. That is the case here, where the SEC argues for the very first time that the sale of computer hardware can constitute an investment contract but has not alleged that Green Box purchasers had

---

[2] Krohn has consistently described Green Boxes as "high-powered computer hardware that could be used to mine cryptocurrencies." (MTD at 2.) Krohn also recognizes the novelty of blockchain technology and cryptocurrency mining. (Mot. at 5.) The SEC does not explain why it finds this acknowledgement to be "contradicting" of Krohn's "earlier" position. (*See* Opp. at 2, 7.) It is not.

[3] The SEC argues courts have "uniformly rejected" that an investment contract requires rights to distributions from a promoter's operating profits, but that argument is flawed. (Opp. at 7.) First, *SEC v. Coinbase, Inc.* collects cases for the proposition that "there need not be a formal contract between transacting parties for an investment contract to exist under *Howey*." No. 23cv4738 KFP, 2024 WL 1304037, *19 (S.D.N.Y. Mar. 27, 2024). That issue is not in dispute before this Court. Second, both *Coinbase* and *SEC v. Ripple Labs, Inc.* are cases decided in the Second Circuit, which applies the "horizontal commonality" test to determine the existence of a common enterprise. *See Ripple*, 682 F.Supp.3d 308, 325 (S.D.N.Y. 2023). This test is not applied in the Tenth Circuit. While the *Ripple* court rejected the argument that investment contracts must grant an investor the right to share in a promoter's profits (*id*. at 323), this Second Circuit analysis is at odds with Tenth Circuit precedent. *See McGill*, 776 F.2d at 925-26 (finding a transaction was "not to be a purely commercial purchase of assets, for the reason that McGill purchased the right to participate in the joint venture's operating profits" and holding "[c]ommon sense tells us that McGill joined in a 'common enterprise'"); *see also Scoville*, 913 F.3d at 1221 (finding a common enterprise where "purchasers bought the opportunity to share in revenue derived from the sale of all of [the promoter's] advertising services"). This discrepancy between circuits demonstrates that the issue of common enterprise is not clear-cut and settled, as the SEC purports it to be.

any right in the profits of Green United's business. Thus, the question of whether Krohn's sale of Green Boxes formed the basis of a common enterprise should be presented to the Tenth Circuit.

## III. CONCLUSION

In the Tenth Circuit, if "a transaction is in reality an investment (that is, a transaction of a type in which stock is often given), then it creates a 'common enterprise' and gives rise to a 'security' falling within the ambit of the 1933 and 1934 Securities Acts." *McGill,* 776 F.2d at 925. For the foregoing reasons, the legal standard for a common enterprise is an issue appropriate for interlocutory review. Specifically, the Tenth Circuit should resolve the issue of: whether the common enterprise element of an investment contract, under Tenth Circuit law, requires that an investor have some right, interest, or stake in the profits of the promoter's underlying business venture. Therefore, Defendant Krohn respectfully requests that the Court exercise its discretion to certify the Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

DATED this 21st day of November, 2024.

**FOLEY & LARDNER LLP**

*/s/ Thomas J. Krysa*

David J. Jordan
FOLEY & LARDNER LLP
95 S. State Street, Suite 2500
Salt Lake City, UT 84111
Tel. (801) 401-8919
Email: djordan@foley.com

Thomas J. Krysa (*pro hac vice*)
Stephanie Adamo (*pro hac vice*)
FOLEY & LARDNER LLP
1400 16th Street, Suite 200
Denver, CO 80202
Tel. (720) 437-2000
Email: tkrysa@foley.com
        sadamo@foley.com

*Attorneys for Defendant Kristoffer Krohn*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 21st day of November, 2024, a true and correct copy of the foregoing **DEFENDANT KRISTOFFER KROHN'S REPLY IN SUPPORT OF HIS MOTION TO CERTIFY ORDER ON MOTION TO DISMISS FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)** was filed and served *via* CM/ECF which will serve on all parties of record.

*/s/ Heather Kunkel*
Heather Kunkel